IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HYUNDAI STEEL COMPANY,<br><br>          Plaintiff,<br><br>     v.<br><br>UNITED STATES,<br><br>          Defendant. | Court No. 23-00211 |

**COMPLAINT**

1.  Plaintiff Hyundai Steel Company ("Hyundai Steel") by and through its counsel hereby allege and state as follows:

**JURISDICTION**

2.  Hyundai Steel brings this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) to contest certain aspects of the final results of the administrative review of the countervailing duty ("CVD") order on cut-to-length carbon-quality steel plate ("CTL plate") from the Republic of Korea, Case No. C-580-837, issued by the International Trade Administration of the United States Department of Commerce ("Commerce"). *Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Final Results and Rescission in Part, of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 61,509 (Dep't Commerce Sept. 7, 2023) ("*Final Results*") and accompanying Issues and Decision Memorandum ("*Final Decision Memo*").

3.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this action is commenced pursuant to 19 U.S.C. § 1516a.

## PARTIES AND STANDING

4.  Hyundai Steel manufactures and exports CTL plate from the Republic of Korea to the United States.  Plaintiff is therefore an interested party within the meaning of sections 771(9)(A) and 516A(f)(3) of the Act, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3).  Plaintiff was also a party to the administrative proceeding that led to the determination that is being challenged herein, as Plaintiff was selected by Commerce as the sole mandatory respondent, responded to all of Commerce's questionnaires during the course of the proceeding, and submitted a case brief to Commerce.  Accordingly, Plaintiff has standing pursuant to 28 U.S.C. § 2631(c) to commence this action.

## TIMELINESS OF THE ACTION

5.  On September 7, 2023, Commerce published in the Federal Register the *Final Results* of the 2021 administrative review of the CVD order.  *See Final Results*, 88 Fed. Reg. 61,509.  Plaintiff timely filed a Summons on October 6, 2023, within thirty days of the publication of the *Final Results* in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of this Court.  Within thirty days after filing the October 6, 2023 Summons, Plaintiff timely files this complaint.

## STATEMENT OF FACTS

6.  On April 12, 2022, Commerce initiated an administrative review of the CVD order on CTL plate for the 2021 period of review ("POR") for the four requested companies.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 21,619 (Dep't Commerce April 12, 2022).  On May 2, 2022, Commerce selected Hyundai Steel as the sole mandatory respondent in this administrative review and issued Initial Questionnaires to the

Government of Korea ("GOK") and Hyundai Steel.[1] *See* Memorandum to Erin Begnal, Director, Office III, AD/CVD Operations from Stephanie Berger, International Trade Compliance Analyst, Office III, Antidumping and Countervailing Duty Operations, "Countervailing Duty Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Respondent Selection," (May 2, 2022); Letter from Peter Zukowski, Program Manager of AD/CVD Operations Office III, "Administrative Review: Certain Cut-to-Length Carbon-Quality Steel Plate from Korea, Countervailing Duty Questionnaire" (May 2, 2022) ("Initial Questionnaire"). On June 27, 2022, Hyundai Steel filed its complete Initial Questionnaire response. *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea, Case No. C-580-837: Hyundai Steel's Initial Questionnaire Response," (June 27, 2022) ("Hyundai Steel's IQR"). The GOK filed its response to the initial questionnaire in two parts on June 27 and July 5, 2022. *See* Letter from Yoon & Yang LLC to Sec'y Commerce, "Administrative Review on Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Response to the Initial Questionnaire (June 27, 2022) ("GOK IQR"); Letter from Yoon & Yang LLC to Sec'y Commerce, "Administrative Review on Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Response to the Initial Questionnaire" (July 5, 2022) ("GOK IQR Part 2").

7. One of the programs being reviewed by Commerce was the provision of electricity for less than adequate remuneration ("LTAR"). *See, e.g.,* Initial Questionnaire at 17-22. This electricity for LTAR program had been reviewed by Commerce in previous reviews, and Commerce had established a methodology for analyzing whether the provision of electricity

---

[1] It should also be noted that Commerce later selected Dongkuk Steel Mill as an additional voluntary respondent, but this is not discussed since not relevant to this appeal.

provided a countervailable benefit.  *See, e.g., Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Final Results, and Rescission, in Part, of Countervailing Duty Administrative Review; 2020*, 87 Fed Reg. 53,728 (Dep't Commerce Sept. 1, 2022), and accompanying Issues and Decision Memorandum at Comment 4.  Under this benefit methodology pursuant to 19 C.F.R. § 351.511(a)(2)(iii), Commerce requires information on whether the government price is consistent with market principles, including the government's price-setting philosophy, whether the price charged is sufficient to recover costs with a rate of return sufficient to ensure future operations, or whether there is discrimination among various types of users.  *See id.*

8.  In order to evaluate whether the GOK conferred a benefit through the provision of electricity for LTAR, Commerce requested that the GOK provide information and data regarding costs associated with the generation, distribution, and sale of electricity in Korea, including the cost report that Korea Electric Power Corporation ("KEPCO") files annually with the Ministry of Trade, Industry and Energy ("MOTIE").  *See* Initial Questionnaire at 20-21.  This information is relevant to the analysis of "whether the price charged is sufficient to recover costs with a rate of return sufficient to ensure future operations" as this is one of the elements considered by Commerce as part of its market principles analysis.  In response to this request for KEPCO's 2021 cost report, the GOK provided annualized cost data for 2020, explaining that the 2021 data was not yet available as the new system of calculating the cost data for the period of review ("POR") had resulted in delays in the preparation of the information.  *See* GOK IQR at 32, 39-41 and Exhibit E-9.

9.  The GOK also reported that there were some changes to its electricity tariff system that began on January 1, 2021.  *See* GOK IQR at 20.  Under this new electricity tariff

4

system, tariffs may be adjusted for fluctuations in fuel costs on a quarterly basis. *See id.* Previously, the electricity tariff consisted of two parts, the demand charge and the energy charge. *See id.* As a result of these adjustments, KEPCO separated the fuel and environmental charges that were previously included as part of the energy cost, instead invoicing them as separate items on a customer's bill. *See id.* In addition, as part of separating out the fuel cost, KEPCO is permitted to adjust the fuel cost charges on a quarterly basis to respond to fluctuations in fuel costs without obtaining approval from MOTIE. *See id.* at 21. The result is that the electricity tariffs are now somewhat dynamic, based on quarterly fluctuations in fuel costs. *See id.* at 20-23.

10.     On January 11, 2023, Commerce issued a supplemental questionnaire to the GOK asking whether the 2021 data was available, with the GOK informing Commerce that it was not yet available. *See* Letter from Peter Zukowski, Program Manager of AD/CVD Operations Office III, "Administrative Review: Certain Cut-to-Length Carbon-Quality Steel Plate from Korea, Countervailing Duty Questionnaire" (Jan. 11, 2023) ("GOK SQ2"); Letter from Yoon & Yang LLC to Sec'y Commerce, "Administrative Review on Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Response to the Supplemental Questionnaire (January 30, 2023) ("GOK SQR2"). On January 31, 2022, Commerce issued another request for the KEPCO data and requested that the GOK provide an estimate of the timeline for the data's finalization. *See* Letter from Peter Zukowski, Program Manager of AD/CVD Operations Office III, "Countervailing Duty Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: GOK Third Supplemental Questionnaire (January 31, 2023) ("GOK SQ3"). In response, the GOK stated that the KEPCO cost data was not yet finalized and was undergoing an audit and, as such, could not yet be provided to Commerce for review. *See* Letter from Yoon & Yang LLC to Sec'y Commerce, "Administrative Review on Certain Cut-to-

Length Carbon-Quality Steel Plate from the Republic of Korea: Response to the Supplemental Questionnaire (February 6, 2023) ("GOK SQR3") at 1-2. The GOK also noted that it was unable at that time to provide a precise estimate when the audit would be completed and the data would be available. *See id.* at 2-3.

11. On February 27, 2023, Commerce issued its *Preliminary Results*. *See Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Preliminary Results and Preliminary Intent To Rescind, in Part, the Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 13,433 (March 3, 2023), and accompanying Preliminary Decision Memorandum ("PDM"). With regard to the electricity for LTAR program, Commerce explained in its PDM that without KEPCO's 2021 cost information it was not able to conduct a complete evaluation of the price-setting philosophy underlying the new January 2021 rates, nor did it have the comprehensive cost information needed to evaluate whether the prices charged in 2021 permit cost recovery plus a reasonable rate of return. PDM at 11. Consequently, Commerce preliminarily determined that necessary information was not available on the record and that it must rely on facts available ("FA") in making its preliminary determination, in accordance with section 776(a)(1) of the Act. *Id.* As FA, Commerce found that it was appropriate to rely on other information placed on the record by KEPCO as a proxy for evaluating whether KEPCO's electricity tariffs are in accordance with market principles and the extent of any benefit conferred. *Id.*

12. In particular, Commerce relied on cost and sales data from KEPCO's 2021 unconsolidated financial statements, as well as information contained in KEPCO's 20-F disclosure form filed with the U.S. Securities and Exchange Commission. *Id.* Commerce found that this information provides a comparison of whether costs were recovered and factors in a rate

of recovery. *Id.* Commerce also reasoned that these are the two key items KEPCO's tariffs are intended to cover and have consistently been the basis for evaluating whether the program confers a benefit in the past. *Id.* In addition, Commerce found that this information is the most comparable information to the cost and sales data that is normally provided by KEPCO, ensuring that we are evaluating the program with the most detailed information available on the record. *Id.* Relying on this information as FA, Commerce found that KEPCO did not recover its costs under its market principles analysis. *Id.* The resulting countervailable benefit based on this FA methodology was 0.51 percent, *ad valorem*. *Id.* at 30.

13. As part of its determination that Hyundai Steel received a countervailable benefit from the provision of electricity for LTAR, Commerce also made a determination that this program provided a financial contribution. *Id.* at 26. The financial contribution determination is not at issue in this appeal.

14. In the *Preliminary Results*, Commerce did not address or explain the basis for its specificity determination.

15. On March 14, 2023, the GOK contacted Commerce officials via email, indicating that the audit of the KEPCO cost data is substantially complete and that the GOK was now in a position to submit KEPCO's cost data for the calendar year 2021. *See* Memorandum to Interested Parties, from David Lindgren, Program Manager, AD/CVD Operations Office III, "Countervailing Duty Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea; Communication with Counsel" (May 10, 2023) ("Correspondence Memo") at Attachment. The GOK noted that while KEPCO's current data is still subject to review by MOTIE and the National Board of Audit, "empirically speaking" it is substantially complete and not subject to much change. *See id.* Because under Commerce's

factual regulations there was no opportunity to submit unsolicited new factual information, the GOK respectfully requested that Commerce issue a supplemental questionnaire requesting the KEPCO cost data for 2021 so that the GOK could submit it on the record. *See id.* The GOK noted that it was also open to submit the data in any manner that Commerce deemed appropriate. *See id.* The GOK concluded its e-mail by sincerely apologizing for the delay in the completion of this data, which it explained was the result of the change of the electricity tariff rate system and the national audit. *See id.*

16. Some 57 days later, on May 10, 2023, Commerce finally responded to the GOK's offer to submit the KEPCO 2021 cost data and determined not to solicit additional factual information from the GOK. *See* Correspondence Memo. In support of this decision, Commerce noted that the cost information was requested in the Initial Questionnaire and two additional times ahead of the *Preliminary Results* but the GOK informed Commerce each time that the audit was still ongoing and, as such, the data was not available. *See id.* at 1. Commerce also found that the GOK did not provide any timeline for completion of the audit. *See id.* Commerce ultimately concluded not to solicit additional factual information from the GOK because (1) the cost data were not fully audited; and (2) insufficient time remained in the review to collect and fully analyze any final cost data. *See id.* Commerce found that since the audit was not complete any information that Commerce collected related to 2021 cost data might not be reliable. *See id.*

17. Commerce also found that regardless of the current status of the 2021 KEPCO cost data, there was not sufficient time in the instant review to collect and analyze the data in question within the statutory deadlines. *See id.* at 2. As support, Commerce explained that after the *Preliminary Results* it devoted its resources to analyzing and addressing the new subsidy allegations filed by the petitioner and which Commerce was unable to fully analyze earlier in the

proceeding. *See id.* Furthermore, Commerce noted that if it had collected the data, it would have to analyze an entirely new data set that is particularly complex and detailed, requiring significant time to conduct a thorough review that could also include a need to requesting further clarification or information in supplemental questionnaires. *See id.* Additionally, for any new information placed on the record, Commerce noted that it was obligated to provide interested parties an opportunity to comment and submit factual information related to the information, including any information submitted in supplemental responses. *See id.* According to Commerce, all of this would have to be completed before Commerce could establish the deadlines for interested parties to submit their case and rebuttal briefs, conduct the requested hearing and carry out its analysis for the *Final Results*. *See id.* Commerce thus concluded that the notification from the GOK's counsel arrived too late in the segment and thus it declined to collect or consider the additional information. *See id.*

18. Two days later, on May 12, 2023, the GOK asked Commerce to reconsider its decision not to solicit additional information. *See* Letter from Yoon & Yang LLC to Sec'y Commerce, "Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Response to Communication with Counsel" (May 12, 2023). In support, the GOK explained that the reason for the delay in submitting the KEPCO cost data was due to the fact that the audit was being conducted by the National Audit Board and so neither MOTIE nor KEPCO could promise when the audit would be complete. *See id.* at 2. The GOK also pointed out that nearly two months had passed since it offered to provide the KEPCO data and so there was sufficient time to collect and analyze the data had Commerce requested it at that time. *See id.* Finally, the GOK explained that while the KEPCO data was still subject to minor change it was substantially complete in March when it offered to provide it to Commerce. *See id.*

19. The parties then submitted case briefs on May 25, 2023. *See* Letter from Yoon & Yang LLC to Sec'y Commerce, "Administrative Review on Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Case Brief of the Government of the Republic of Korea" (May 25, 2023) ("GOK's Case Brief"); Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Cut-To-Length Carbon Quality Steel Plate from the Republic of Korea, Case No. C-580-837: Hyundai Steel's Case Brief" (May 25, 2023) ("Hyundai Steel's Case Brief").[2] In its case brief, the GOK argued that Commerce had failed to address the issue of specificity and argued that the provision of electricity program was neither *de jure* nor *de facto* specific. *See* GOK Case Brief at 13-20. The GOK also argued that Commerce's application of FA to determine the existence of a benefit from the electricity for LTAR program was unlawful and should be reversed. *See id.* at 20. In its case brief, Hyundai Steel also argued that Commerce should reconsider its decision not to solicit the 2021 KEPCO cost data. *See* Hyundai Steel's Case Brief at 19-23.

20. On June 9, 2023, the Petitioners filed a rebuttal brief addressing the issues raised by Hyundai Steel and the GOK, including the electricity for LTAR program. *See* Letter from Wiley Rein & Schagrin Associates to Sec'y of Commerce, "Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Rebuttal Brief" (June 9, 2023) ("Petitioners' Rebuttal Brief"). Among other things, Petitioners argued that Commerce had appropriately declined to permit the GOK to submit the KEPCO 2021 cost data and also that Commerce's electricity for LTAR program was *de facto* specific under section 771(5A)(D)(iii)(III) of the Act. *See id.* at 24-26, 31-32.

---

[2] Petitioners also filed a case brief but it did not raise arguments related to the electricity for LTAR program and thus is not relevant to this appeal.

10

21. On June 28, 2023, the GOK had an *ex parte* video meeting with Commerce to discuss the electricity for LTAR arguments made in it is case brief. *See* Memorandum to Interested Parties, from David Lindgren, Program Manager, AD/CVD Operations Office III, "Countervailing Duty Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea; *Ex Parte* Video Conference" (June 28, 2023). The GOK subsequently filed a letter on the same date requesting that Commerce issue it a supplemental questionnaire requesting the submission of the 2021 KEPCO cost data. *See* Letter from Yoon & Yang LLC to Sec'y Commerce, "Administrative Review on Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Request for Supplemental Questionnaire" (June 28, 2023).

22. In the *Final Results*, Commerce reaffirmed its decision not to solicit or provide the GOK with an opportunity to submit the KEPCO 2021 cost data. Final Decision Memo at 10-12. Commerce rejected the notion that it had sufficient time to collect and analyze the data, and relied heavily on the fact that the 2021 KEPCO cost data was not "final" and that Commerce had no obligation to collect and rely on data that was not finalized. *See id.* at 11. Commerce further averred that it would have needed to evaluate the data, potentially issue supplemental questionnaires and provide interested parties a chance to comment, and also possibly issue a post-preliminary decision on this issue since it was based on new data. *See id.* at 11-12.

23. In the *Final Results*, Commerce also addressed the specificity issue and found that the program was *de facto* specific in accordance with section 771(5A)(D)(iii)(III) of the Act. *See id.* at 15. To support its *de facto* specificity determination, Commerce relied on usage data provided by the GOK for the steel industry and the top ten largest electricity consuming industries that reflected their consumption as a proportion of the total amount of electricity

consumed in Korea and within the industrial classification. *See id.* The GOK data were proprietary, but Commerce found that they demonstrated that the steel industry and three other industries combined, consume a disproportionately large amount of electricity in Korea. Commerce found this sufficient to support a disproportionality specificity determination under section 771(5A)(D)(iii) of the Act. *See id.* at 16.

24. As part of its analysis, Commerce also considered the extent of diversification of economic activities within the jurisdiction of the authority providing the subsidy. *See id.* This was done using the Korea Economic Diversification Memorandum that Commerce placed on the record, which concluded that a wide diversification of economic activities exists in Korea, including 19 industry groupings with a broad range of distinctly different types of economic activities within these groupings. *See* Memorandum to File, "Placement of Republic of Korea Economic Diversification Memorandum on the Record" (May 3, 2022).

25. This appeal followed.

## STATEMENT OF CLAIMS

26. This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1).

27. Commerce's *Final Results* are unsupported by substantial evidence and are otherwise not in accordance with law in the following respects:

### Count One

28. Paragraphs 1 through 27 are incorporated by reference as if fully set forth herein.

29. Commerce's determination not to provide the GOK with an opportunity to submit the 2021 KEPCO cost data, and to instead rely on facts available, is unsupported by substantial

evidence and is otherwise not in accordance with law.

## Count Two

30. Paragraphs 1 through 29 are incorporated by reference as if fully set forth herein.

31. Commerce's determination that the provision of electricity for LTAR program was *de facto* specific under section 771(5A)(D)(iii)(III) of the Act is unsupported by substantial evidence and is otherwise not in accordance with law.

## PRAYER FOR RELIEF

32. WHEREFORE, Plaintiff Hyundai Steel respectfully requests that this Court:

   a. Hold Commerce's *Final Results* unsupported by substantial record evidence and otherwise not in accordance with law;

   b. Remand the *Final Results* to Commerce for a redetermination consistent with the judgment and findings of this Court; and

   c. Provide such other relief as this court deems appropriate.

Respectfully submitted,
**MORRIS MANNING & MARTIN LLP**
1401 Eye Street, NW, Suite 600
Washington, D.C. 20005
(202) 216-4116

/s/ Brady W. Mills
Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Ryan M. Migeed
Stephen A. Morrison

*Counsel for Plaintiff Hyundai Steel Company*

Dated: November 3, 2023