# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE CLAIRE R. KELLY**

|  |  |
|---|---|
| HYUNDAI STEEL COMPANY, | ) |
| Plaintiff, | ) |
| and | ) |
| GOVERNMENT OF THE REPUBLIC OF KOREA, | ) |
| Plaintiff-Intervenor, | ) |
| v. | ) **Court No. 23-00211** |
| UNITED STATES, | ) **NONCONFIDENTIAL** |
| Defendant, | ) Business Proprietary Information Removed from Pages 2 and 6. |
| and | ) |
| NUCOR CORPORATION, | ) |
| Defendant-Intervenor. | ) |

### PLAINTIFF-INTERVENOR GOVERNMENT OF THE REPUBLIC OF KOREA'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD

Yujin K. McNamara
Daniel M. Witkowski
Devin S. Sikes
Sung Un K. Kim
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street NW
Washington, DC 20006
Phone: (202) 887-4347
E-mail: ymcnamara@akingump.com
*Counsel for the Government of the Republic of Korea*

Dated: August 12, 2024

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................................. i

**TABLE OF AUTHORITIES** ........................................................................................................ ii

**ARGUMENT** ................................................................................................................................. 2

I. COMMERCE'S FINDING OF *DE FACTO* SPECIFICITY IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ON THE RECORD OR OTHERWISE IN ACCORDANCE WITH LAW ............................................................................................... 2

II. COMMERCE'S REFUSAL TO ACCEPT KEPCO'S 2021 COST INFORMATION IS AN ABUSE OF DISCRETION ........................................................... 7

**CONCLUSION** ........................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*AK Steel Corp. v. United States*, 192 F.3d 1367 (Fed. Cir. 1999) ...................................................... 3

*Bethlehem Steel Corp. v. United States*, 140 F. Supp. 2d 1354 (Ct. Int'l Trade 2001) ............... 4, 5

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) ................................................. 4, 5

*Mosaic Co. v. United States*, 589 F. Supp. 3d 1298 (Ct. Intl. Trade 2022) ..................................... 4

*Samsung Electronics Co., Ltd. v. United States*, 973 F. Supp. 2d 1321 (Ct. Int'l Trade 2014) ...... 3

**ADMINISTRATIVE DECISIONS**

*Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Republic of Korea*, 86 Fed. Reg. 35,267 (July 2, 2021) ....................................................................................... 9

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY

| | |
|---|---|
| HYUNDAI STEEL COMPANY, <br><br> Plaintiff, <br><br> and <br><br> GOVERNMENT OF THE REPUBLIC OF KOREA, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> NUCOR CORPORATION, <br><br> Defendant-Intervenor. | Court No. 23-00211 <br><br> **CONFIDENTIAL** <br><br> Business Proprietary Information Contained on Pages 2 and 6. |

**PLAINTIFF-INTERVENOR GOVERNMENT OF THE REPUBLIC OF KOREA'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of this Court's Rules, Plaintiff-Intervenor the Government of the Republic of Korea ("GOK") replies to the response briefs filed by Defendant United States and Defendant-Intervenor Nucor Corporation ("Petitioner" or "Defendant-Intervenor"). Def.'s Resp. Br., ECF No. 34 ("Def. Br."); Def.-Intervenor's Resp. Br., ECF No. 37 ("Pet'r Br."). For the reasons explained by Plaintiff Hyundai Steel Company ("Hyundai Steel") in its Reply Brief in Support of Its Motion for Judgment on the Agency Record, ECF No. 40 ("Hyundai Steel

1

Reply"), and the additional reasons provided below, Defendant's and Defendant-Intervenor's arguments are without merit and should be rejected.

## ARGUMENT

As Hyundai Steel explained in its Reply, the arguments raised by Defendant and Defendant-Intervenor in their respective response briefs fail to demonstrate that Commerce's finding of *de facto* specificity with respect to the alleged provision of electricity for less than adequate remuneration ("LTAR") is supported by substantial evidence and otherwise in accordance with law. Similarly, as Hyundai Steel also explained in its Reply, Defendant's and Defendant-Intervenor's arguments underscore that Commerce abused its discretion in refusing to accept the 2021 KEPCO cost data. The GOK supports the arguments made by Hyundai Steel. Rather than repeat all of Hyundai Steel's arguments, the GOK wishes to emphasize a handful of points in this Reply Brief, which further establish that Commerce's decision to impose additional countervailing duties based on the alleged provision of electricity for LTAR is unsupported by substantial evidence and otherwise not in accordance with law.

**I.  COMMERCE'S FINDING OF *DE FACTO* SPECIFICITY IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ON THE RECORD OR OTHERWISE IN ACCORDANCE WITH LAW**

Defendant and Defendant-Intervenor repeatedly cite to the fact that the Korean economy was widely diversified – with 19 industry grouping – to conclude that the steel industry and three other industries consumed a disproportionately large amount of electricity. Def. Br. at 24, 26-28; Pet'r Br. at 3, 16-18. Defendant-Intervenor goes one step further by arguing the fact that the steel industry is the **[     ]** largest consumer of electricity in Korea is itself "prima facie evidence of disproportionality." Pet'r Br. at 18. These arguments are flawed.

As explained in the GOK's opening brief, disproportionality should not be confused with disparity. Pl.-Intervenor's Br., ECF No. 32 ("GOK Br.") at 5. The Federal Circuit specifically

2

rejected an argument that Commerce should determine disproportionality simply "by looking at the percentage of the total benefit of a subsidy program accruing to a particular company or industry." *AK Steel Corp. v. United States*, 192 F.3d 1367, 1385 (Fed. Cir. 1999).  The Federal Circuit explained that such a methodology could produce an "untenable result" where a "benefit conferred on a large company might be disproportionate merely because of the size of the company." *Id.*  For that reason, "disproportionality" determinations must "tak{e} into account all the facts and circumstances of a particular case." *Id.*  Similarly, the court in *Samsung Electronics Co., Ltd. v. United States* cited to *AK Steel* to further support the proposition that using just the relative share of the total benefit to determine disproportionality could produce an untenable result.  973 F. Supp. 2d 1321, 1326-27 (Ct. Int'l Trade 2014).  The court further concluded that more is required from Commerce to support a finding of disproportionality than simply showing that the respondent received a large benefit. *Id.* at 1328.  Thus, this court and the Federal Circuit have specifically warned against the error of confusing disparity in benefit amounts arising from the sizes of particular companies or industries with disproportionality in the benefit conferred.

       Defendant and Defendant-Intervenor's erroneous focus on the number of industries active in the Korean economy to conclude that the steel industry and three other industries disproportionately consumed electricity fails to account for the inherent differences in the nature and size of the industries.  Record evidence shows that certain industries, such as the semiconductor and automobile industries, are significantly larger and thus more energy-intensive than other industries.  *See* Letter from Yoon & Yang LLC to Sec'y of Commerce, "Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from Korea: Response to the Initial Questionnaire" (June 27, 2022) ("GOK IQR"), Exhibit LTKEA-3

3

(C.R.46/P.R.72). These large manufacturing industries naturally tend to consume more electricity than other smaller, non-manufacturing industries, such as retail or travel industries. Given the differences in size and nature of the various industries operating in Korea, a difference in electricity consumption only means that there is a disparity, not disproportionality. Defendant and Defendant-Intervenor's argument fails to explain how Commerce's observation that the Korean economy includes a wide variety of industries—an observation that provides no insight into the relative size of those industries—led to its conclusion of disproportionate aggregate consumption of electricity by the steel industry and three other industries. Without such a link, Commerce has only shown that there is a disparity of electricity consumption, not a disproportionate consumption of electricity by specific industries.

       Defendant cites *Mosaic Co. v. United States*, 589 F. Supp. 3d 1298 (Ct. Intl. Trade 2022), multiple times in its brief and quotes from *Mosaic* to argue that because "disproportionate" is not "defined in the relevant statute," the Court must "defer to Commerce's reasonable interpretation" of that term. Def. Br. at 35 n.9 (quoting *Mosaic*, 589 F. Supp. 3d at 1308). As explained by Hyundai Steel, *Mosaic* addressed a different statutory basis for finding *de facto* specificity, relegating any discussion regarding "disproportionality" to dicta, and *Mosaic*'s attempts to distinguish *Bethlehem Steel Corp. v. United States*, 140 F. Supp. 2d 1354 (Ct. Int'l Trade 2001), which highlighted the distinction between disparity and disproportionality, are unpersuasive. Hyundai Steel Reply at 8. But on a more fundamental level, the Supreme Court recently and unequivocally rejected the notion that courts must defer to "reasonable interpretations" of statutes by administrative agencies. *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2266, 2273 (2024). The Supreme Court additionally explained that an agency's proposed interpretation should be given less persuasive value when it contradicts its prior interpretations.

4

*See id.* at 2259, 2262. This Court, and Commerce itself in its determination giving rise to *Bethlehem Steel*, have previously emphasized that disparate usage is not alone sufficient to establish disproportionate usage. *Bethlehem Steel*, 140 F. Supp. 2d at 1369. That interpretation of the statute aligns with the dictionary definitions of "disparity" and "disproportionality" cited in the GOK's opening brief. *See* GOK Br. at 5. The interpretation reflected in *Bethlehem Steel* is the "best reading" of the statute, which is the one the Court is required to adopt, *Loper Bright*, 144 S. Ct. at 2266, and it requires Commerce to find more than mere disparate usage to conclude that a subsidy is *de facto* specific.

Defendant's and Defendant-Intervenor's arguments also highlight fundamental inconsistencies in Commerce's analysis. As noted, Defendant and Defendant-Intervenors argue that the Korean economy is diverse by relying on the 19 different industry groupings found by Commerce. Def. Br. at 24, 26-28; Pet'r Br. at 3. Yet, Commerce's specificity finding was based on the electricity consumed by the steel industry and three other industries compared to the total electricity consumed by industrial electricity users. Memorandum from James Maeder to Lisa Wang, "Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review; 2021: Certain Cut-To-Length Carbon-Quality Steel Plate from the Republic of Korea" (Aug. 30, 2023) at 15-16 ("*Final Results IDM*") (P.R.222); Def. Br. at 24, 28, 31. The 19 industry groupings included a broad range of economic activities such as "agriculture, forestry and fishing," "wholesale and retail trade," "transportation," "accommodation and food service activities," and "education." Memorandum from Stephanie Berger to File, "Placement of Korea Economic Diversification Memorandum on the Record" (May 3, 2022) (P.R.24). Companies within those and many others of the 19 industry groupings identified by Commerce would not fall within the industrial user classification when purchasing

5

electricity. Rather, they would fall within the general, educational, or agricultural classifications. Given that Commerce's finding of economic diversity was based on a broad range of economic activities that included individuals and companies that do not consume industrial electricity, any specificity analysis relying on that economic-diversity finding should have compared the electricity consumption by the steel industry (or a group of industries including the steel industry)[1] to the economy-wide electricity consumption in Korea. As explained in the GOK's opening brief and in Hyundai Steel's briefs, the steel industry consumed only **[       ]** of electricity in Korea, and even if the steel industry was grouped together with the other three industries identified by Commerce as large consumers of electricity, those industries consumed only **[       ]** of total electricity in Korea. *See* GOK IQR at 35-36 (C.R.29/P.R.60). Those percentages do not a support a finding that the steel industry received a disproportionate amount of the subsidy.

If Commerce wished to compare the electricity consumption by the steel industry (or a group of industries including the steel industry) to just other industrial electricity users, Commerce at minimum should have analyzed whether the users of industrial electricity were diverse. The record, however, contains no such analysis by Commerce. Notably, not one of the top 10 "industries" consuming industrial electricity correspond with the list of 19 industry groupings identified by Commerce for purposes of analyzing whether the Korean economy is diverse. *See id.* Instead, many if not all would appear to fall within a single one of those 19 industry groupings – manufacturing.

---

[1] As explained in Hyundai Steel's Reply, Commerce's rationale for grouping the steel industry with three other random industries for purposes of its specificity analysis is unreasoned, unprincipled, and appears to be entirely results-driven.

As there is no reasoned analysis of whether the Korean manufacturing sector or the universe of industrial electricity users is diverse, Commerce's findings regarding the diversity of the Korean economy are totally divorced from the manner in which Commerce actually analyzed specificity with respect to the alleged provision of electricity for LTAR. Thus, even if Commerce's unlawful conflation of disparity with disproportionality were overlooked, Commerce's specificity analysis would remain unreasoned and unsupported by substantial evidence.

**II.   COMMERCE'S REFUSAL TO ACCEPT KEPCO'S 2021 COST INFORMATION IS AN ABUSE OF DISCRETION**

Commerce abuses its discretion in refusing to accept new or corrective information when the interests of accuracy outweigh the burden on Commerce in accepting that information and the interests in finality. *See* Pl. Br. at 24-25. Record evidence shows that Commerce had sufficient time to consider the 2021 KEPCO cost data each time the GOK offered to provide it well before Commerce's deadline to issue the *Final Results*. However, by refusing to accept the cost data and resorting to facts available, Commerce distorted the benefit determination.

Defendant and Defendant-Intervenor argue that Commerce properly refused to accept the 2021 KEPCO cost data because Commerce requested the cost data three times, the GOK was unable to provide an estimate of when cost data would be ready, there was insufficient time for Commerce to review the cost data, and the cost data should have been ready as soon as KEPCO's financial statements were audited in March 2022. Def. Br. at 13-19; Pet'r Br. at 9-11, 13-14. These arguments are flawed.

As the GOK explained, collecting and processing cost and sales data are generally completed at the end of the succeeding year – i.e., end of 2022 for 2021 cost and sales data. GOK IQR at 27 (C.R.29/P.R.60). In addition, the 2021 cost and sales data also had to undergo

7

an audit by the Board of Audit and Inspection of Korea.  Letter from Yoon and Yang LLP, "Response to the Supplemental Questionnaire" at 2 (Jan. 30, 2023) ("GOK 2nd SQR") (C.R.238/P.R.170); Letter from Yoon and Yang LLP, "Response to the Supplemental Questionnaire" at 1-2 (Feb. 6, 2023) ("GOK 3rd SQR") (P.R.175).

Focusing on the fact that Commerce requested the cost data three times is misplaced as the last two requests were within a very short time frame, only 20 days apart, and Commerce issued its third request only one day after the GOK submitted a supplemental questionnaire response explaining that the cost data was undergoing a longer-than-anticipated verification. Letter from Dep't Commerce, "GOK Second Supplemental Questionnaire" at 2 (Jan. 11, 2023) (C.R.237/P.R.161); GOK 2nd SQR at 2 (C.R.238/P.R.170); Letter from Dep't Commerce, "GOK Third Supplemental Questionnaire" at 1 (Jan. 31, 2023) (P.R.174).  The interval between Commerce's second and third requests did not provide sufficient time for the GOK to obtain the cost data.  Thus, Defendant's focus on the number of requests is a mere attempt to excuse Commerce for its failure to use information that was necessary for an accurate determination.

Moreover, as the GOK showed in its opening brief, Commerce had ample time to consider the cost data each time the GOK offered to provide such data once it became available, with each offering made several months before Commerce issued its *Final Results*.  GOK Br. at 11-18.  Commerce's rejection of the cost data was not only inconsistent with its past practice but also an abuse of its discretion, especially given that Commerce was familiar with the program at issue, the issue related to the cost data was limited (i.e., whether KEPCO recovered its costs), and Commerce had no other outstanding factual issues to resolve.  Indeed, as noted in GOK's opening brief, Commerce has accepted the KEPCO cost data after the preliminary results in other Korea CVD proceedings involving the alleged provision of electricity for LTAR.  For

8

example, in the 2020 countervailing duty investigation of *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Republic of Korea*, Commerce analyzed the 2020 KEPCO cost data, as well as three supplemental questionnaire responses, in less than five months after having initially relied on facts available in its preliminary determination due to the KEPCO cost data not being available at the time due to an ongoing audit.  86 Fed. Reg. 35,267 (July 2, 2021), and accompanying Issues and Decision Memorandum at 2-3.[2]

Finally, contrary to Defendant-Intervenor's argument, the cost data was not available when KEPCO's financial statements were audited in March 2022.  As described above and in Hyundai Steel's Reply, collecting and processing cost and sales data are generally completed at the end of the succeeding year – i.e., end of 2022 for 2021 cost and sales data – well after KEPCO's financial statements were audited in March of 2022.  GOK IQR at 27; Hyundai Steel Reply at 23-24.  Petitioner misses the fact that the aggregated financial data used in KEPCO's financial statements are available before the data are broken down into specific cost and sales data for each tariff classification.  Thus, the availability of the aggregated financial data does not necessarily mean that the cost and sales data for specific tariff classification are available and separately audited.  Assuming otherwise is contrary to the record evidence.

Commerce acknowledged that it needed the 2021 KEPCO cost data to reach an accurate determination.  *Final Results IDM* at 11, 13 (P.R.222); Memorandum from James Maeder to Abdelali Elouaradia, "Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative Review, 2021: Certain Cut-To-Length Carbon-Quality Steel Plate from the

---

[2] Similar to the administrative review at issue, the GOK notified Commerce of the completion of the audit of the cost data on December 16, 2020.  Thereafter, Commerce issued a supplemental questionnaire on January 29, 2021, and the GOK submitted the cost data on February 8, 2021.  Commerce then reversed its decision to rely on facts available and took the cost data into account in its final determination on June 25, 2021.

9

Republic of Korea" (Feb. 27, 2023) at 10-11 (P.R.183).  However, by failing to accept the cost data and resorting instead to facts available, Commerce relied on data that had little probative value as to whether the GOK provided electricity to Hyundai Steel for LTAR and significantly overstated any benefit that Hyundai Steel may have been received.  Given the importance of the KEPCO cost data to reaching an accurate determination and the time that remained for Commerce to consider the data, Commerce's refusal to accept the 2021 KEPCO cost data was an abuse of discretion, rendering its determination with respect to the alleged provision of electricity for LTAR not in accordance with law.

## CONCLUSION

For the reasons discussed above, the GOK requests that the Court grant Hyundai Steel's Rule 56.2 Motion for Judgment on the Agency Record and reject the arguments raised by Defendant and Defendant-Intervenor.

Respectfully submitted,

/s/ Yujin K. McNamara
Yujin K. McNamara
Daniel M. Witkowski
Devin S. Sikes
Sung Un K. Kim
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street NW
Washington, DC 20006
Phone: (202) 887-4347
E-mail: ymcnamara@akingump.com

Dated: August 12, 2024                    *Counsel for the Government of the Republic of Korea*

10

## CERTIFICATE OF COMPLIANCE

      Undersigned counsel hereby certifies that the forgoing brief complies with the word-count limitation set forth in the Court's January 12, 2024 Scheduling Order.  The brief contains 2,704 words according to the word-count function of the word-processing software used to prepare this submission.

                                    Respectfully submitted,

                                    /s/ Yujin K. McNamara
                                    Yujin K. McNamara
                                    AKIN GUMP STRAUSS HAUER & FELD LLP
                                    2001 K Street NW
                                    Washington, DC 20006
                                    Phone: (202) 887-4347
                                    E-mail: ymcnamara@akingump.com
Dated: August 12, 2024                  *Counsel for the Government of the Republic of Korea*