Slip Op. 24-135

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HYUNDAI STEEL COMPANY, <br><br> Plaintiff, <br><br> and <br><br> GOVERNMENT OF THE REPUBLIC OF KOREA, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> NUCOR CORPORATION, <br><br> Defendant-Intervenor. | Before: Claire R. Kelly, Judge <br><br> Court No. 23-00211 <br> PUBLIC VERSION |

## OPINION AND ORDER

[Granting in part and denying in part Plaintiff's motion for judgment on the agency record.]

Dated: December 12, 2024

Brady Warfield Mills, Donald Bertrand Cameron, Jr., Eugene Degnan, Jordan L. Fleischer, Julie Clark Mendoza, Mary Shannon Hodgins, Nicholas C. Duffey, Rudi Will Planert, and Ryan R. Migeed, Morris, Manning & Martin, LLP, of Washington D.C., for Plaintiff, Hyundai Steel Company.

Yujin Kim McNamara, Daniel Martin Witkowski, Devin Scott Sikes, and Sung Un K. Kim, Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington D.C., for Plaintiff-Intervenor, Government of the Republic of Korea.

Emma E. Bond, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant United States. Also on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel is Jesus Nieves Saenz, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Alan Hayden Price, Adam Milan Teslik, Christopher Bright Weld, Derick G. Holt, Enbar Toledano, Maureen Elizabeth Thorson, Paul A. Devamithran, and Theodore Paul Brackemyre, Wiley Rein, LLP, of Washington D.C., for Defendant-Intervenor, Nucor Corporation.

Kelly, Judge: Before the Court is a motion for judgment on the agency record pursuant to United States Court of International Trade Rule 56.2, filed by Plaintiff Hyundai Steel ("Hyundai"). See generally Pls.' Mot. J. Agency Rec., Mar. 12, 2024, ECF No. 30 ("Hyundai Mot."); see also USCIT R. 56.2. Specifically, Hyundai argues that (1) the U.S. Department of Commerce's ("Commerce") determination that the provision of electricity for less than adequate remuneration ("LTAR") program ("Electricity Program") is de facto specific under Section 771(5A)(D)(iii)(III) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677(5A)(D)(iii)(III),[1] is unsupported by substantial evidence and otherwise not in accordance with law, and (2) Commerce's determination not to provide the Government of Korea ("GOK") with an opportunity to submit the 2021 Korea Electric Power Corporation ("KEPCO") cost data, and to instead rely on facts otherwise available, is an abuse of discretion, unsupported by substantial evidence and otherwise not in accordance with law.[2]  See generally

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.
[2] Where "necessary information is not available on the record," Commerce "shall, subject to Section 1677m(d), use the facts otherwise available" to fill the gap in information and reach a determination. 19 U.S.C. § 1677e(a).

Hyundai Mot. For the reasons that follow, Hyundai's motion is granted in part and denied in part.

## BACKGROUND

On April 12, 2022, Commerce initiated an administrative review of the Countervailing Duty ("CVD") order on Certain Cut-to-Length Carbon-Quality Steel Plate for the 2021 POR. See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 87 Fed. Reg. 21,619 (Dep't Commerce Apr. 12, 2022). Commerce evaluated many subsidy programs, including the Electricity Program. Certain Cut-to-Length Carbon-Quality Steel Plate From the Republic of Korea: Preliminary Results and Preliminary Intent To Rescind, in Part, the Countervailing Duty Administrative Review; 2021, 88 Fed. Reg. 13,433 (Dep't Commerce, March 3, 2023) ("Preliminary Results"), PD 186, bar code 4347830-03 (Mar. 6, 2023) and accompanying Prelim. Issues & Decision Mem. ("Prelim. Decision Memo.") at 24–30, PD 183, bar code 4347830-02 (Feb. 28, 2023).[3]

On May 2, 2022, Hyundai was named as the sole mandatory respondent in the instant administrative review. Resp't Select. Memo., PD 21, bar code 4237020-01 (May 2, 2022). Commerce issued an initial questionnaire to the GOK, requesting information relevant to the Electricity Program including the 2021 cost data report filed annually by the administering agency, KEPCO. Commerce Initial Questionnaire at 17–22, PD 22, bar code 4237266-01 (May 2, 2022). The GOK

---

[3] Citations to administrative record documents in this opinion are to the numbers Commerce assigned to such documents in the indices, and all references to such documents are preceded by "PD" or "CD" to denote public or confidential documents.

responded to the Initial Questionnaire on June 27, 2022, explaining that the 2021 cost data had not yet been completed. [GOK] Quest. Resp. at 27, 32, 35, PD 60, CD 29, bar code 4256088-01 (June 27, 2022) ("GOK IQR").

The GOK did not provide the 2021 cost data, but instead submitted KEPCO's 2020 cost and sales data that was filed in 2021. Id. at 45 (citing Response from Yoon & Yang LLC To Sec. Of Commerce Pertaining to GOK IQR, CD 65, bar code 4255901-37 (June 27, 2022)). On January 11, 2023, Commerce issued a supplemental questionnaire, once again requesting that the GOK provide the 2021 cost data. Commerce Supp. Quest. at 2, PD 161, bar code 4330479-01 (Jan. 12, 2023) (Commerce Supp. Quest.). On January 30, 2023, the GOK explained that it was "unable to submit a revised Exhibit E-9 reflecting the cost and sales data sheet for 2021." Id. On January 31, 2023, for the third time, Commerce requested the 2021 cost data and an estimated date for when the data would be available. Commerce Sec. Supp. Quest. at 1, PD 174, bar code 4335935-01 (Jan. 31, 2023) (Commerce Sec. Supp. Quest.). The GOK responded by stating it was unable to provide the data or a date on which the data would be available. [GOK] Sec. Supp. Resp. at 1–2, PD 175, bar code 4338189-01 (Feb. 6, 2023) ([GOK] Sec. Supp. Resp.).

Commerce published its preliminary results on March 3, 2023, assigning Hyundai a net countervailable subsidy rate of 1.10 percent. Preliminary Results, 88 Fed. Reg. 13,433 and accompanying Prelim. Decision Memo. at 24–30. Without the 2021 data, Commerce relied on facts otherwise available to determine whether Hyundai benefited from the Electricity Program. Prelim. Decision Memo. at 10–11.

Court No. 23-00211 Page 5
**PUBLIC VERSION**

On March 14, 2023, the GOK emailed Commerce stating that the 2021 cost data was available but only "substantially complete" and "still subject to review," however, the GOK did not submit the data at that time. See Memorandum from David Lindgren, Program Manager, AD/CVD Operations, Office III to Interested Parties, 'Countervailing Duty Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Communication with Counsel', PD 194, bar code 4374960-01 (May 10, 2023) ("Counsel Comm."). On April 26, 2023, the GOK again requested that Commerce re-issue a questionnaire requesting the 2021 cost data. [GOK] Req. Supp. Quest., PD 190, bar code 4369276-01 (Apr. 26, 2023). In response, Commerce explained that despite requesting the 2021 data multiple times, the GOK never provided it; thus, Commerce declined to re-solicit the 2021 cost data a fourth time. See Counsel Comm. at 1.

On September 7, 2023, Commerce published its final determination. Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea; 2021, 88 Fed. Reg. 61,509 (Dep't Commerce Sep. 7, 2023) (final results of CVD review), PD 225, bar code 4424955-03 (Sep. 7, 2023) ("Final Results"), and accompanying Issues and Decision Memo., PD 222, bar code 4425793-01 (Aug 31, 2023) ("Final Decision Memo."). Ultimately, Commerce continued to rely on facts otherwise available, assigning Hyundai a net countervailable subsidy rate of 1.08 percent. Final Decision Memo. at 8, 10–15.[4]

---

[4] On December 13, 2023, Defendant filed indices to the public and confidential administrative records underlying Commerce's final determination. See ECF No. 24 at 2–3.

On March 12, 2024, Hyundai filed the instant motion for judgment on the agency record, arguing that Commerce's final determination is unsupported by substantial evidence and otherwise not in accordance with law. <u>See generally</u> Hyundai Mot. On April 2, 2024, the GOK filed a brief in support of Hyundai's motion for judgment on the agency record, arguing that Commerce arrived at its determination that the GOK provided electricity for LTAR due to a "flawed finding that the provision of electricity is de facto specific and an inaccurate cost-recovery analysis stemming from Commerce's refusal to accept the data needed to reach an accurate decision." [GOK's] Br. Supp'n [Hyundai Mot.] at 1, Apr. 2, 2024, ECF No. 32 ("GOK Br."). On June 3, 2024, Defendant filed its response to Hyundai's motion for judgment on the agency record, arguing Commerce's determination should be sustained as lawful and is supported by substantial evidence. <u>See generally</u> Def. Resp. [Hyundai Mot.], June 03, 2024, ECF No. 34 ("Def. Resp."). On June 25, 2024, Nucor similarly filed a brief supporting Commerce's determination. [Nucor's] Resp. [Hyundai Mot.], June 25, 2024, ECF No. 38 ("Nucor Br."). On July 27, 2024, Hyundai filed its reply. <u>See generally</u> [Hyundai's] Reply Br. Supp'n [Hyundai Mot.], July 22, 2024, ECF No. 42 ("Hyundai Reply"). On Sept. 4, 2024, the Court granted Plaintiffs' motion for oral argument. <u>See</u> Order Granting Motion for Oral Argument, Sept. 4, 2024, ECF No. 47. On November 19, 2024, the Court held oral argument. <u>See</u> Oral Argument, Nov. 19, 2024, ECF No. 49.

## JURISDICTION AND STANDARD OF REVIEW

This Court exercises jurisdiction over this action contesting the final determination in an administrative review of an antidumping duty order pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c). A determination rendered by Commerce will be sustained unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Huaiyin Foreign Trade Corp. (30) v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). An abuse of agency discretion occurs when the agency bases a determination on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or the decision represents an unreasonable judgment when weighing factors. Consol. Bearings Co. v. United States, 412 F.3d 1266, 1269 (Fed. Cir. 2005).

## DISCUSSION

### I. Specificity

Defendant and Defendant-Intervenor contend that Commerce's final determination is supported by substantial evidence and in accordance with law because Commerce reasonably determined that the steel industry consumed a disproportionately large amount of electricity under the Electricity Program, and thus, received a de facto specific countervailable subsidy. Def. Br. at 24; Nucor Br. at 3; see Final Decision Memo. at 15–16. Plaintiff and Plaintiff-Intervenor contend that

Court No. 23-00211                                                                                           Page 8
**PUBLIC VERSION**

the Electricity Program is not de facto specific because the steel industry did not receive a disproportionately large amount of the subsidy alone, or when grouped together with three other industries, making Commerce's determination unsupported by substantial evidence and not in accordance with law.  Hyundai Reply at 14; GOK Br. at 3.  For the following reasons, Commerce's determination is remanded for further explanation or reconsideration.

Under 19 U.S.C. § 1677(5), a subsidy is countervailable when a government authority provides a financial contribution that confers a benefit upon the recipient which is deemed to be specific.  19 U.S.C. § 1677(5)(B) & (5A).  A government can provide financial contributions in several ways, including but not limited to, the direct transfer of funds, provision of goods or services, or foregoing revenue;[5] however, the provision of general infrastructure does not constitute a financial contribution for the purposes of 19 U.S.C. § 1677(5)(E).[6]  See 19 U.S.C. § 1677(5)(D)(iii); see also 19 C.F.R. § 351.511(d); SAA at 4242.  "General infrastructure" is "infrastructure created

---

[5] The term "financial contribution" means "(i) the direct transfer of funds, such as grants, loans, and equity infusions, or the potential direct transfer of funds or liabilities, such as loan guarantees; (ii) foregoing or not collecting revenue that is otherwise due, such as granting tax credits or deductions from taxable income; (iii) providing goods or services, other than general infrastructure; or (iv) purchasing goods."  19 U.S.C. § 1677(5)(D).

[6] Relatedly, Commerce's specificity analysis functions "as an initial screening mechanism to winnow out only those foreign subsidies which truly are broadly available and widely used throughout the economy" such as "public highways and bridges."  Statement of Administrative Action accompanying the Uruguay Round Agreements Act ("SAA"), H.R. Rep. No. 103-316, Vol. 1 at 873, reprinted in 1994 U.S.C.C.A.N. 4040, 4242 (quoting Carlisle Tire & Rubber Co v. U.S., 5 CIT 229, 233 (Ct. Int'l Trade 1983)).

Court No. 23-00211                                                                                                Page 9
**PUBLIC VERSION**

for the broad societal welfare of a country, region, state or municipality." 19 C.F.R. § 351.511(d). [7]

A subsidy may be specific as a matter of law or as a matter of fact. 19 U.S.C. § 1677(5A)(D). A domestic subsidy is de facto specific if, inter alia[8] "(III) an enterprise or industry receives a disproportionately large amount of the subsidy." 19 U.S.C. § 1677(5A)(D)(iii)(III).[9] The term disproportionate refers to "having or showing a difference that is not fair, reasonable, or expected," and disproportionality exists

---

[7] In the case where goods or services are provided, a benefit shall be treated as conferred where the goods or services are provided for less than adequate remuneration, or in the case where goods are purchased, for more than adequate remuneration. 19 U.S.C. § 1677(5)(E). The adequacy of remuneration shall be determined in relation to: (1) prevailing market conditions for the good or service being provided; or (2) the goods being purchased in the country which is subject to the investigation or review; "Prevailing market conditions" include: (1) price; (2) quality; (3) availability; (4) marketability; (5) transportation; and (6) other conditions of purchase or sale. Id.

[8] A subsidy is specific as a matter of fact if "(I) the actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number; (II) an enterprise or industry is a predominant user of the subsidy; (III) an enterprise or industry receives a disproportionately large amount of the subsidy; and (IV) the manner in which the authority providing the subsidy has exercised discretion in the decision to grant the subsidy indicates that an enterprise or industry is favored over others." 19 U.S.C. § 1677(5A)(D)(iii).
   Although not at issue here, a subsidy is specific as a matter of law where an authority or legislation expressly limits access to a subsidy to a sufficiently small number of enterprises, industries, or groups. 19 U.S.C. § 1677(5A)(D)(i).

[9] For the purposes of determining whether a specific subsidy exists under Section 1677(5A)(D), any reference to an enterprise or industry includes a group of such enterprises or industries. 19 U.S.C. § 1677(5A). In determining whether a subsidy is provided to a group of enterprises or industries, Commerce is not required to determine whether there are shared characteristics among the enterprises or industries. 19 C.F.R. § 351.502(b). When considering whether a subsidy is specific, Commerce considers (1) the extent of diversification of economic activities within the jurisdiction of the authority providing the subsidy; and (2) the length of time the subsidy program has been in operation. 19 U.S.C. § 1677(5A)(D).

when something is "too large or too small in relation to something [else]." See Disproportionate, Merriam-Webster's Dictionary, https://www.merriam-webster.com/thesaurus/disproportionate (last visited Dec. 9, 2024). Thus, when analyzing whether an industry or group of industries receives a disproportionate amount of the benefit conferred by the subsidy pursuant to 19 U.S.C. § 1677(5A)(D)(iii), receipt of a greater monetary benefit from the program than others is not determinative of disproportionality. AK Steel Corp. v. United States, 192 F.3d 1367, 1385 (Fed. Cir. 1999). Rather, the disproportionality inquiry involves a case-by-case analysis which assesses benefits, not in relation to the benefits of others, but in relation to some other comparator depending on the circumstances. Id. at 1385;[10] see also Royal Thai Government v. United States, 436 F.3d 1330, 1336 (Fed. Cir.

---

[10] AK Steel involved a tax exemption program that allowed some companies to revalue assets without meeting the stringent requirements in the Asset Revaluation Act. AK Steel, 192 F.3d at 1382–83. The respondent, a steel company, revalued its assets under the program, resulting in a drastic increase in asset value. Id. at 1383. Commerce determined that while the steel company received a large benefit, it was not disproportionate to the benefit other producers received from the program. Id. at 1384–85. The Court held this proportionality determination was reasonable because it relied on "relative percentage benefit rather than on the absolute benefit conferred on [the party.]" Id. at 1385. Although the domestic producers in that case argued that Commerce should analyze "disproportionality by looking at the percentage of the total benefit of a subsidy program accruing to a particular company or industry," the Court rejected that analysis, as it "could produce an untenable result, i.e., that a benefit conferred on a large company might be disproportionate merely because of the size of the company." Id.

2006) (stating that Commerce properly exercised the latitude afforded to it when comparing relative percentage benefits rather than absolute benefits).[11]

Commerce's determination that the Electricity Program subsidy is de facto specific because the steel industry and three other industries received a "disproportionately large amount of the subsidy" within the meaning of 19 U.S.C. § 1677(5A)(D)(iii)(III) is not supported by substantial evidence. Final Decision Memo. at 15–16. Commerce fails to provide an explanation for its determination that the benefit received by a group of entities and industries it identifies is disproportionate. See 19 U.S.C. § 1516a(b)(1)(B)(i). Nowhere does Commerce identify to what the benefit is disproportionate. Commerce simply concludes that the GOK data on the record demonstrates "the steel industry and three other industries combined,

---

[11] Both parties address Bethlehem Steel Corp. v. United States, 25 CIT 307 (Ct. Int'l Trade 2001). Although prior CIT cases do not bind this Court, they can be persuasive based upon their reasoning where they confront similar records. In Bethlehem Steel, the Court reviewed a program that granted discounts based on electricity usage, resulting in high discounts for steel companies. Bethlehem Steel, 25 CIT at 320. Commerce determined the program was not specific and the Court was asked to determine whether that decision was reasonable while also noting its obligation to give deference to Commerce's reasonable interpretation of "disproportionate". Id. at 308–09, 322–23. The Court took note of the steel industry's large consumption of electricity and concluded that although the steel industry's benefit was "disparate," it was not "disproportionate" to what other industries or entities received based on their usage. Id. at 322. In holding that disparity alone was insufficient to support a finding of disproportionality, the Court noted that a program designed to confer benefits based on usage levels will necessarily result in one or more groups receiving a greater share than another group, simply because of differences in usage. Id.

consume a disproportionately large amount of electricity in Korea."[12]  Final Decision Memo. at 16.  Commerce concedes that Article 14 of the GOK's Electricity Business Law provides KEPCO must supply electricity to all with automatic eligibility.  Id. at 15.  The four industries Commerce grouped together specifically benefit according to usage.  Id. at 15–16; see also GOK IQR at 30, Ex. E-10 (explaining that the Electricity Program is based on usage and the electricity prices are set using a standard pricing mechanism ensuring that no one company or industrial user receives a more preferential rate for electricity).  Yet, Commerce elides the reality that programs designed to confer benefits on usage levels will necessarily result in larger users receiving a proportionally larger percentage of the subsidy.  Final Decision Memo. at 16.  Disproportionality requires that an enterprise or industry is favored in some way (i.e., it receives more than its fair share). Commerce must explain how the combined industries it identifies benefit more than would be expected, based on their usage given that the subsidy in question is designed to confer benefits on usage levels, or in relation to some other comparator.

　　　Moreover, Commerce must explain why these industries are grouped together for purposes of its analysis.  At first glance one might conclude that Commerce's

---

[12] The data relied upon by Commerce in its determination showed that the steel industry consumed [[          ]] of the total electricity consumption in Korea, and [[          ]] of the total industrial electricity consumption in Korea.  See GOK IQR at 35–36.  When viewing the steel industry's electricity consumption, together with the three other industries Commerce relied on for its determination, the four industries combined consume [[          ]] of the total electricity consumption in Korea, and [[          ]] of the total industrial electricity consumption in Korea.  See id.

regulation specifically providing that it need not determine there are "shared characteristics" among the enterprises or industries grouped together for purposes of its specificity analysis would permit Commerce to randomly group industries when conducting a specificity analysis. See 19 C.F.R. § 351.502(b). However, in its preamble, Commerce makes clear that the regulation, consistent with the SAA, obviates the need for explanation only when the subsidies are not widely available. Countervailing Duties, 63 Fed. Reg. 65348-01, 65,357 (Dep't Commerce 1998) ("Preamble"); see also SAA at 873. In the preamble Commerce explained "there is no basis for adding the further requirement that subsidies that are not widely distributed are also confined to a group of enterprises or industries that share similar characteristics." Preamble at 65,357. Thus, where the number of recipients is limited, Commerce can nonetheless conclude that those recipients are the beneficiaries of a specific subsidy without showing that they share any characteristics. See 19 C.F.R. § 351.502(D). Here, the recipients are not limited. Final Decision Memo. at 15-16 (explaining that Commerce applied the disproportionality test because the Electricity Program was provided to numerous and diverse industries); see also GOK IQR at 208, Ex. E-4, Ex. E-10. Commerce asserts that, while Section 1677 and the regulations do not mandate any specific methodology when conducting a de facto analysis, it chose the four industries because they were the top industrial users of electricity in Korea. Def. Br. at 26–28; see also 19 U.S.C. § 1677(5A)(D)(iii); 19 C.F.R. § 351.502(D). Without more, Commerce's explanation is insufficient. Even where an agency has discretion to act it must act

reasonably and explain itself. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 48 (1983). Where a subsidy is widely distributed, Commerce cannot create a group to limit the subsidy for purposes of satisfying the specificity requirement without providing a rational basis for the grouping. See 19 U.S.C. § 1677(5A); see also SAA at 4242; see also State Farm Mut. Auto. Ins. Co., 463 U.S. at 48. Commerce's determination is not supported by substantial evidence and is remanded for further explanation or reconsideration.

## II. Cost Data

Plaintiff and Plaintiff-Intervenor contend that Commerce's determination to reject KEPCO's 2021 cost data and rely on facts otherwise available is an abuse of discretion, unsupported by substantial evidence, and not in accordance with law. Hyundai Mot. at 21; GOK Br. at 10. Defendant and Defendant-Intervenor argue that Commerce's refusal to solicit additional factual information from the GOK and rely on facts otherwise available is supported by substantial evidence, not an abuse of its discretion, and in accordance with law. Def. Br. at 13; Nucor Br. at 9; see Final Decision Memo. at 9–12. For the reasons that follow, Commerce's decision to decline to re-issue the fourth questionnaire and apply facts otherwise available is sustained.

Commerce has broad authority to set and extend its deadlines for submissions of requested information. SKF USA Inc. v. United States, 33 CIT 1866, 1876 (Ct. Int'l Trade 2009). An abuse of agency discretion occurs when the agency bases a determination on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or the decision represents an unreasonable

judgment when weighing factors. Consol. Bearings Co. v. United States, 412 F.3d 1266, 1269 (Fed. Cir. 2005). Commerce can also abuse its discretion if it refuses to accept updated data when there is ample time to verify or consider it, or if it departs from a consistent practice without a reasonable explanation. Goodluck India Limited v. United States, 11 F.4th 1335, 1342 (Fed. Cir. 2021) (citations and quotations omitted); see e.g. Grupo Acerero S.A. De C.V. v. United States, 698 F.Supp.3d 1320, 1333 (Ct. Int'l Trade 2024) (holding Commerce abused its discretion in denying an extension request after accepting the extension request of a similarly situated respondent). Commerce must consider "the interests of accuracy and fairness, and the burden imposed by the agency by accepting the late submission." Goodluck India Ltd., 11 F.4th at 1342 (holding Commerce did not abuse its discretion in rejecting non-minor revised submissions); NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208–09 (Fed. Cir. 1995) ("NTN") (holding Commerce abused its discretion when denying a request for a correction of a clerical error); Timken U.S. Corp. v. United States, 434 F. 3d 1345, 1357 (Fed. Cir. 2006) (expanding NTN to allow clarifications of clerical, methodology, and substantive errors depending on the amount of time Commerce had to consider the clarifications); but see Grobest & I-Mei Indus. (Vietnam) Co. v. United States, 36 C.I.T. 98, 123 (Ct. Int'l Trade 2012) (concluding Commerce abused its discretion denying an untimely separate rate certification early in the review process).

Commerce "will reject any untimely filed or unsolicited questionnaire response and provide, to the extent practicable, written notice stating the reasons for

rejection." 19 C.F.R. § 351.301(c)(1). If factual information is submitted to rebut, clarify, or correct questionnaire responses, Commerce will "reject any untimely filed rebuttal, clarification, or corrections submission," and if insufficient time remains before the due date of the final determination, Commerce "may specify shorter deadlines under this section." 19 C.F.R. § 351.301(c)(1)(v). Further, Commerce may exercise its discretion in the rejection of untimely filed or unsolicited material. See 19 C.F.R. § 351.502(d).

Subject to 19 U.S.C. § 1677m(d), Commerce applies facts otherwise available in a countervailing duty case if (1) "necessary information is not available on the record" or (2) an interested party "withholds information that has been requested by [Commerce]," "fails to provide such information by the deadlines for submission of the information or in the form and manner requested," or "significantly impedes a proceeding." 19 U.S.C. 1677e(a)(1)-(2)(A)-(C); see also 19 C.F.R. § 351.308(a).[13] When using facts otherwise available, Commerce must promptly inform parties of any deficiency in a questionnaire response and, "to the extent practicable, provide [...] an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle." 19 U.S.C. § 1677m(d); see also 19 U.S.C. § 1677e(a).

---

[13] Commerce may make determinations based on facts otherwise available whenever "necessary information is not available on the record, an interested party [...] withholds or fails to provide information requested in a timely manner and in a form required or significantly impedes a proceeding, [or Commerce] is unable to verify submitted information." 19 U.S.C. 1677e(a)(1)–(2)(A)–(C); see also 19 C.F.R. § 351.308(a).

Here, Commerce reasonably declined to request cost information for a fourth time from the GOK and applied facts otherwise available. As explained above, Commerce issued an initial questionnaire to the GOK, requesting information regarding 2021 cost data filed annually by the administering agency, a supplemental questionnaire, and a subsequent third request for 2021 cost data. See Commerce Initial Quest. at 22, Commerce Supp. Quest. at 2; Commerce Sec. Supp. Quest. at 1. At that time, the GOK indicated it was unable to provide the data or a date on which the data would be available. [GOK] Sec. Supp. Resp. at 1–2. After Commerce had issued its preliminary decision, the GOK contacted Commerce offering the "substantially complete" 2021 cost data. Final Decision Memo. at 10.

Commerce explains that it declined "to solicit and analyze" the 2021 cost data the GOK offered because there would have been insufficient time to review the information and ensure that interested parties had an opportunity to comment before the deadline for issuing the final results. Id. at 10, 12. Additionally, Commerce would have had to evaluate the data, which might require supplemental questionnaires and allow interested parties time to comment. Id. at 11–12. Further, since Commerce would have been evaluating the revisions to the electricity pricing system for the first time, it may have had to conduct a post-preliminary analysis of the program, where parties would have been provided an opportunity to comment on the analysis in their briefs. Id. Commerce acted within its discretion to conclude that there was not enough time to properly review the late information before it had to issue its final

results.[14]  See e.g. Yantai Timken Co., Ltd. V. United States, 36 CIT 1741, 1755 (Ct. Int'l Trade 2007) (finding Commerce did not abuse its broad discretion to enforce time limits in rejecting supplemental information provided after the deadline).

Further, Commerce fulfilled its duty under Section 1677m(d) to allow the GOK to "remedy or explain" the deficiency in Commerce's original request for the 2021 cost data.  See 19 U.S.C. 1677m(d).  Commerce provided the GOK with multiple opportunities to submit the information before issuing its preliminary results.  Final Decision Memo. at 10–12.  The GOK offered to submit the data after the deadline. Id. at 10.  Even when the GOK offered the data, it indicated the data had been compiled but was not complete.  Id. at 10–11.  Commerce explained it "generally does not consider information unless it is finalized and completed."  Id. at 11.  Section 1677m(d) does not compel Commerce to give a party that has intentionally submitted incomplete information a further opportunity to remedy and explain.  See Papierfabrik, 843 F.3d at 1384.  Therefore, because the KEPCO data was not submitted by the deadline and incomplete, Commerce's decision is reasonable on this record and in accordance with law.

---

[14] Hyundai likens its situation to American Honey Producers Association v. United States ("AHPA"), where Commerce accepted financial statements at verification despite respondents' numerous delays, because Commerce determined they had complied with requests for information by indicating the financial statements would be provided when available.  AHPA, 653 F.Supp.3d 1329, 1344 (Ct. of Int'l Trade 2023).  However, in that case, Commerce accepted these financial statements not as new factual information, but for the purposes of verifying the accuracy of the accounting balances previously submitted.  Id. at 1335.

# CONCLUSION

For the foregoing reasons, the Court sustains Commerce's decision to decline to issue the fourth questionnaire and apply facts otherwise available to determine whether Hyundai benefited from the Electricity Program. Commerce's determination that the Electricity Program is de facto specific is remanded for further explanation or reconsideration. In accordance with the foregoing, it is

**ORDERED** that the final results, see Final Results, are remanded for further explanation or reconsideration consistent with this opinion; and it is further

**ORDERED** that Commerce shall file its remand redetermination with the Court within 90 days of this date; and it is further

**ORDERED** that the parties shall have 30 days to file comments on the remand redetermination; and it is further

**ORDERED** that the parties shall have 30 days to file their replies to the comments on the remand redetermination; and it is further

**ORDERED** that the parties shall file the joint appendix within 14 days after the filing of replies to the comments on the remand redetermination; and it is further

**ORDERED** that commerce shall file the administrative record within 14 days of the date of filing its remand redetermination.

/s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated: December 12, 2024
New York, New York