NON-CONFIDENTIAL VERSION

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**HYUNDAI STEEL COMPANY,**
**Plaintiff,**
**and**
**GOVERNMENT OF THE REPUBLIC OF KOREA,**
**Plaintiff-Intervenor,**
**v.**
**UNITED STATES,**
**Defendant,**
**and**
**NUCOR CORPORATION,**
**Defendant-Intervenor.**

**Before: Hon. Claire R. Kelly, Judge**

**Court No. 23-00211**

**NON-CONFIDENTIAL VERSION**

**Business Proprietary Information Removed From Pages: 2-3**

**DEFENDANT-INTERVENOR'S COMMENTS IN SUPPORT OF THE FINAL RESULS OF REDETERMINATION PURSUANT TO COURT REMAND**

**Alan H. Price, Esq.**
**Christopher B. Weld, Esq.**
**Derick G. Holt, Esq.**
**Paul A. Devamithran, Esq.**

**WILEY REIN LLP**
**2050 M Street, NW**
**Washington, DC 20036**
**(202) 719-7000**

***Counsel for Nucor Corporation***

**Dated: July 2, 2025**

Ct. No. 23-00211 NON-CONFIDENTIAL VERSION

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 1 |

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AK Steel Corp. v. United States*,
192 F.3d 1367 (Fed. Cir. 1999)....................4

*Bethlehem Steel Corp. v. United States*,
25 CIT 307, 140 F.Supp.2d 1354 (2001)....................2, 3, 4

*Changzhou Trina Solar Energy Co. v. United States*,
466 F.Supp.3d 1287 (Ct. Int'l Trade 2020)....................6

*Hyundai Steel Co. v. United States*,
No. 23-00211, slip op. 24-135 (Dec. 12, 2024),....................1

*Mosaic Co. v. United States*,
589 F.Supp.3d 1298 (Ct. Int'l Trade 2022)....................6

**Statutes**

19 U.S.C. § 1677(5A)(D)....................3, 7

**Regulations**

19 C.F.R. § 351.502(a)....................3

**Administrative Materials**

*Certain Aluminum Foil from the Sultanate of Oman*,
86 Fed. Reg. 52,888 (Dep't Commerce Sept. 23, 2021)....................6

*Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*,
88 Fed. Reg. 86,318 (Dep't Commerce Dec. 13, 2023)....................5

*Certain Cold-Rolled Steel Flat Products from the Republic of Korea*,
89 Fed. Reg. 15,124 (Dep't Commerce Mar. 1, 2024....................5

*Certain Corrosion-Resistant Steel Products from the Republic of Korea*,
89 Fed. Reg. 6,501 (Dep't Commerce Feb. 1, 2024)....................5

*Certain Hot-Rolled Steel Flat Products from the Republic of Korea*,
89 Fed. Reg. 41,380 (Dep't Commerce May 13, 2024)....................5

*Certain Steel Nails from Thailand*,
87 Fed. Reg. 51,343 (Dep't Commerce Aug. 22, 2022)....................6

*Large Diameter Welded Pipe from the Republic of Korea*,
88 Fed. Reg. 85,236 (Dep't Commerce Dec. 7, 2023) ..........5

*Multilayered Wood Flooring from the People's Republic of China*,
79 Fed. Reg. 45,178 (Dep't Commerce Aug. 4, 2014) ..........6

## I. INTRODUCTION

On behalf of Defendant-Intervenor Nucor Corporation ("Nucor"), we hereby submit the following comments in support of the April 11, 2025 remand determination issued by the U.S. Department of Commerce ("Commerce"). Final Results of Redetermination Pursuant to Ct. Remand (Apr. 11, 2025), ECF No. 62, 63, C.R.R. 3, P.R.R. 8 ("Remand Determination"). Commerce continues to properly find that the Government of Korea's provision of electricity for less than adequate renumeration ("LTAR") constitutes a countervailable subsidy. Specifically, Commerce correctly determines that the Government of Korea's provision of electricity for LTAR constitutes a *de facto* specific subsidy and Commerce refined and clarified its analysis of the record in reaching this conclusion. In this regard, the Remand Determination is consistent with the Court's December 12, 2024 opinion. *Hyundai Steel Co. v. United States*, No. 23-00211, slip op. 24-135 (Dec. 12, 2024), ECF No. 50. Therefore, the Court should reject arguments to the contrary made by Plaintiff Hyundai Steel Company ("Plaintiff" or "Hyundai Steel") and Plaintiff-Intervenor the Government of Korea ("Plaintiff-Intervenor" or "GOK") in their comments in opposition to the Remand Determination, Pl.'s Comments on Remand Results (May 19, 2025), ECF No. 67 ("Hyundai Cmts."); Pl.-Intervenor's Comments on Remand Results (May 19, 2025), ECF No. 69 ("GOK Cmts.") and the Court should sustain Commerce's determination as it is supported by substantial evidence and in accordance with law.

## II. ARGUMENT

Commerce continues to properly find that the provision of electricity for LTAR is *de facto* specific, and the Court should sustain the agency's remand determination for the following reasons. First, consistent with the Court's opinion, Commerce refined its analysis, narrowing the group of industries assessed for disproportionate use from four to three due to reasonable and

clearly identified dividing lines that are entirely consistent with the statute. Commerce also rearticulated to whom the steel industry's use of the subsidy is disproportionate. Second, Plaintiff's continued reliance on *Bethlehem Steel* for the proposition that larger companies may receive disparate but not disproportionate benefit is unavailing as the voluntary curtailment program at issue in *Bethlehem* is readily distinguishable from the LTAR program at issue in this case wherein the level of usage of the program is directly tied to the level of subsidization received by the respondent. Third, Plaintiff and Plaintiff-Intervenor are unable to distinguish Commerce's specificity finding in this case from the number of cases in which the agency has made substantially similar findings in near identical circumstances. Commerce's specificity analysis is supported by the record, the statute, and prior cases, and the Court should therefore sustain Commerce's *de facto* specificity determination.

First, consistent with the Court's opinion, Commerce refined its analysis, narrowing the group of industries assessed for disproportionate use. On remand, Commerce found that the "steel industry and *two other industries* [ ], consumed a disproportionately larger amount of industrial class electricity in Korea in comparison to the other industries reported." Remand Determination at 5 (emphasis in original). Commerce clearly explained its reasons for this grouping including but not limited to the following record evidence: (i) the top three industries consumed [ ], *i.e.*, [ ] percent of all industrial class electricity during the POR; (ii) the next seven industrial users of electricity combined consumed just [ ] percent of industrial class electricity; (iii) the top three industries all individually consumed comparable, [ ] rates of industrial electricity, *i.e.*, [ ]; and (iv) there was a significant drop-off after the top three to the fourth largest consuming industry, *i.e.*, [ ]. Remand

Determination at 6-7. In other words, the percent of industrial electricity consumed by the fourth largest industry, [ ], was just over [ ] of the third largest, the [ ] industry. *Id.*

Contrary to Plaintiffs' claims, Commerce has not simply "sliced and diced the usage data to give the impression that it is conducting some type of meaningful comparative analysis." Hyundai Comments at 3. For the *de facto* specificity analysis, the term "enterprise or industry" includes a group of enterprises or industries. 19 U.S.C. § 1677(5A)(D). To argue that it is arbitrary to group the [ ] beneficiaries of the electricity for LTAR subsidy – who together account for [ ] of all industrial electricity use in Korea and who individually [ ] account for [ ] percentages of industrial electricity in Korea – is to strip the statute of meaning. The industries are not "random," and they were not "arbitrarily selected." GOK Cmts. at 12. Instead, Commerce made reasonable factual determination of the kind required in a *de facto* specificity analysis. 19 C.F.R. § 351.502(a). *See also id.* § 351.502(b) (explaining that Commerce's analysis of specificity based on a "group" of industries or enterprises does not depend on "whether there are shared characteristics among the enterprises or industries . . . .") (emphasis added). Under Plaintiff's reasoning, effectively any finding of disproportionate use by a group of industries or enterprises would be arbitrary and capricious "slicing and dicing."

As demonstrated above, Commerce clearly explained why the industries were grouped together, as instructed by the Court. Remand Determination at 12. Commerce also explained what the groups' usage was disproportionate to, namely, the usage (and resulting benefit) of the other reported industrial users of electricity in Korea. *Id.* at 5.

Second, Plaintiff and Plaintiff-Intervenor's continued reliance on *Bethlehem Steel* is unavailing. As the Federal Circuit has explained, "{d}eterminations of disproportionality and dominant use are not subject to rigid rules, but rather must be determined on a case-by-case basis

taking into account all the facts and circumstances of a particular case." *AK Steel Corp. v. United States*, 192 F.3d 1367, 1385 (Fed. Cir. 1999). The determination at issue in *Bethlehem Steel* did not involve an adequacy of remuneration subsidy, which Plaintiffs seem to misunderstand entirely or object to categorically. Instead, *Bethlehem Steel* addressed a "voluntary curtailment" program in which the GOK automatically provided identical price discounts to general, educational, or industrial users that voluntarily agreed to curtail electricity consumption by at least 20%.[1] *Bethlehem Steel Corp. v. United States*, 25 CIT 307, 319-20, 140 F.Supp.2d 1354, 1367 (2001). In contrast, as Commerce explained, the issue is an LTAR subsidy in which the benefit amounts are necessarily tied to the individual pricing and consumption patterns of individual companies and the type of electricity consumed. Remand Determination at 9-10. In this context, it is unreasonable to say that the consumption volumes of a beneficiary industry or enterprise are necessarily or inherently greater than that of other industries or enterprises. That is because consumption volumes are directly tied to prices paid – *i.e.*, an industry or enterprise benefitting from an LTAR subsidy is likely to consume more of the subsidized input than it otherwise would in large part because it is being subsidized. Accepting the argument that a determination of *de facto* specificity based on disproportionate or predominant use may not be based on relative consumption volumes would effectively nullify those provisions for the purpose of adequate remuneration programs.

As Commerce explains on remand, the agency has "previously rejected the argument that large companies which qualify for more benefits based on their size should not be found to receive a disproportionate share of the benefits," noting settled agency precedent that "the very purpose of

---

[1] Nucor notes that the program *in Bethlehem Steel* is similar to the subsidy program reviewed in this proceeding named the "Electricity Discounts under Trading of Demand Response Resources Program," where Commerce routinely finds that the program is countervailable, and the respondents do not challenge the specificity analysis there.

*de facto* specificity … {is} to ensure that companies that qualify and receive more benefits under a government subsidy program do not escape redress . . . simply because the law implementing the subsidy program does not explicitly limit the benefits to a group of enterprises or industries." Remand Determination at 20. That is precisely what Plaintiffs are seeking here: to escape redress despite receiving more benefits.

Third, Plaintiff argues that the "provision of electricity for LTAR program is widely available and used across virtually every industry in Korea," such that the subsidy cannot be specific, ignoring and failing to the distinguish copious amounts of agency and court precedent. Hyundai Steel Cmts. at 11. Commerce has found that the provision of electricity for LTAR, as well as other energy inputs, to be countervailable, and thus specific, in numerous cases, including proceedings involving Korea. *See, e.g.*, Issues and Decision Memorandum accompanying *Certain Hot-Rolled Steel Flat Products from the Republic of Korea*, 89 Fed. Reg. 41,380 (Dep't Commerce May 13, 2024) (final results of countervailing duty admin. rev.; 2021) at cmt. 4; Issues and Decision Memorandum accompanying *Certain Cold-Rolled Steel Flat Products from the Republic of Korea*, 89 Fed. Reg. 15,124 (Dep't Commerce Mar. 1, 2024) (final results of countervailing duty admin. rev.; 2021) at cmt. 4; Issues and Decision Memorandum accompanying *Certain Corrosion-Resistant Steel Products from the Republic of Korea*, 89 Fed. Reg. 6,501 (Dep't Commerce Feb. 1, 2024) (final results of countervailing duty admin. rev.; 2021) at cmt. 1; Issues and Decision Memorandum accompanying *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*, 88 Fed. Reg. 86,318 (Dep't Commerce Dec. 13, 2023) (final results of countervailing duty admin. rev.; 2021) at cmt. 1; Issues and Decision Memorandum accompanying *Large Diameter Welded Pipe from the Republic of Korea*, 88 Fed. Reg. 85,236 (Dep't Commerce Dec. 7, 2023) (final results of countervailing duty admin. rev.; 2021) at cmt. 2. Commerce has also found the provision

of electricity for LTAR to be specific in proceedings involving other countries. *See, e.g.*, Issues and Decision Memorandum accompanying *Certain Steel Nails from Thailand*, 87 Fed. Reg. 51,343 (Dep't Commerce Aug. 22, 2022) (final deter. of countervailing duty inv.) at cmt. 2; Issues and Decision Memorandum accompanying *Certain Aluminum Foil from the Sultanate of Oman*, 86 Fed. Reg. 52,888 (Dep't Commerce Sept. 23, 2021) (final deter. of countervailing duty inv.) at cmt. 4; Issues and Decision Memorandum accompanying *Multilayered Wood Flooring from the People's Republic of China*, 79 Fed. Reg. 45,178 (Dep't Commerce Aug. 4, 2014) (final deter. of countervailing duty admin. rev.) at cmt. 3.

Furthermore, the courts have sustained Commerce's findings that electricity and other energy inputs have been found to be specific. *See, e.g.*, *Canadian Solar Inc. v. United States*, Consol. Ct. No. 19-00178, slip op. 22-49 at 5 (Ct. Int'l Trade May 19, 2022) (upholding Commerce's finding that the subsidization of electricity for LTAR from the Government of China was specific); *Changzhou Trina Solar Energy Co. v. United States*, 466 F.Supp.3d 1287, 1303 (Ct. Int'l Trade 2020) (sustaining Commerce's finding that the provision of electricity for LTAR is a specific subsidy); *Mosaic Co. v. United States*, 589 F.Supp.3d 1298, 1309 (Ct. Int'l Trade 2022) (finding that substantial evidence supports Commerce's determination that the provision of natural gas was de facto specific).

For all of these reasons, and others described in Commerce's remand determination, the Court should sustain Commerce's remand results determining that the GOK's provision of electricity

or LTAR to the "group of . . . industries" for which Hyundai Steel belongs is *de facto* specific. 19 U.S.C. § 1677(5A)(D).

* * *

Respectfully submitted,

*/s/ Derick G. Holt*
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Derick G. Holt, Esq.
Paul A. Devamithran, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Nucor Corporation*

Dated: July 2, 2025

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor Nucor Corporation's Comments on Remand Redetermination, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 1,852 words.

*/s/ Derick G. Holt*
(Signature of Attorney)

Derick G. Holt
(Name of Attorney)

Nucor Corporation
(Representative Of)

July 2, 2025
(Date)