# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| HYUNDAI STEEL COMPANY,<br><br>        Plaintiff,<br><br>   and<br><br>GOVERNMENT OF THE REPUBLIC OF KOREA,<br><br>        Plaintiff-Intervenor,<br><br>   v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>   and<br><br>NUCOR CORPORATION,<br><br>        Defendant-Intervenor. | **NON-CONFIDENTIAL VERSION**<br>Proprietary Information Removed from Pages 3, 7<br><br>Ct. No. 23-00211 |

## PLAINTIFF HYUNDAI STEEL COMPANY'S
## COMMENTS IN OPPOSITION TO SECOND REMAND RESULTS

                           Brady W. Mills
                           R. Will Planert
                           Mary S. Hodgins
                           Nicholas C. Duffey

                           **TAFT STETTINIUS & HOLLISTER LLP**
                           1333 New Hampshire Ave, N.W., Suite 800
                           Washington, D.C. 20036
                           (202) 216-4116

                           *Counsel to Plaintiff Hyundai Steel Company*

January 29, 2026

Table Of Contents

Table Of Authorities .................................................................................................................. ii
I.         Argument ........................................................................................................................ 2
II.        Conclusion ................................................................................................................... 11
Certificate Of Compliance ........................................................................................................ 12
Certificate of Service ................................................................................................................ 13
Attachment 1 ............................................................................................................................. 14

*Table Of Authorities*

Page(s)

**Cases**

*AK Steel Corp. v. United States*,
   192 F.3d 1367 (Fed. Cir. 1999) ............................................................................................ 5-6

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938) ................................................................................................................. 6

*Hyundai Steel Co. v. United States*,
   745 F. Supp. 3d 1345 (Ct. Int'l Trade 2024) ....................................................................... 2-3

*Hyundai Steel Co. v. United States*,
   798 F. Supp. 3d 1283 (Ct. Int'l Trade 2025) ....................................................................... 2-5

*Mosaic Co. v. United States*,
   659 F. Supp. 3d 1285 (Ct. Int'l Trade 2023) ....................................................................... 8-9

*Mosaic Co. v. United States*,
   774 F. Supp. 3d 1362 (Ct. Int'l Trade 2025) .........................................................................10

*Nippon Steel Corp. v. United States*,
   337 F.3d 1373 (Fed. Cir. 2003) ................................................................................................6

*POSCO v. United States*,
   794 F. Supp. 3d 1402 (Ct. Int'l Trade 2025) ...................................................................3, 10

**Statutes**

19 U.S.C. § 1677(5A)(D)(iii) ................................................................................................3-4, 8-9

**Other Authorities**

*Disproportionate*, The Britannica Dictionary, available at
   https://www.britannica.com/dictionary/disproportionate (last visited Jan. 28,
   2026) .........................................................................................................................................4

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| HYUNDAI STEEL COMPANY,<br><br>    Plaintiff,<br><br> and<br><br>GOVERNMENT OF THE REPUBLIC<br>OF KOREA,<br><br>    Plaintiff-Intervenor,<br><br> v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br> and<br><br>NUCOR CORPORATION,<br><br>    Defendant-Intervenor. | **NON-CONFIDENTIAL VERSION**<br>Proprietary Information<br>Removed from Pages 3, 7<br><br>Ct. No. 23-00211 |

**PLAINTIFF HYUNDAI STEEL COMPANY'S
COMMENTS IN OPPOSITION TO SECOND REMAND RESULTS**

Pursuant to U.S. Court of International Trade Rule 56.2, and the scheduling order, Plaintiff Hyundai Steel Company ("Hyundai Steel" or "Plaintiff") hereby comments in opposition to the U.S. Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Second Court Remand.  *See* Final Results of Redetermination Pursuant to Court Remand, *Hyundai Steel Company v. United States*, 23-cv-00211-CRK (Dec. 23, 2025), ECF No. 93 ("*Second Remand Results*").  The underlying administrative determination at issue in the *Remand Results* is *Certain Cut-To-Length Carbon-Quality Steel Plate from the Republic of Korea: Final Results and Recission, in Part, of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 61,509 (Dep't Commerce Sept. 7, 2023), ECF No. 24-4 ("*Final Results*"); Mem. from James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, U.S. Dep't of Commerce, to Lisa W. Wang, Assistant

Secretary for Enforcement and Compliance, U.S. Dep't Commerce, "Issues and Decision Memorandum for the Final Results of Countervailing Duty Administrative Review; 2021: Certain Cut-To-Length Carbon-Quality Steel Plate from the Republic of Korea" (Aug. 30, 2023), ECF No. 24-5 ("Final Decision Mem.").

As discussed below, the *Second Remand Results* are unsupported by substantial evidence and are otherwise not in accordance with law.[1]

## I.     Argument

In *Hyundai Steel I*, the Court remanded Commerce's determination that the Government of Korea's ("GOK") provision of electricity for less than adequate remuneration ("LTAR") was *de facto* specific and found that Commerce had misinterpreted the meaning of disproportionality and rendered a decision that was not supported by substantial evidence. *Hyundai Steel Co. v. United States*, 745 F. Supp. 3d 1345 (Ct. Int'l Trade 2024) ("*Hyundai Steel I*"). In its first remand determination, Commerce found that the steel industry and a group of two other industries consuming industrial class electricity had consumed a disproportionately large amount of the alleged subsidy from the electricity for LTAR program. *Hyundai Steel Co. v. United States*, 798 F. Supp. 3d 1283, 1288 (Ct. Int'l Trade 2025) ("*Hyundai Steel II*"). In *Hyundai Steel II*, the Court again rejected Commerce's *de facto* specificity determination and reaffirmed that "disproportionate means 'too large or too small in relation to something,'" and that "'disproportionality' requires a comparison of the amount of the subsidy and an attribute of the industry, not a comparison of the amount of a subsidy given to different industries." *Id.* at 1288.

---

[1] Citations to the administrative record shall be to the public or confidential record document number ("PR" or "CR") followed by the page or exhibit number. Citations to the remand administrative record shall be to the public or confidential remand record document number ("PRR" or "CRR") followed by the page or exhibit number.

2

The Court thus held that Commerce "must explain how the {industry} it identifies benefit{s} more than would be expected, based on {its} usage given that the subsidy in question is designed to confer benefits on usage levels, or in relation to some other comparator." *Id.* at 1288 (citing *Hyundai Steel I*, 745 F. Supp. 3d. at 1352-53); *see also POSCO v. United States*, 794 F. Supp. 3d 1402 (Ct. Int'l Trade 2025) ("*POSCO*").

In the *Second Remand Results*, Commerce determined that the provision of electricity for LTAR is *de facto* specific pursuant to section 771(5A)(D)(iii)(III) because Hyundai Steel allegedly received more of the electricity subsidy than would be expected during the POR. *Second Remand Results* at 6 & Attachment (citing Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea, Case No. C-580-837: Hyundai Steel's Initial Questionnaire Response" at Exhibit E-1 (June 27, 2022) CR 67–88, 148–213, PR 113–124 ("Hyundai Steel's Initial Questionnaire Response"); Letter from Yoon & Yang LLC to Sec'y Commerce, "Administrative Review on Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Response to the Initial Questionnaire" (June 27, 2022), CR 29–66, PR 60–85 ("GOK Initial Questionnaire Response"). To reach that result, Commerce compared Hyundai Steel's share of total industrial class electricity during the period of review ("POR") ([     ] percent) with Hyundai Steel's share of Korea's gross domestic product ("GDP") for the same period ([     ] percent). *Second Remand Results* at Attachment. Based on this comparison, Commerce concluded that disproportionality exists pursuant to section 771(5A)(D)(iii)(III) because Hyundai Steel's share of total industrial class electricity consumption during the POR was [          ] its contribution to Korea's GDP. *Second Remand Results* at 6. The *Second Remand Results* continue to be unsupported by substantial evidence and otherwise not in accordance with law.

3

First, the comparison of Hyundai Steel's share of total industrial class electricity to Hyundai Steel's contribution to GDP says nothing about whether Hyundai Steel received a disproportionately large amount of the subsidy pursuant to section 771(5A)(D)(iii)(III). *See* 19 U.S.C. § 1677(5A)(D)(iii)(III). The term "disproportionate" means "having or showing a difference that is not fair, reasonable, or expected: too large or too small in relation to something." *Disproportionate*, The Britannica Dictionary, available at https://www.britannica.com/dictionary/disproportionate (last visited Jan. 28, 2026) (attached as Attachment 1). The disproportionality analysis thus requires Commerce to determine whether Hyundai Steel is "favored in some way," "receives more than its fair share," or "benefit{s} more than would be expected." *Hyundai Steel II*, 798 F. Supp. 3d at 1288. The Court explained that Commerce must conduct a "case-by-case analysis which assesses benefits, not in relation to the benefits of others, but in relation to some other comparator *depending on the circumstances*." *Id.* at 1288 (emphasis added).

Although Commerce has offered a new comparator that no longer assesses benefits in relation to other users, the comparison of Hyundai Steel's industrial electricity consumption with its contribution to GDP is not an appropriate analysis under the circumstances of this case to demonstrate disproportionality. There is no basis to conclude that Hyundai Steel is favored or benefits more than would be expected from the electricity for LTAR program merely because it consumes more industrial electricity than it contributes to GDP. There is no logical correlation between an enterprise or industry's consumption of industrial electricity and its contribution to GDP. By way of example, the finance and real estate sectors would not consume much, if any, industrial electricity (or even other types of electricity for that matter) to generate sales revenue. They are not electricity intensive sectors but instead generate revenue from the provision of

4

financial services or the marketing and sale of real estate. The same would be true for the information sector that generates revenue through brain power and not by the consumption of electric power. As these examples make clear, Commerce's assumption that there should be some one-to-one or close correlation between a company or industry's contribution to GDP and its consumption of electricity – industrial or otherwise – is faulty. Therefore, whether Hyundai Steel consumed more industrial electricity than it contributed to GDP does not support the conclusion that Hyundai Steel is "favored in some way," "receives more than its fair share," or "benefit{s} more than would be expected." *Hyundai Steel II,* 798 F. Supp. 3d at 1288.

Commerce's retort in the *Second Remand Results* is unconvincing. Specifically, Commerce argues that "{i}n the context of the provision of electricity, the comparison demonstrates that the benefits from {the} Electricity Subsidy are not evenly distributed across the Korean economy in a way that would be expected if the purpose of the subsidy was to benefit all enterprises equally." *Second Remand Results* at 11. Commerce fails to explain on what basis it concludes that it would be "expected" that the provision of industrial electricity for LTAR would be evenly distributed across the Korea economy. Using the example of major sectors of the economy such as finance or real estate, it certainly would not be expected that they would consume industrial electricity in the same amounts as manufacturing industries such that usage and benefits would be evenly distributed. Nor does Commerce explain the basis for its assumption that the purpose of this program is to benefit all enterprises equally or, for that matter, why the purpose is relevant to a *de facto* specificity determination. Even if a subsidy program is not equally distributed this does not equate to disproportionality. *See AK Steel Corp.*

*v. United States*, 192 F.3d 1367, 1385 (Fed. Cir. 1999) (receipt of a greater monetary benefit from the program than others is not determinative of disproportionality).

      Commerce also argues that it did not assume that there would be a close correlation between a company's contribution to GDP and its consumption of electricity, but then just asserts that "{g}iven the nature of steel production, it is not illogical to expect that a steel company's consumption of industrial electricity would track its contribution to the economy." *Second Remand Results* at 12.  This is a non-sequitur.  If Commerce is not assuming a close correlation, then it has provided no support for its conclusion that consumption of industrial electricity should track contributions to GDP.  Moreover, to support its disproportionality determination with substantial evidence, the standard is not for Commerce to simply provide an unsupported assumption that it claims is not "illogical."  Rather, Commerce must point to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003).  Asserting that it is not illogical to expect a steel company's industrial electricity consumption to match its contribution to the economy does not reasonably support Commerce's disproportionality determination.

      Second, Commerce's comparison of Hyundai Steel's consumption of *industrial* electricity to Hyundai Steel's contribution to GDP is an inapt comparison.  GDP reflects the output of the entire economy, not just the sector of the economy that consumes industrial electricity.  *See Second Remand Results* at Attachment (explaining that GDP is a "reflection of the output of an economy").  There is thus a mismatch in the comparison as GDP represents all sectors of the economy whereas consumption of industrial electricity is limited to the industrial

sector. To the extent that GDP is relevant as a comparator in this case[2] it would need to be compared to Hyundai Steel's percentage consumption of *all* electricity in Korea, not just industrial electricity. As mentioned, GDP is a measure of the total output of the economy and so the comparator would need to be Hyundai Steel's percentage consumption of total electricity in Korea. Although still not a logical comparison, this comparison is more apt than using consumption of industrial electricity and this comparison shows a close correlation between Hyundai Steel's consumption of electricity and its contribution to GDP – **[    ]** percent compared to **[    ]** percent, essentially a one-to-one ratio as both would round to **[  ]** percent. *Compare* Hyundai Steel's Initial Questionnaire Response at Exhibit E-1 (showing that Hyundai Steel consumed **[          ]** KWh of class electricity during the POR), *with* GOK Initial Questionnaire Response at 36 (showing a total of **[            ]** KWh consumed in Korea during the POR). **[           ]** KWh / **[            ]** KWh = **[    ]** percent. Thus, even using Commerce's flawed GDP test and data on the record there is essentially a one-to-one ratio between Hyundai Steel's contribution to GDP and its consumption of total electricity in Korea. This correlation demonstrates that Hyundai Steel did not receive a disproportionately large amount of the alleged electricity for LTAR subsidy.

---

[2] As support for its use of GDP as the comparator, Commerce notes that "neither the GOK nor Hyundai Steel provided any comments on the GDP data or argued for the use of alternative comparator data for Commerce's consideration in the Draft Remand." *Second Remand Results* at 11. This is a red herring. Hyundai Steel had no issue with the veracity or reliability of the raw GDP data that Commerce put on the record and thus had no reason to submit comments on that data. Nor did Hyundai Steel have any obligation to provide substantive arguments as to the usage of GDP data as a comparator or to propose alternatives. It is Commerce's legal obligation to respond to the Court's decisions and remand with a new decision that is supported by substantial evidence. Hyundai Steel appropriately and timely commented on Commerce's GDP comparison when it received the Draft Remand Results. Nothing more was required.

7

Alternatively, if Commerce insists on limiting its analysis to Hyundai Steel's share of industrial class electricity consumption, then it must likewise confine the GDP comparator to the same industrial subset of Korea's economy. Commerce would thus need to compare Hyundai Steel's share of industrial class electricity consumption to Hyundai Steel's share of GDP attributable to only industrial class electricity users. As discussed, sectors such as finance and real estate contribute to GDP but do not consume industrial electricity and so must be excluded from the GDP denominator. Using this more apt comparison of Hyundai Steel's share of industrial class electricity consumption to its share of GDP attributable to just industrial class electricity users would at least provide consistency in the ratios being compared.

Commerce disagrees that there is a mismatch but does not actually explain why it is appropriate to compare Hyundai Steel's consumption of industrial electricity to GDP given that GDP reflects the output of the entire economy and not just industrial companies. *See Second Remand Results* at 13. Instead, Commerce simply says that "{u}nder the Electricity Program, the type of electricity being examined is industrial class electricity, and thus, in the comparison we must consider only Hyundai Steel's consumption of industrial class electricity and not any other type of electricity the company may have used during the POR." *Id.* This is non-responsive and does not grapple with the fact that there is a fundamental mismatch between industrial electricity consumption and the GDP of the entire economy.

The court has rejected a similar analysis where Commerce failed to logically demonstrate specificity. In *Mosaic Co. v. United States*, "Commerce compared the number of corporate taxpaying recipients of {a tax} penalty relief, 8,761, to the total number of corporate taxpayers, 262,165, not the total number of corporate taxpayers who incurred penalties" and determined that the resulting percentage – 3.34% – showed that the recipients are limited in number pursuant

8

to section 771(5A)(D)(iii)(I) of the Act. *Mosaic Co. v. United States*, 659 F. Supp. 3d 1285, 1314-15 (Ct. Int'l Trade 2023) (discussing 19 U.S.C. § 1677(5A)(D)(iii)(I)). The court found that the basis for Commerce's comparison and resulting low percentage was "essentially meaningless from the standpoint of determining the 'specificity' of the program because the numerator and denominator were not logically comparable." *Id.* at 1315. Here, as in *Mosaic*, Commerce's comparison of industrial electricity consumption against nation-wide GDP is "essentially meaningless." Like in *Mosaic*, there is a mismatch between the denominators because the denominator for Hyundai Steel's electricity consumption percentage is limited to industrial electricity whereas the denominator for its contribution to GDP is based on total economy-wide GDP.

Commerce's attempt to distinguish *Mosaic* is unpersuasive. To be sure, the case is not directly on point in that it deals with a "limited in number" specificity analysis under section 771(5A)(D)(iii)(I) of the Act and not disproportionality. *See Second Remand Results* at 13. But the fundamental problem identified by the *Mosaic* court exists here as well. Just as in *Mosaic* Commerce has made an inapt comparison between Hyundai Steel's percentage of consumption of industrial electricity to its percentage contribution to GDP. As discussed, GDP is not limited to industrial companies and so comparing Hyundai Steel's consumption of industrial electricity to its contribution to overall GDP is a meaningless apples-to-oranges comparison.

Commerce also claims that "{g}iven that the design of Korea's Electricity Program is to benefit heavy users of the subsidized input, such as steel companies, the use of GDP as a comparator, and Hyundai Steel's contribution to the Korean economy, is reasonable." *Second Remand Results* at 14. This is nonsense. There is no evidence that the electricity for LTAR program is designed to benefit heavy users of the subsidized input such as steel companies. To

9

the contrary, the record shows that industrial users like steel companies pay the highest tariff rates and have the highest cost recovery rates.  *See* GOK Initial Questionnaire Response at 27, Exhibit E-10.  Even *assuming arguendo* that there was evidence to support Commerce's assertion that the electricity for LTAR program is designed to benefit heavy users, it does not logically follow that this would make a comparison between the percentage of consumption of industrial electricity to GDP reasonable.  There remains a mismatch from the comparison between the industrial sector and the entire economy.

<u>Finally</u>, Commerce has failed to explain how its comparison of Hyundai Steel's consumption of industrial electricity to GDP demonstrates that the electricity for LTAR program is providing the type of enterprise or industry specific subsidy that the countervailing duty law is designed to address.  *See, e.g., Mosaic Co. v. United States*, 774 F. Supp. 3d 1362, 1382 (Ct. Int'l Trade 2025) ("Under the guiding principle addressed in the SAA, Commerce must distinguish between subsidies that are provided to or used by discrete segments of the economy and those… that distribute the benefit throughout the entire economy.").  Such an explanation is especially necessary given that the alleged electricity for LTAR subsidy is tied to usage, pricing is based on a standard pricing mechanism where no preferences are provided, *see* GOK Initial Questionnaire Response at 30, Ex. E-10, and the input at issue, electricity, is broadly available and widely used by virtually all enterprises and industries in Korea, *POSCO* at 1410 (citing *Gov't of Quebec v. United States*, 105 F. 4th 1359, 1375 (Fed. Cir. 2024) ("Subsidized electricity is the type of '"widely used… public infrastructure' that countervailing duties will ordinarily not cover.").  Simply showing that there is not a one-to-one correlation between Hyundai Steel's consumption of industrial electricity and its contribution to the GDP in Korea falls far short of showing that Hyundai Steel was singled out for specific subsidies.

*II.     Conclusion*

For the foregoing reasons, Plaintiff respectfully requests that this Court reject the *Second Remand Results* and again remand Commerce's determination for Commerce to reach the only decision supported by the law and the facts on the record, which is that the alleged provision of electricity for LTAR in Korea is not *de facto* specific.

                                              Respectfully submitted,

                                              /s/ Brady W. Mills
                                              Brady W. Mills
                                              R. Will Planert
                                              Mary S. Hodgins
                                              Nicholas C. Duffey

                                              **TAFT STETTINIUS & HOLLISTER LLP**
                                              1333 New Hampshire Ave, N.W., Suite 800
                                              Washington, D.C. 20036
                                              (202) 216-4116

                                              *Counsel to Plaintiff Hyundai Steel Company*

*Certificate Of Compliance*

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 3,050 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

                                                            /s/ Brady W. Mills
                                                            Brady W. Mills

Dated: January 29, 2026

*Certificate of Service*

*Hyundai Steel Company v. United States*
U.S. Court of International Trade
Court No. 23-00211

Pursuant to Rule 5 of the Rules of the U.S. Court of International Trade and Administrative Order 25-01, I, Brady W. Mills, hereby certify that on January 29, 2026, I served the confidential version of the foregoing submission on the following individuals by electronic service:

On Behalf of Nucor Corporation
Alan Hayden Price
Wiley Rein, LLP
2050 M Street, NW.
Washington, DC 20036

On Behalf of Government of the Republic of Korea
Yujin Kim McNamara
Akin, Gump, Strauss, Hauer & Feld, LLP
2001 K Street, NW.
Washington, DC 20006

On Behalf of the United States
Tara Kathleen Hogan
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

/s/ Brady W. Mills

**Attachment 1**

# The Britannica Dictionary

disproportionate

## disproportionate

/ˌdɪsprəˈpoəʃənət/

*adjective*

[more disproportionate; most disproportionate]

**:** having or showing a difference that is not fair, reasonable, or expected **:** too large or too small in relation to something

[+] Example sentences

— often + *to*

[+] Example sentences

— **disproportionately** *adverb* [more disproportionately; most disproportionately]

[+] Example sentences