# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| HYUNDAI STEEL COMPANY,<br><br>        Plaintiff,<br><br>and<br><br>GOVERNMENT OF THE REPUBLIC OF KOREA,<br><br>        Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>and<br><br>NUCOR CORPORATION,<br><br>        Defendant-Intervenor. | **NON-CONFIDENTIAL VERSION**<br><br>Proprietary Information Removed from Pages 4 and 8<br><br><br>Consol. Ct. No. 23-cv-00211-CRK |

**PLAINTIFF'S REPLY TO COMMENTS ON SECOND REMAND RESULTS**

                                              Brady W. Mills
                                              R. Will Planert
                                              Mary S. Hodgins
                                              Nicholas C. Duffey

                                              **TAFT STETTINIUS & HOLLISTER LLP**
                                              1333 New Hampshire Ave, N.W., Suite 800
                                              Washington, D.C. 20036
                                              (202) 216-4116

March 16, 2026                                     *Counsel to Plaintiff Hyundai Steel Company*

# **TABLE OF CONTENTS**

I. BACKGROUND ................................................................................................................ 2
II. ARGUMENT .................................................................................................................... 4
    A. *Petitioner Fails to Demonstrate That The Second Remand Results Are Supported by Substantial Evidence or Otherwise in Accordance with Law* ............................. 4
    B. *Petitioner's Post-Hoc Alternative Theories for De Facto Specificity Should Not Be Considered* ................................................................................................................ 10
    C. *Industrial Electricity Is Broadly Available and Widely Used* ................................. 11
III. CONCLUSION ............................................................................................................... 12
*Certificate of Compliance* ..................................................................................................... 14
*Certificate of Service* ............................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Carlisle Tire & Rubber Co.* v. United States,
 5 C.I.T. 229, 564 F. Supp. 834 (1983) ................................................................................12

*Hyundai Steel Co. v. United States*,
 745 F. Supp. 3d 1345 (Ct. Int'l Trade 2024) ............................................................2, 3, 9, 12

*Hyundai Steel Co. v. United States*,
 798 F. Supp. 3d 1283 (Ct. Int'l Trade 2025) ............................................................3, 5, 9, 12

*Itochu Building Prods. Co., Inc. v. United States*,
 163 F. Supp. 3d 1330 (Ct. Int'l Trade 2016) .........................................................................7

*Nippon Steel Corp. v. United States*,
 337 F.3d 1373 (Fed. Cir. 2003) ..............................................................................................6

*POSCO v. United States*,
 794 F. Supp. 3d 1402 (Ct. Int'l Trade 2025) ................................................................3, 9, 12

*Secs. & Exch. Comm'n v. Chenery Corp.*,
 318 U.S. 80, 63 S. Ct. 454 (1943) ...............................................................................7, 9, 10

**Statutes**

19 U.S.C. § 1677(5A)(D)(iii)(III) ...............................................................................................4

**Other Authorities**

*Disproportionate*, The Britannica Dictionary, available at
 https://www.britannica.com/dictionary/ ................................................................................4

Uruguay Round Agreements Act Statement of Administrative Action, H.R. Doc. No.
 103-316, 1994 U.S.C.C.A.N. 4040, 4242 (Sept. 27, 1994) ....................................................12

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| HYUNDAI STEEL COMPANY,<br><br>          Plaintiff,<br><br>     and<br><br>GOVERNMENT OF THE REPUBLIC OF KOREA,<br><br>          Plaintiff-Intervenor,<br><br>     v.<br><br>UNITED STATES,<br><br>          Defendant,<br><br>     and<br><br>NUCOR CORPORATION,<br><br>          Defendant-Intervenor. | **NON-CONFIDENTIAL VERSION**<br><br>Proprietary Information Removed from Pages 4 and 8<br><br>Consol. Ct. No. 23-cv-00211-CRK |

**PLAINTIFF'S REPLY TO COMMENTS ON SECOND REMAND RESULTS**

Pursuant to U.S. Court of International Trade Rule 56.2, and the scheduling order, Plaintiff Hyundai Steel Company ("Hyundai Steel" or "Plaintiff") hereby replies to comments filed by Defendant-Intervenor Nucor Corporation ("Defendant-Intervenor" or "Petitioner") regarding the U.S. Department of Commerce's ("Commerce") remand results in this matter. *See* Defendant-Intervenor's Comments in Support of the Final Results of Redetermination Pursuant to Second Remand, *Hyundai Steel Company v. United States*, 23-cv-00211-CRK (Jan. 30, 2026), ECF No. 104 ("Petitioner Comments").[1]  The remand results at issue are the Final Results of

---

[1] Documents contained in the administrative record are identified by the name and date of the documents, followed by the confidential record number ("CR"), the public record number

Redetermination Pursuant to Second Court Remand, *Hyundai Steel Company v. United States*, 23-cv-00211-CRK (Dec. 23, 2025), ECF No. 93, 2CRR Doc. 5, 2PRR Doc. 10 ("*Second Remand Results*"). The underlying administrative determination at issue in the Remand Results is *Certain Cut-To-Length Carbon-Quality Steel Plate from the Republic of Korea: Final Results and Recission, in Part, of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 61,509 (Dep't Commerce Sept. 7, 2023), ECF No. 24-4, PR Doc. 225 ("*Final Results*"); Mem. from James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, U.S. Dep't of Commerce, to Lisa W. Wang, Assistant Secretary for Enforcement and Compliance, U.S. Dep't Commerce, "Issues and Decision Memorandum for the Final Results of Countervailing Duty Administrative Review; 2021: Certain Cut-To-Length Carbon-Quality Steel Plate from the Republic of Korea" (Aug. 30, 2023), ECF No. 24-5, PR Doc. 222 ("Final Decision Mem.").

I. **BACKGROUND**

In *Hyundai Steel I*, the Court remanded Commerce's determination that the Government of Korea's ("GOK") provision of electricity for less than adequate remuneration ("LTAR") was *de facto* specific and found that Commerce had misinterpreted the meaning of disproportionality and rendered a decision that was not supported by substantial evidence. *Hyundai Steel Co. v. United States*, 745 F. Supp. 3d 1345 (Ct. Int'l Trade 2024) ("*Hyundai Steel I*"). In its first

---

("PR"), the confidential remand record number ("CRR"), the public remand record number ("PRR"), the second confidential remand record number ("2CRR"), or the second public remand record number ("2PRR") assigned to these documents in the administrative record indices filed by the Defendant the United States with the Court on December 13, 2024, April 25, 2025 and January 5, 2026. *See* Administrative Record Index, *Hyundai Steel Company v. United States*, Court No. 23-00211 (Dec. 13, 2024), ECF No. 24; Administrative Record Index, *Hyundai Steel Company v. United States*, Court No. 23-00211 (Apr. 25, 2025), ECF No. 64; and Administrative Record Index, *Hyundai Steel Company v. United States*, Court No. 23-00211 (Jan. 6, 2026), ECF No. 97.

remand determination, Commerce found that the steel industry and a group of two other industries consuming industrial class electricity had consumed a disproportionately large amount of the alleged subsidy from the electricity for LTAR program.  *Hyundai Steel Co. v. United States*, 798 F. Supp. 3d 1283, 1288 (Ct. Int'l Trade 2025) ("*Hyundai Steel II*").  In *Hyundai Steel II*, the Court again rejected Commerce's *de facto* specificity determination and reaffirmed that "disproportionate means 'too large or too small in relation to something,'" and that "'disproportionality' requires a comparison of the amount of the subsidy and an attribute of the industry, not a comparison of the amount of a subsidy given to different industries." *Id.* at 1288-1290.  The Court thus held that Commerce "must explain how the {industry} it identifies benefit{s} more than would be expected, based on {its} usage given that the subsidy in question is designed to confer benefits on usage levels, or in relation to some other comparator." *Id.* at 1288 (citing *Hyundai Steel I*, 745 F. Supp. 3d. at 1352-53); *see also POSCO v. United States*, 794 F. Supp. 3d 1402 (Ct. Int'l Trade 2025).

In the *Second Remand Results*, Commerce determined that the provision of electricity for LTAR is *de facto* specific pursuant to section 771(5A)(D)(iii)(III) because Hyundai Steel allegedly received more of the electricity subsidy than would be expected during the period of review ("POR").  *Second Remand Results* at 6 & Attachment (citing Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea, Case No. C-580-837: Hyundai Steel's Initial Questionnaire Response" at Exhibit E-1 (June 27, 2022) CR Doc. 67–88, 148–213, PR Doc. 113–124 ("Hyundai Steel's Initial Questionnaire Response"); Letter from Yoon & Yang LLC to Sec'y Commerce, "Administrative Review on Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Response to the Initial Questionnaire" at 36 (June 27, 2022), CR 29–66

3

Doc., PR Doc. 60–85 ("GOK Initial Questionnaire Response")). To reach that result, Commerce compared Hyundai Steel's share of total industrial class electricity during the period of review ("POR") ([     ] percent) with Hyundai Steel's share of Korea's gross domestic product ("GDP") for the same period ([     ] percent). *Second Remand Results* at Attachment. Based on this comparison, Commerce concluded that disproportionality exists pursuant to section 771(5A)(D)(iii)(III) because Hyundai Steel's share of total industrial class electricity consumption during the POR was **[                ]** its contribution to Korea's GDP. *Second Remand Results* at 6. The *Second Remand Results* continue to be unsupported by substantial evidence and otherwise not in accordance with law.

## II.     ARGUMENT

### A. Petitioner Fails to Demonstrate That The Second Remand Results Are Supported by Substantial Evidence or Otherwise in Accordance with Law

As discussed in Hyundai Steel's Comments in Opposition to the Second Remand Results, Commerce's comparison of Hyundai Steel's share of total industrial class electricity to Hyundai Steel's contribution to GDP says nothing about whether Hyundai Steel received a disproportionately large amount of the subsidy pursuant to section 771(5A)(D)(iii)(III). *See* Plaintiff's Comments in Opposition to Second Remand Results at 4-6, *Hyundai Steel Company v. United States*, 23-cv-00211-CRK (Jan. 29, 2026), ECF No. 99 ("Hyundai Steel's Comments in Opposition to the Second Remand Results"). A subsidy is specific pursuant to section 771(5A)(D)(iii)(III) where "an enterprise or industry receives a disproportionately large amount of the subsidy." 19 U.S.C. § 1677(5A)(D)(iii)(III). The term "disproportionate" means "having or showing a difference that is not fair, reasonable, or expected: too large or too small in relation to something." *Disproportionate*, The Britannica Dictionary, available at https://www.britannica.com/dictionary/ disproportionate (last visited Jan. 28, 2026), ECF No. 99

4

Attachment 1.  The disproportionality analysis thus requires Commerce to determine whether Hyundai Steel is "favored in some way," "receives more than its fair share," or "benefit{s} more than would be expected."  *Hyundai Steel II*, 798 F. Supp. 3d at 1288.  The Court explained that Commerce must conduct a "case-by-case analysis which assesses benefits, not in relation to the benefits of others, but in relation to some other comparator *depending on the circumstances*."  *Id.* at 1288 (emphasis added).

Hyundai Steel has already submitted comments in opposition explaining why Commerce's new comparison methodology and *de facto* specificity determination remains unlawful.  *See* Hyundai Steel's Comments in Opposition to the Second Remand Results at 4-10.  The arguments made by Petitioner in its comments are unpersuasive and for the most part simply mirror the comments Petitioner filed on the draft remand results that were already considered and rejected by Commerce.  *Compare* Letter from Wiley Rein LLP to Sec'y Commerce, "Comments on Draft Results of Redetermination Pursuant to Court Remand" at 5-25 (Dec. 5, 2025), 2CRR Doc. 4, 2PRR Doc. 9 ("Draft Comments") *with* Petitioner Comments at 1-21.  Nevertheless, Hyundai Steel briefly addresses Petitioner's arguments below.

Petitioner first argues that, because Hyundai Steel uses more industrial electricity than its share of GDP, the benefit from the electricity for LTAR program is allegedly "not evenly distributed across the economy in a way that you would expect."  Petitioner Comments at 2.  Petitioner claims that "one could expect" electricity consumption and contribution to GDP "to track closely," but cites no evidence on the record that demonstrates it is reasonable to conclude, or "expect," contributions to GDP to correlate with electricity consumption.  However, as Hyundai Steel argued in its opposition comments, there is no logical correlation between an enterprise or industry's consumption of industrial electricity and its contribution to GDP.  *See*

5

Hyundai Steel's Comments in Opposition to the Second Remand Results at 4-6. Whether one "could expect" electricity consumption to correlate with GDP contribution fails to provide substantial evidence that such a correlation exists or that the electricity from LTAR program provides a disproportionately large amount of the subsidy pursuant to section 771(5A)(D)(iii). *See Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216-17 (1938) (defining substantial evidence to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion")).

Petitioner also claims that the electricity program in Korea was "designed" to "benefit heavy users" of electricity such as steelmakers. Petitioner Comments at 3. Again, Petitioner provides no evidence to support this conclusion, and it amounts to nothing more than unsubstantiated speculation. Furthermore, Petitioner's claim is belied by the fact that that industrial class electricity has historically had the highest cost recovery rate compared to other classes of electricity. GOK Initial Questionnaire Response at 27. If the electricity for LTAR program was designed to benefit "heavy users" of electricity then the GOK would not be covering more of its costs on its electricity sales to industrial users than it does on sales of electricity to other electricity consumers. It would be covering less.

In an effort to support the alleged link between GDP and electricity consumption, Petitioner cites portions of the record where the GOK considered GDP for purposes of forecasting electricity demand and to compare its nationwide energy "intensity" with other countries. Petitioner Comments at 3-5. Such arguments amount to *post hoc* rationalization that the Court should not consider, as Commerce did not rely on this evidence or invoke the same reasoning in the *Second Remand Results*. The Court "may not accept 'post hoc rationalizations

6

for agency action' and may only sustain the agency's decision 'on the same basis articulated in the order by the agency itself.'" *Itochu Building Prods. Co., Inc. v. United States*, 163 F. Supp. 3d 1330, 1337 (Ct. Int'l Trade 2016) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69, 83 S. Ct. 239 (1962)); *see Secs. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 94, 63 S. Ct. 454, 462 (1943) (holding "that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained"). Plainly stated, none of this "evidence" that Petitioner discusses on pages 3-5 of its comments was cited or relied upon by Commerce to support its disproportionality determination or its use of GDP as the comparator. The Court should therefore not consider it.

However, even if considered, none of the record evidence that Petitioner cites demonstrates that the relative difference between Hyundai Steel's industrial electricity consumption and its contribution to GDP is disproportionate, *i.e.,* more than would otherwise be expected. Instead, the evidence cited by Petitioner is limited to the GOK forecasting electricity demand using GDP as one of many factors, in addition to price, population, industrial structure, temperature abnormalities, electric vehicle ("EV") deployment, solar systems, on-site generation, and the fourth industrial revolution. GOK Initial Questionnaire Response at Exhibit DRR-3 page 29, Exhibit E-11, and Exhibit E-19 page 3 (noting in verification that the GDP influences sales of electricity). The cited evidence is thus limited to projections regarding demand for electricity, or situations where the GOK used GDP as a basis to compare its energy "intensity" with other countries. The alleged relationship that GDP has with demand for electricity does not demonstrate that Hyundai Steel's consumption of industrial electricity correlates to its own contribution to nationwide GDP. None of the cited evidence is relevant to whether the relative

7

difference between Hyundai Steel's industrial electricity consumption and GDP contribution is more than expected, fair, or disproportionate.

Petitioner also argues that Hyundai Steel "waived any objection" to Commerce's use of the GDP data on the grounds that Hyundai Steel did not submit factual information to rebut, clarify, or correct the data pursuant to 19 C.F.R. § 351.301(c)(4) when Commerce placed it onto the record. Petitioner Comments at 5. This is a red herring. Hyundai Steel had no issue with the veracity or reliability of the raw GDP data that Commerce put on the record and thus had no reason to submit factual information regarding that data. Nor did Hyundai Steel have any obligation to provide substantive arguments as to the usage of GDP data as a comparator or to propose alternatives. Hyundai Steel appropriately and timely commented on Commerce's GDP comparison when it received the Draft Remand Results. *See* Letter from Morris, Manning & Martin LLP to Sec'y Commerce, "Comments on Draft Results of Redetermination Pursuant to Court Remand (Dec. 5, 2025), 2CRR Doc. 2, 2PRR Doc. 6; Mem. from Kristen Johnson to The File, "Extension of Time to Submit Comments on Draft Results of Redetermination Pursuant to Second Court Remand" (Dec. 1, 2025), 2PRR Doc. 5. Hyundai Steel did not waive any arguments against Commerce's unreasonable use of the GDP data by virtue of the fact it did not submit information pursuant to 19 C.F.R. § 351.301(c)(4) to clarify or correct the GDP information that the Department placed onto the record.

Petitioner also offers an alternative comparator to GDP and suggests that "Commerce could compare Hyundai Steel's industrial electricity use to the industrial electricity use of the other 400,000 manufacturing establishments in Korea." Petitioner Comments at 6. Using this alternative comparator, Petitioner argues that Hyundai Steel received a disproportionate amount of the benefit because **[            ]** accounted for **[        ]** of the total industrial

8

electricity consumption by 400,000 establishments in Korea during the POR. *Id.* at 6. As an initial matter, the *Second Remand Results* is based on GDP as the comparator and so any alternatives that Petitioner suggests are not properly before the Court. See *Chenery.*, 318 U.S. at 94, 63 S. Ct. at 462 (holding "that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained").

      Additionally, the Court already rejected similar reasoning. In the *Final Results* and the *First Remand Results*, Commerce determined that the steel industry, along with other industries combined, consumed a disproportionately large amount of electricity in Korea. Final Decision Mem. at 16; Final Results of Redetermination Pursuant to Court Remand at 17, *Hyundai Steel Co. v. United States*, No. 23-cv-00211-CRK (Apr. 11, 2025), ECF No. 62 ("*First Remand Results*"). The Court remanded both determinations because Commerce's rationale "elides the reality that programs designed to confer benefits on usage levels will necessarily result in larger users receiving a proportionally larger percentage of the subsidy." *Hyundai Steel I*, 745 F. Supp. 3d at 1352; *Hyundai Steel II*, 798 F. Supp. 3d at 1289. The Court explained that "Commerce's position appears to be that receiving more of the subsidy equates with disproportionality" and emphasized that it "has already rejected this position." *Hyundai Steel II*, 798 F. Supp. 3d at 1289; *see also POSCO v. United States*, 794 F. Supp. 3d at 1410 ("the agency's only reasoning for its disproportionality analysis is that the Korean steel industry uses a large amount of electricity. Commerce, however, was required by the plain meaning of the statute to use a baseline that shows the Korean steel industry's subsidy is out of line with the industry's own usage, not just the 'benefits {received by} others.'"). Petitioner's argument, like Commerce's

9

prior determinations, amounts to nothing more than an alternative argument that receiving more of the subsidy than others equates to disproportionality.

> B. *Petitioner's Post-Hoc Alternative Theories for De Facto Specificity Should Not Be Considered*

Petitioner devotes 12 pages of its comments rearguing various alternative ways that Commerce could have supported its *de facto* specificity determination. See Petitioner Comments at 6-18. These arguments were already presented by Petitioner to Commerce when it issued its draft remand results to the parties for comments. *Compare* Draft Comments at 9-21 with Petitioner Comments at 6-18. These arguments provide that Commerce could have found disproportionality based on relative use of industrial electricity by a group of the top three users and that Commerce could have determined that a group of enterprises or industries is a predominant user of the subsidy. Petitioner Comments at 6-18. However, in the *Second Remand Results* Commerce did not group industries to find the electricity for LTAR program specific and did not determine that the subsidy was specific based on predominant use. *See, e.g., Second Remand Results* at 12. Commerce explained in the *Second Remand Results* that, because it applied "Korea's GDP as the external comparator for our disproportionality analysis, {it} need not consider the alternative methodologies proposed by Nucor." *Second Remand Results* at 14 and n.47 (citing Letter from Wiley Rein LLP to Sec'y Commerce, "Comments on Draft Results of Redetermination Pursuant to Court Remand" at 8-25 (Dec. 5, 2025), 2CRR Doc. 4, 2PRR Doc. 9).

Commerce thus considered and rejected these alternative grouping and predominant use arguments in the *Second Remand Results*. The Court should thus not entertain Petitioner's arguments that Commerce should have grouped industries for its disproportionality analysis or find that a group of industries was a predominant user of the subsidy. *See Chenery*, 318 U.S. at

10

94, 63 S. Ct. at 462 (holding "that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained").

### C. Industrial Electricity Is Broadly Available and Widely Used

Petitioner argues that the provision of electricity is not a widely available program "akin to general infrastructure" which would not be countervailable pursuant to 19 C.F.R. § 351.511(d). Petitioner's Comments at 18-22 (citing *Royal Thai Government v. United States*, 30 C.I.T. 1072, 1077, 441 F. Supp. 2d 1350, 1356-57 (2006)). It is unclear why Petitioner is making this argument since Commerce continued to find that the electricity for LTAR program is *de facto* specific and thus the applicability of the general infrastructure exception is not at issue in the *Second Remand Results*. Nevertheless, Hyundai Steel clarifies that it has not argued that electricity is general infrastructure pursuant to 19 C.F.R. § 351.511(d). Rather, Hyundai Steel argues that Commerce failed to explain how the electricity for LTAR program at issue is an enterprise- or industry-specific subsidy that the countervailing duty law is designed to address, especially given that the input at issue, electricity, is broadly available and widely used by virtually all enterprises and industries in Korea. *See* Plaintiff's Comments in Opposition to Second Remand Results at 10. All industrial users of electricity pay for industrial electricity using the same standard pricing mechanism whereby no preferences are provided. *See* GOK Initial Questionnaire Response at 30 and Exhibit E-10. Moreover, as explained, industrial class electricity has the highest cost recovery rate compared to other classes of electricity. GOK Initial Questionnaire Response at 27.

The court has recognized the general availability of electricity. In *POSCO*, the court explicitly stated that "subsidized electricity is the type of 'widely used… public infrastructure'

that countervailing duties will ordinarily not cover." *POSCO*, 794 F. Supp. 3d at 1410 (citing *Gov't of Quebec v. United States*, 105 F. 4th 1359, 1375 (Fed. Cir. 2024)); *see also Hyundai Steel I*, 745 F. Supp. 3d at 1353 (holding that "where a subsidy is widely distributed," such as the electricity for LTAR program at issue, "Commerce cannot create a group to limit the subsidy for purposes of satisfying the specificity requirement without providing a rational basis for the grouping"); *Hyundai Steel II*, 798 F. Supp. 3d. at 1291 (same) (quoting *Hyundai Steel I*, 745 F. Supp. 3d at 1353). As explained in *Carlisle Tire & Rubber Co.* and the Statement of Administrative Action, regarding widely used programs such as the provision of industrial electricity to be specific would produce absurd results. Uruguay Round Agreements Act Statement of Administrative Action, H.R. Doc. No. 103-316 at 929-930, 1994 U.S.C.C.A.N. 4040, 4242 (Sept. 27, 1994); *Carlisle Tire & Rubber Co.* v. United States, 5 C.I.T. 229, 233, 564 F. Supp. 834, 838 (1983). Thus, as argued in Hyundai Steel's opposition comments, there is no basis to find that the electricity for LTAR program is specific. *See* Hyundai Steel Opposition Comments at 10.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court reject Defendant-Intervenor's arguments regarding the *Second Remand Results* and again remand Commerce's determination for Commerce to reach the only determination supported by the law and the facts

on the record, which is that the alleged provision of electricity for LTAR in Korea is not *de facto* specific.

                                        Respectfully submitted,

                                        <u>/s/ Brady W. Mills</u>
                                        Brady W. Mills
                                        R. Will Planert
                                        Mary S. Hodgins
                                        Nicholas C. Duffey

                                        **TAFT STETTINIUS & HOLLISTER LLP**
                                        1333 New Hampshire Ave, N.W., Suite 800
                                        Washington, D.C. 20036
                                        (202) 216-4116

March 16, 2026                           *Counsel to Plaintiff Hyundai Steel Company*

*Certificate of Compliance*

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 3,482 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

/s/ Brady W. Mills
Brady W. Mills

*Certificate of Service*

  Pursuant to Rule 5 of the Rules of the U.S. Court of International Trade and Administrative Order 25-01, I hereby certify that I served the confidential version of the foregoing submission on the following individuals.  If the recipient agreed to accept service of the foregoing submission by electronic service, such service is being effected through secure electronic means.  If no agreement regarding electronic service has been reached, the foregoing submission is contemporaneously being served by hardcopy mail.

On behalf of the United States
Tara Kathleen Hogan
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 616-2228
Fax: (202) 305-7643
Email: tara.hogan@usdoj.gov

On behalf of the Government of Korea
Yujin Kim McNamara
Akin, Gump, Strauss, Hauer & Feld, LLP
2001 K Street, NW.
Washington, DC 20006
(202) 887-4347
Fax: (202) 887-4288
Email: ymcnamara@akingump.com

On behalf of Nucor Corporation
Alan Hayden Price
Wiley Rein, LLP
2050 M Street, NW.
Washington, DC 20036
(202) 719-3375
Fax: (202) 719-7049
Email: aprice@wiley.law

                     /s/ Brady W. Mills
                     Brady W. Mills

                     March 16, 2026
                     Date