## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:  THE HONORABLE CLAIRE R. KELLY**

| | |
|---|---|
| HYUNDAI STEEL COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| GOVERNMENT OF THE REPUBLIC OF ) | |
| KOREA, ) | |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | **Court No. 23-00211** |
| ) | |
| UNITED STATES, ) | **NONCONFIDENTIAL** |
| ) | |
| Defendant, ) | Business Proprietary Information |
| ) | Removed from Pages 2, 5-6, and 10. |
| and ) | |
| ) | |
| NUCOR CORPORATION, ) | |
| ) | |
| Defendant-Intervenor. ) | |

## PLAINTIFF-INTERVENOR GOVERNMENT OF THE REPUBLIC OF KOREA'S REPLY TO COMMENTS ON THE SECOND FINAL RESULTS OF REDETERMINATION

Yujin K. McNamara
Devin S. Sikes
Daniel M. Witkowski
Sung Un K. Kim
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street NW
Washington, DC 20006
Phone: (202) 887-4347
E-mail: ymcnamara@akingump.com
*Counsel for the Government of the Republic of Korea*

Dated: March 16, 2026

TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................1

I.    COMMERCE'S REVISED ANALYSIS, USING HYUNDAI STEEL'S
      SHARE OF TOTAL GDP AS THE EXTERNAL COMPARATOR, IS NOT
      SUPPORTED BY SUBSTANTIAL EVIDENCE ............................................1

      A.    Commerce's Comparator Uses Fundamentally Different
            Denominators Rendering the Entire Comparison Arbitrary ...........2

      B.    The Record Does Not Support the Assumption that Electricity
            Consumption Should Correlate with Contribution to GDP ............3

      C.    Commerce Has an Obligation to Provide Evidence-Based Reasons for
            Its Determinations .......................................................................4

      D.    Hyundai Steel's Electricity Consumption Cannot Be Considered
            Large ..........................................................................................4

II.   PETITIONER'S INDUSTRY-BASED SPECIFICITY ARGUMENTS
      SHOULD BE REJECTED ............................................................................6

      A.    Petitioner's Arguments Were Not Relied Upon by Commerce.........7

      B.    The GOK Provided Electricity Under a Standard Pricing Mechanism ..........7

      C.    This Court Already Found that Commerce's Reasoning for Its
            Grouping of Industries Was Deficient and Commerce Did Not Provide
            an Alternative Explanation ...........................................................8

      D.    Petitioner Continues to Confuse Disparity With Disproportionality ...............9

III.  ELECTRICITY IS WIDELY AVAILABLE ..................................................11

CONCLUSION ..................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*AK Steel Corp. v. United States*, 192 F.3d 1367 (Fed. Cir. 1999) .................................................. 10

*Bethlehem Steel Corp. v. United States*, 140 F. Supp. 2d 1354 (Ct. Int'l Trade 2001) ............. 7, 10

*Canadian Solar Inc. v. United States*, No. 19-00178, 2022 WL 1583428 (Ct. Int'l Trade May 19, 2022) ................................................................................................................................... 11

*Changzhou Trina Solar Energy Co. v. United States*, 466 F. Supp. 3d 1287 (Ct. Int'l Trade 2020) ................................................................................................................................... 12

*Hyundai Steel Co. v. United States*, 745 F. Supp. 3d 1345 (Ct. Int'l Trade 2024) ................... 8, 10

*Matra Ams., LLC v. United States*, 681 F. Supp. 3d 1339 (Ct. Int'l Trade 2024) ...................... 5, 7

*Mosaic Co. v. United States*, 589 F. Supp. 3d 1298 (Ct. Int'l Trade 2022) ................................. 12

*Mosaic Co. v. United States*, 659 F. Supp. 3d 1285 (Ct. Int'l Trade 2023) ................................... 3

*Mosaic Co. v. United States*, 774 F. Supp. 3d 1362 (Ct. Int'l Trade 2025) ................................. 11

*Oman Fasteners, LLC v. United States*, 125 F.4th 1068 (Fed. Cir. 2025) ..................................... 9

*POSCO v. United States*, 794 F. Supp. 3d 1402 (Ct. Int'l Trade 2025) ...................................... 8, 9

*PPG Indus., Inc. v. United States*, 978 F.2d 1232 (Fed. Cir. 1992) .............................................. 9

*Samsung Electronics Co., Ltd. v. United States*, 973 F. Supp. 2d 1321 (Ct. Int'l Trade 2014) .... 10

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) .......................................................................... 5, 7

**STATUTES**

19 U.S.C. § 1677(5A)(D)(iii) .............................................................................................. 2, 5, 9

**ADMINISTRATIVE DECISIONS**

*Melamine From Trinidad and Tobago: Final Affirmative Countervailing Duty Determination*, 80 Fed. Reg. 68,849 (Nov. 6, 2015), and accompanying Issues and Decision Memorandum ........ 7

**INTRODUCTION**

Plaintiff-Intervenor the Government of the Republic of Korea ("GOK") replies to Defendant-Intervenor Nucor Corporation's ("Petitioner") comments in support of the Second Final Results of Redetermination Pursuant to Court Remand, ECF No. 93 ("Second Final Remand Results"), by the U.S. Department of Commerce ("Commerce").  Def.-Intervenor's Revised Comments in Support of the Final Results of Redetermination Pursuant to Second Remand, ECF No. 110 ("Pet'r Comments").

Contrary to Petitioner's comments, Commerce's new basis for finding *de facto* specificity pertaining to the GOK's alleged provision of electricity for less than adequate remuneration ("LTAR") is unsupported by substantial evidence or otherwise not in accordance with the law. Further, Petitioner's alternative arguments—which were not adopted by Commerce and therefore do not present a valid basis for sustaining Commerce's Second Final Remand Results—were already addressed and rejected by the courts.

**ARGUMENT**

I.     **COMMERCE'S REVISED ANALYSIS, USING HYUNDAI STEEL'S SHARE OF TOTAL GDP AS THE EXTERNAL COMPARATOR, IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

In its comments, Petitioner mainly repeats Commerce's reasoning to argue that Commerce's reasonably used Hyundai Steel's share of total GDP as the external comparator to demonstrate that Hyundai Steel's consumption of industrial electricity is disproportionate.  Pet'r Comments at 1-6.  Petitioner further argues that GDP is a reasonable comparator because Korean agencies use GDP as an indicator for electricity demand and energy intensity, and that the GOK and Hyundai Steel waived any objection to the use of GDP as a comparator because they failed to provide comments when Commerce placed Korea's GDP data on the record.  *Id.* at 3-5. Lastly, Petitioner suggests as an alternative comparator the number of manufacturing

establishments in Korea, claiming that a comparison between Hyundai Steel's industrial

electricity consumption and the consumption of the other manufacturing establishments

supposedly demonstrates disproportionality because the former used [              ] percent of

total industrial electricity during the POR.  *Id.* at 6.  Petitioner's arguments are flawed and

unsupported by substantial evidence.

### A.    Commerce's Comparator Uses Fundamentally Different Denominators Rendering the Entire Comparison Arbitrary

As explained in the GOK's Comments on the Second Final Remand Results, the

comparison of Hyundai Steel's contribution to Korea's total GDP to the company's consumption

of industrial electricity is worthless to demonstrate *de facto* specificity under 19 U.S.C.

§ 1677(5A)(D)(iii).  Plaintiff-Intervenor Government of the Republic of Korea's Comments on

the Second Final Results of Redetermination, ECF No. 101 ("GOK Comments") at 3-9.

Petitioner's argument that the record purported establishes a "link" between GDP and electricity

use, because the GOK uses GDP as an indicator for electricity demand and energy intensity, does

nothing to resolve the fundamental flaw within Commerce's comparison.  Pet'r Comments at 3-

5.  The fact that GDP and manufacturing may follow similar trends, *see id.* at 4, does not in any

way establish that a company's share of industrial electricity consumption should perfectly

correlate to its share of total GDP when total GDP reflects a far broader category of economic

activity than just the activity of industrial electricity users.

Contrary to Petitioner's claim, Commerce compared two fundamentally different

universes – Hyundai Steel's share of ***industrial class*** electricity consumption among industrial

electricity users and Hyundai Steel's contribution to ***total*** GDP as compared to the entire Korean

economy.  GOK Comments at 3-4.  Such a mismatched-universe comparator was already

rejected by this Court in *Mosaic Co. v. United States*.  659 F. Supp. 3d 1285, 1315 (Ct. Int'l

Trade 2023); *see also* GOK Comments at 7.  In order to rectify this deficiency, Commerce must

use comparators that use the same baselines – *i.e.*, Hyundai Steel's share of ***industrial class***

electricity consumption to its share of GDP attributable to only ***industrial class*** electricity users,

or Hyundai Steel's share of ***total*** electricity consumption to its share of ***total*** GDP.  *See* GOK

Comments at 5-7.  More importantly, if Commerce were to use the same baseline comparators

on the record – *i.e.*, Hyundai Steel's share of ***total*** electricity consumption and Hyundai Steel's

contribution to Korea's ***total*** GDP – the record clearly demonstrates that Hyundai Steel did not

receive a disproportionately large amount of the subsidy.  *Id.* at 5-6.

> **B.    The Record Does Not Support the Assumption that Electricity Consumption Should Correlate with Contribution to GDP**

Similar to Commerce's Second Final Remand Results, Petitioner offers no support as to

why industrial electricity consumption is a "proxy" for contribution to GDP.  Rather, Petitioner

simply asserts that one would expect that electricity consumption would "track closely" the

entity's GDP output because "electricity is an important input for industrial manufacturers."

Pet'r Comments at 2-3.  Petitioner fails to demonstrate that the record establishes that industrial

electricity consumption would correlate with contribution to GDP.  On the contrary, disparity

between the two ratios primarily stems from the flaws in Commerce's apples-to-oranges

comparison, not because industrial electricity consumption does not closely track contribution to

GDP.  Both Commerce and Petitioner also ignored the fact that a company's electricity

consumption will vary depending on a number of factors, including the nature of business, and

thus would not be expected to closely correlate with the company's contribution to the country's

GDP.  As explained in the GOK Comments, the usage of practically any potential subsidy

program, including those that undoubtedly are not specific, will depend upon a variety of factors

and will not correlate perfectly with GDP.  *See* GOK Comments at 12-13.  As such, concluding

that specificity exists because a company's usage level of a program does not correlate closely

with its share of GDP is simply unreasonable and result-oriented.

### C.    Commerce Has an Obligation to Provide Evidence-Based Reasons for Its Determinations

Repeating Commerce's claim, Petitioner argues that the GOK and Hyundai Steel waived

any objection to the use of GDP as a comparator because they failed to provide comments on the

GDP data.  Pet'r Comments at 5.  As already addressed in the GOK Comments, the lack of any

comments on the data itself does not excuse Commerce from its statutory requirement to support

its determination with substantial evidence and articulate a reasoned explanation for its choices.

*See* GOK Comments at 7-8.  More importantly, record evidence clearly demonstrates that

Commerce failed to meet these tests in reaching its *de facto* specificity finding.

The GOK already elucidated how Commerce failed to explain the purpose of the GDP

data or how Commerce viewed that data when it placed it on the record.  GOK Comments at 8-9.

Commerce also did not invite general comments on the GDP data at that time, but instead

offered an opportunity specifically to submit rebuttal factual information.  *Id.*  Again, the GOK

does not argue that the GDP data submitted on the record is incorrect.  Rather, Commerce's ***use***

of the GDP data is unreasonable.  Only after Commerce issued the draft results of

redetermination did Commerce's intentions regarding the GDP data become apparent, at which

point both the GOK and Hyundai Steel properly addressed the flaws in Commerce's comparison.

*Id.* at 8.  Petitioner's claim that the GOK and Hyundai Steel waived their objections to

Commerce's misuse of the GDP data on the record is meritless.

### D.    Hyundai Steel's Electricity Consumption Cannot Be Considered Large

Petitioner argues that Commerce could compare Hyundai Steel's industrial electricity

consumption to the industrial electricity consumption of the other 400,000 manufacturing

NONCONFIDENTIAL

establishments in Korea, which would show that Hyundai Steel received a disproportionate benefit.  Pet'r Comments at 6.  For the basis of its conclusion, Petitioner points out that Hyundai Steel accounted for **[          ]** percent of total industrial electricity consumption.  *Id.*

The statute requires that an enterprise or industry receive "a disproportionately *large* amount of the subsidy" in order for there to be de facto specificity."  19 U.S.C. § 1677(5A)(D)(iii)(III) (emphasis added).  As explained in the GOK Comments, court precedent demonstrates that this percent of industrial class electricity consumption cannot be considered "large" as that word is normally understood.  GOK Comments at 9.  Ultimately, the overall specificity inquiry under the statute is whether the subsidy at issue is "specific" to an enterprise or industry.  19 U.S.C. § 1677(5A)(D)(iii).  Commerce's finding that the subsidy is "specific" to Hyundai Steel when more than **[    ]** percent of such electricity is provided to other enterprises is unreasonable and not supported by substantial evidence.

Beyond running afoul of the plain meaning of the word "large," Petitioner's argument must be rejected for at least two other reasons.  First, Commerce did not rely on this reasoning.  "In reviewing Commerce's determinations, the court 'must judge the propriety of {agency} action solely by the grounds invoked by the agency.'"  *Matra Ams., LLC v. United States*, 681 F. Supp. 3d 1339, 1359 (Ct. Int'l Trade 2024) (alteration in original) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).  Petitioner's alternative argument therefore is not a valid basis for sustaining Commerce's Second Final Remand Results.  Second, Petitioner's argument again conflates disparity with disproportionately.  Petitioner's half-developed argument seems to assume that all 400,000 manufacturing establishments, regardless of their size or nature, should be expected to consume the same amount of electricity, and Hyundai Steel's consumption is greater than 1/400,000[th] of the industrial electricity consumed in Korea.  But without any record

evidence demonstrating the reasonableness of that facially unreasonable assumption, Petitioner's argument is really just an observation that Hyundai Steel consumes more electricity than many other manufacturing establishments.  This Court has twice rejected the position that "receiving more of the subsidy equates with disproportionality."  Court Op. and Order, ECF No. 79 ("Court Op.") at 11.  As Petitioner's argument is based on the same faulty premise, it should be rejected.

## II.    PETITIONER'S INDUSTRY-BASED SPECIFICITY ARGUMENTS SHOULD BE REJECTED

Petitioner contends that even without an external comparator, Commerce could find disproportionate use by assessing the relative electricity consumption of the group of three industries.  Pet'r Comments at 6-16.  In doing so, Petitioner makes several illogical arguments, most of which the Court has already addressed and rejected multiple times.  First, Petitioner argues that if "electricity was priced fairly, then these large industrial manufacturers would consume less electricity and receive less of a benefit," which is not the case here.  *Id.* at 8-9.  Second, Petitioner continues to claim that because Commerce is not required to evaluate the actual make-up of the industries grouped together, Commerce's grouping of the three industries in a highly diversified economy was reasonable.  *Id.* at 9-12.  However, to the extent an explanation for Commerce's grouping of industries is necessary, Petitioner concludes that the fact that "a small group of energy-intensive manufacturing industries receive a disproportionate amount of the subsidy" is a sufficient reason.  Third, Petitioner argues that disproportionality exists because the steel industry is the [          ] user of industrial electricity among 19 industry groupings.  *Id.* at 12-16.  It adds that because there are 19 industry groupings, each industry would be expected to consume [      ] percent of industrial electricity, and concludes that any industry using more than this percentage receives a disproportionate benefit.  *Id.* at 13.  Fourth, Petitioner states that a disproportionality finding does not require Commerce to compare

certain industries' electricity consumption "against something other than other industries' use of electricity." *Id.* at 14. Lastly, Petitioner argues that Commerce could find *de facto* specificity by concluding that the group of industries was a predominant user of industrial electricity. *Id.* at 16-18. The Court should reject all of these arguments.

### A.    Petitioner's Arguments Were Not Relied Upon by Commerce

In the Second Final Remand Results, Commerce determined that the provision of electricity for less than adequate remuneration was specific to Hyundai Steel by comparing Hyundai Steel's industrial electricity consumption to its share of total GDP. Commerce did not rest its revised *de facto* specificity determination on any finding that the steel industry's share of electricity consumption or a group of industries' share of electricity consumption constituted disproportionate or predominant usage of electricity. Again, "the court 'must judge the propriety of {agency}action solely by the grounds invoked by the agency.'" *Matra*, 681 F. Supp. 3d at 1359 (quoting *Chenery*, 332 U.S. at 196). Because Petitioner's alternative rationales were not adopted by Commerce, they should not even be considered by the Court.

### B.    The GOK Provided Electricity Under a Standard Pricing Mechanism

Commerce has repeatedly found that there is no *de facto* specificity when industrial users of electricity are "treated in a manner consistent or even less favorable than other consumers with respect to the electricity tariff schedule." *Melamine From Trinidad and Tobago: Final Affirmative Countervailing Duty Determination*, 80 Fed. Reg. 68,849 (Nov. 6, 2015), and accompanying Issues and Decision Memorandum at 13. This Court has sanctioned that practice, holding that a program is not *de facto* specific "if the rate charged is consistent with the standard pricing mechanism and the company under investigation is, in all other respects, essentially treated no differently than similarly situated consumers." *Bethlehem Steel Corp. v. United States*, 140 F. Supp. 2d 1354, 1369-70 (Ct. Int'l Trade 2001) (upholding Commerce's finding of

no *de facto* specificity because there is "no exercise of discretion and no favorable treatment afforded to any one industry").

Contrary to Petitioner's contention, nothing in the record evidence suggests that the steel industry or Hyundai Steel were treated favorably. *See Hyundai Steel Co. v. United States*, 745 F. Supp. 3d 1345, 1353 (Ct. Int'l Trade 2024) ("*Hyundai I*"). Rather, the record demonstrates that KEPCO provided electricity to all enterprises and industries in Korea that use electricity and that electricity was provided under a standard pricing mechanism, *i.e.*, KEPCO's electricity tariff schedule. *See* GOK IQR at 16-17, 30, 203 (C.R.29/P.R.60), Exhibit E-10 (C.R.43/P.R.70). More importantly, KEPCO enforced a standard pricing mechanism and provided electricity to users in other classifications, such as residential, educational, and agricultural, at ***lower*** rates than industrial users. GOK IQR at 16-17, 30, Exhibit E-10. Thus, Petitioner's argument that industrial manufacturers would have consumed less electricity if prices were set "fairly" is unsupported by substantial evidence.

### C. This Court Already Found that Commerce's Reasoning for Its Grouping of Industries Was Deficient and Commerce Did Not Provide an Alternative Explanation

This Court already found that Commerce's reasoning for grouping the top three electricity consuming industries – *i.e.*, because the three industries received more of the subsidy than other industries – was deficient. Court Op. at 14-16. The Court held that "Commerce cannot create a group to limit the subsidy for purposes of satisfying the specificity requirement without providing a rational basis for the grouping." *Hyundai I*, 745 F. Supp. 3d at 1353; *see also POSCO v. United States*, 794 F. Supp. 3d 1402, 1409 (Ct. Int'l Trade 2025).

No alternative explanation was offered in Commerce's Second Final Remand Results. In fact, Commerce explicitly stated that it chose to entirely reconsider the basis for its specificity finding and relied on a basis that did not involve group. Second Final Remand Results at 10.

Thus, without any explanation by Commerce on this issue, Petitioner cannot claim that Commerce's prior rationale for grouping the industries, which has been deemed deficient by this Court, somehow became reasonable.

Further, Petitioner's claim that Commerce has no obligation to consider the makeup of the industries in its decision to group together industries is not without limits and thus, cannot be the basis for finding that Commerce's grouping of the three industries was reasonable. This Court in *POSCO* explained that although the statute does not direct Commerce on how to construct a group of enterprises or industries, the Federal Circuit stated that "the actual make-up of the eligible firms ... determines whether those firms comprise a specific industry or group of industries." *POSCO*, 794 F. Supp. 3d at 1408 (citing *PPG Indus., Inc. v. United States*, 978 F.2d 1232, 1240-41 (Fed. Cir. 1992)). As such, the Court held that "any discretion the statute gives Commerce to group industries is abused when it is not exercised reasonably 'within the constraints of the statute and record.'" *Id.* (citing *Oman Fasteners, LLC v. United States*, 125 F.4th 1068, 1086-87 (Fed. Cir. 2025)). Given that Commerce did not consider the actual makeup of the industries initially and later abandoned the grouping altogether, Commerce's grouping decision remains unreasonable.

Because the record does not contain a reasonable basis for grouping the top three electricity consuming industries together for purposes of a *de facto* specificity analysis, Petitioner's alternative arguments premised on the electricity consumption of this group of industries are unsupported by substantial evidence, regardless of whether those arguments are based on the group's disproportionate or predominant usage of electricity.

### D.    Petitioner Continues to Confuse Disparity With Disproportionality

The courts have repeatedly clarified that "a finding of disproportionality under 19 U.S.C. § 1677(5A)(D)(iii)(III) requires a case-by-case analysis which assesses benefits, not in relation to

the benefits of others, but in relation to some other comparator depending on the circumstances."
Court Op. at 9 (citing *Hyundai I*, 745 F. Supp. 3d at 1351-52) (internal quotation marks omitted);
*see also AK Steel Corp. v. United States*, 192 F.3d 1367, 1385 (Fed. Cir. 1999) (rejecting an
argument that Commerce should determine disproportionality simply "by looking at the
percentage of the total benefit of a subsidy program accruing to a particular company or
industry"); *Samsung Electronics Co., Ltd. v. United States*, 973 F. Supp. 2d 1321, 1326-27 (Ct.
Int'l Trade 2014) (finding that using just the relative share of the total benefit to determine
disproportionality could produce an untenable result); *Bethlehem Steel Corp.*, 140 F. Supp. 2d at
1369 (finding that imposing "countervailing duties on an industry where disparity alone is
demonstrated, but no evidence is produced indicating that the benefit was industry specific, is
anathema to the purpose of countervailing duty laws").  In other words, the disproportionality
analysis "requires a comparison of the amount of subsidy and an attribute of the industry, not a
comparison of the amount of a subsidy given to different industries."  Court Op. at 11-12.  In
light of this overwhelming precedent, Petitioner's insistence that disproportionality exists merely
because the steel industry is the [          ] user of industrial electricity and used, either alone
or with two other industries, more than [          ] percent of industrial electricity suggests either
Petitioner's ignorance of the difference between disparity and disproportionality or its willful
disregard of Court's clear instructions.

  Petitioner's argument is also unsupported by record evidence.  Concluding that each of
the 19 industry groupings must consume [          ] percent ignores the different size and nature of
industries that impact electricity consumption.  It also ignores the fact that most of the nineteen
industry groupings do not even consume industrial class electricity.  The nineteen industry
groupings include a broad range of economic activities such as "agriculture, forestry and

fishing," "wholesale and retail trade," "transportation," "accommodation and food service activities," and "education."  Memorandum from Stephanie Berger to File, "Placement of Korea Economic Diversification Memorandum on the Record" (May 3, 2022) (P.R.24).  Most of the enterprises within these categories fall within the general, educational, or agricultural classifications when purchasing electricity.  Thus, Petitioner's claim that all industries or industry groupings must consume the exact same percent of industrial electricity in order for the provision of electricity to avoid being *de facto* specific is absurd.

## III.    ELECTRICITY IS WIDELY AVAILABLE

Petitioner again offers no new reasoning for Commerce's assertion that the provision of industrial class electricity is neither widely available nor general infrastructure.  Pet'r Comments at 18-21.  Instead, Petitioner cites to various court decisions to claim that the courts have sustained Commerce's findings that electricity and other energy inputs are specific.  *Id.* at 21.

As explained in the GOK Comments, the ability to track usage of a subsidy or to characterize it as something other than "general infrastructure" does not mean that the subsidy is specific as a matter of fact.  GOK Comments at 14.  Rather, because the provision of electricity in Korea is provided throughout the entire economy, it is a type of program that this Court has considered not specific or countervailable.  *Id.*; *see also Mosaic Co. v. United States*, 774 F. Supp. 3d 1362, 1382-83 (Ct. Int'l Trade 2025).

Further, Petitioner's reliance on *Canadian Solar*, *Changzhou Trina Solar Energy* and *Mosaic* is misplaced.  In both *Canadian Solar* and *Changzhou Trina Solar Energy*, the courts upheld Commerce's finding of specificity based on regional specificity, as Commerce determined in those cases – using adverse facts available – that the Government of China provided subsidized electricity prices to certain geographic regions.  *See Canadian Solar Inc. v. United States*, No. 19-00178, 2022 WL 1583428, at *2-4 (Ct. Int'l Trade May 19, 2022);

*Changzhou Trina Solar Energy Co. v. United States*, 466 F. Supp. 3d 1287, 1299 (Ct. Int'l Trade 2020).  Therefore, the programs at issue in *Canadian Solar* and *Changzhou Trina Solar Energy* were not broadly available and widely used programs, but instead were geographically specific programs.  In *Mosaic*, the court's decision pertained to Commerce's finding of specificity based on predominant use of natural gas by a particular industry under 19 U.S.C. § 1677(5A)(D)(iii)(II), not disproportionality under 19 U.S.C. § 1677(5A)(D)(iii)(III).  *Mosaic Co. v. United States*, 589 F. Supp. 3d 1298, 1310 (Ct. Int'l Trade 2022).  *Mosaic* is thus distinguishable from this case based on the fact that electricity in Korea was widely used by virtually everyone in the country, not predominantly by any particular industry as in *Mosaic*.  Accordingly, these cases do not support Petitioner's argument.

## <u>CONCLUSION</u>

For the reasons discussed above, the GOK respectfully requests that the Court reject the arguments raised in Petitioner's Comments on Commerce's Second Final Remand Results and remand again for Commerce to reach the only decision supported by the law and the record, which is that the alleged provision of electricity for LTAR in Korea is not *de facto* specific.

Respectfully submitted,

/s/ Yujin K. McNamara
Yujin K. McNamara
Devin S. Sikes
Daniel M. Witkowski
Sung Un K. Kim
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street NW
Washington, DC 20006
Phone: (202) 887-4347
E-mail: ymcnamara@akingump.com

Dated:  March 16, 2026           *Counsel for the Government of the Republic of Korea*

## CERTIFICATE OF COMPLIANCE

Undersigned counsel hereby certifies that the forgoing brief complies with paragraph 2(B)(1) of the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 3,555 words including text, headings, footnotes, and quotations and excluding the table of contents, table of authorities, and counsel's signature block, according to the word count function of the word-processing software used to prepare this submission.

Respectfully submitted,

/s/ Yujin K. McNamara
Yujin K. McNamara
Devin S. Sikes
Daniel M. Witkowski
Sung Un K. Kim
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street NW
Washington, DC 20006
Phone: (202) 887-4347
E-mail: ymcnamara@akingump.com

Dated:  March 16, 2026        *Counsel for the Government of the Republic of Korea*