NON-CONFIDENTIAL VERSION

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

HYUNDAI STEEL COMPANY,

                **Plaintiff,**

      **and**

GOVERNMENT OF THE REPUBLIC OF KOREA,

                **Plaintiff-Intervenor,**

      **v.**

UNITED STATES,

                **Defendant,**

      **and**

NUCOR CORPORATION,

                **Defendant-Intervenor.**

Before: Hon. Claire R. Kelly,
        Judge

Court No. 23-00211

**NON-CONFIDENTIAL VERSION**

Business Proprietary Information
Removed from Pages: 1, 3-5, 8-9

### DEFENDANT-INTERVENOR'S REPLY COMMENTS ON THE FINAL RESULTS OF REDETERMINATION PURSUANT TO SECOND REMAND

Alan H. Price, Esq.
Christopher B. Weld, Esq.
Derick G. Holt, Esq.
Paul A. Devamithran, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Nucor Corporation*

Dated: March 16, 2026

Ct. No. 23-00211                                          NON-CONFIDENTIAL VERSION

## Table of Contents

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     ARGUMENT............................................................................................................. 1

III.    CONCLUSION....................................................................................................... 10

**Ct. No. 23-00211**                                              NON-CONFIDENTIAL VERSION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AK Steel Corp. v. United States*,
192 F.3d 1367 (Fed. Cir. 1999)....................................................................................4

*Hyundai Steel Co. v. United States*,
798 F. Supp. 3d 1283 (Ct. Int'l Trade 2025) ...............................................................2

**Statutes**

19 U.S.C. § 1677(5A)(D)(iii)(III) ...................................................................................9

Ct. No. 23-00211

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

NON-CONFIDENTIAL VERSION

## I.    INTRODUCTION

On behalf of Defendant-Intervenor Nucor Corporation ("Nucor"), we hereby submit the following reply comments to the Government of Korea's ("GOK") and Hyundai Steel Company's ("Hyundai Steel") (collectively, "Plaintiffs") comments in opposition to the December 23, 2025 remand determination issued by the U.S. Department of Commerce ("Commerce"). Final Results of Redetermination Pursuant to Ct. Remand (Dec. 23, 2025), ECF Nos. 93-94, C.R.R.R. 5, P.R.R.R. 10 ("Second Remand Redetermination"); Government of Korea Comments on the Second Final Results of Redetermination (Jan. 29, 2026), ECF Nos. 101-102 ("GOK Comments"); Hyundai Steel Comments in Opposition to Second Remand Results (Jan. 29, 2026), ECF Nos. 99-100 ("Hyundai Steel Comments"). Commerce's Remand Determination is consistent with the Court's August 12, 2025 opinion. *Hyundai Steel Co. v. United States*, No. 23-00211, slip op. 25-102 (Ct. Int'l Trade Aug. 12, 2025), ECF Nos. 79, 85 ("*Hyundai Steel II*"). Commerce continues to properly find that the provision of electricity for LTAR is *de facto* specific, and the Court should sustain the agency's remand determination.

## II.    ARGUMENT

On remand, Commerce reasonably compared Hyundai Steel's share of the benefit received from total Korean subsidized industrial class electricity in 2021 with the company's share of Korea's GDP the same year. Second Remand Redetermination at 5-6. Commerce reasonably found that the former share of subsidized industrial electricity use and corresponding stake of the benefit, [        ] percent, was disproportionate ([                    ]) to the latter share of Korea's GDP [        ] percent. *Id.* at 5-6. Commerce's remand redetermination was supported by substantial evidence. Plaintiffs make several arguments to the contrary, which are unavailing.

**First**, Plaintiffs argue that Commerce's use of Hyundai Steel's shares of Korean GDP as an external comparator for Hyundai Steel's share of industrial electricity was unreasonable. GOK Comments at 3; Hyundai Steel Comments at 4. Specifically, Hyundai Steel argues that "{t}here is no logical correlation between an enterprise or industry's consumption of industrial electricity and its contribution to GDP." Hyundai Steel Comments at 4. This is false; there is a logical correlation, and Hyundai Steel's own examples illustrate why.

Hyundai Steel explains that "the finance and real estate sectors would not consume much, if any industrial electricity (or even other types of electricity for that matter) to generate sales revenue. They are not electricity intensive sectors. . . . The same would be true for the information sector that generates revenue through brain power and not by the consumption of electric power." Hyundai Steel Comments at 4-5 (emphasis added); *see also* GOK comments at 3-4. This is precisely the point. The Court found that disproportionality requires a showing that the recipient is "favored in some way," "receives more than its fair share," or "benefits{} more than would be expected." *Hyundai Steel Co. v. United States*, 798 F. Supp. 3d 1283 (Ct. Int'l Trade 2025) at 1288. If some sectors are receiving disproportionately more of the benefit, then other sectors must, by definition, be receiving disproportionately less of the benefit. Thus, the fact that the financial services, real estate, and information sectors of the Korean economy are receiving less of the benefit, as Hyundai Steel points out, does not undermine a specificity finding on the basis of disproportionality – it confirms it.

This is directly supported by the record. At Commerce's request, the GOK reported which Korean industries receive benefits and which do not. Letter from Yoon & Yang LLP to Sec'y Commerce re: *Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from Korea: Response to the Initial Questionnaire* (June 27, 2022), C.R. 29-64, P.R. 60-85, at Exhibit

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

Ct. No. 23-00211                                                                NON-CONFIDENTIAL VERSION

E-15 (PDF pp. 4826) ("GOK Questionnaire Response"). [                    ], for example,

receives heavily subsidized electricity, and so, the [

], receives a benefit from that subsidy that outpaces that sector's relative

contribution to the Korean economy. That is disproportionality, and it is precisely the scenario that

the Court contemplated in *Hyundai Steel II*, *i.e.*, "a situation where an enterprise received more of

the subsidy than would be expected by some comparator such that its receipt could be considered

disproportionate." *Hyundai Steel II* at 12-13. The same analytical framework applies in this case

to Hyundai Steel and the Korean steel industry.

As Commerce explained, "{g}iven that the design of Korea's Electricity Program is to

benefit heavy users of the subsidized input, such as steel companies, the use of GDP as a

comparator, and Hyundai Steel's contribution to the Korean economy, is reasonable."

Second Remand Redetermination at 14. According to the GOK's initial questionnaire listing the

top ten recipients of subsidized industrial electricity, the steel making industry alone used [      ]

percent of all industrial electricity consumed during the POR. Final Results of Redetermination

Pursuant to Ct. Remand (Apr. 11, 2025), ECF Nos.62-63, C.R.R. 3, P.R.R. 8, at Attachment ("First

Remand Determination"); GOK Questionnaire Response at 35-36. Since there are 19 industry

groupings, one could expect that each industry would consume [      ] of industrial electricity.

Memorandum from Stephanie Berger, Int'l Trade Compliance Analyst, AD/CVD Operations, Off.

III, to The File, re: *Administrative Review of the Countervailing Duty Order of Certain Cut-to-*

*Length Carbon-Quality Steel Plate from Korea: Placement of Korea Economic Diversification*

*Memorandum on the Record* (May 3, 2022), P.R. 24, at 9 ("Diversification Memo")Any more than

the mean of [      ] is disproportionate; therefore, the steel industry used disproportionate amount

and received a disproportionate amount of the subsidy compared to other industries.

3

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

**Ct. No. 23-00211**                                                    **NON-CONFIDENTIAL VERSION**

Put another way, the [                    ] industrial user of electricity in Korea consumed only

[      ] percent of industrial electricity, compared to [        ] percent for the steel industry alone.

GOK Questionnaire Response at 35-36. The other industries that are not [                      ]

presumably consumed less than [      ] percent of the subsidized industrial electricity provided by

the Korean government. Comparing these figures to each other as well as to the [        ] expected

average if industrial electricity was consumed evenly among the 19 industries in Korea

demonstrates that some producers consumed disproportionately less electricity and some, like

steelmakers, consumed disproportionately more.[1] Since the amount of the subsidy is tied directly

to usage, the amounts of the subsidies received among industries was likewise disproportionate.

As the Federal Circuit has explained, "{d}eterminations of disproportionality and

dominant use are not subject to rigid rules, but rather must be determined on a case-by-case basis

taking into account all the facts and circumstances of a particular case." *AK Steel Corp. v. United

States*, 192 F.3d 1367, 1385 (Fed. Cir. 1999). The program at issue in this case is an LTAR subsidy

in which consumption volumes are directly tied to prices paid – *i.e.*, an industry or enterprise

benefitting from an LTAR subsidy is likely to consume more of the subsidized input than it

otherwise would in large part because the input is being subsidized. If electricity was priced fairly,

then these large industrial manufacturers would consume less electricity and receive less of a

benefit. For example, Hyundai consumes [      ] electricity in off-peak periods where it receives

the [        ] benefit during those hours relative to mid-peak and on-peak hours, where it receives

---

[1]    Assuming that the information the GOK provided and certified to be accurate is true, then [
] largest users of industrial electricity should account for less than [      ] percent of industrial
electricity usage, *i.e.,* the share of the [      ] largest user. *See* GOK Questionnaire Response at 35-36. When dividing
the remaining electricity consumption of [      ] percent by [                    ], and assuming those [
] consumed an equal amount of electricity, the share of the total subsidy received by [        ] industries
would be [      ] percent. [                ] Korean industries received between [      ] – [      ] percent of the amount of
the benefit from subsidized electricity, and the steel industry received essentially [          ] as much, this too is clear
evidence of disproportionate receipt of the amount of the subsidy. *Id.*

**BUSINESS PROPRIETARY INFORMATION**
                    **HAS BEEN DELETED**                    **NON-CONFIDENTIAL VERSION**

[      ] of a benefit. Memorandum from David Lindgren, Program Manager, AD/CVD Operations, Off. III, to the File, re: *Certain Cut-To-Length Carbon-Quality Steel Plate from the Republic of Korea: Analysis and Calculations for the Final Results* (August 30, 2023), C.R. 269, P.R. 223, at Attachment 2 (PDF pp. 22-24). In fact, while there are only [                   ], Hyundai's consumption and in turn, receipt of the benefit of subsidized electricity, is [       ] than Hyundai's consumption of electricity [                           ]. *Id.* Specifically, Hyundai Steel consumed [

                                              ]. *Id.* Even within the subsidy, it is clear that Hyundai receives a disproportionate amount of the subsidy when the benefit is largest. That is, the structure of an LTAR subsidy itself creates the incentive to consume more of the subsidy when the benefits are the largest. As Commerce explained in prior submissions, the steel industry's receipt of the benefit is greater than what other manufacturing industries are receiving if all things were equal.

Any way you parse it, for the purpose of an adequate remuneration program in a highly diversified economy, the electricity for LTAR program was clearly <u>not</u> designed to benefit certain industries in Korea – like the finance, real estate, and information sectors that Plaintiffs themselves identified. But it clearly <u>was</u> designed to benefit heavy users of the input, including steelmakers like Hyundai Steel.

Plaintiffs want to have it both ways. On the one hand, Plaintiffs call Commerce's conclusion "nonsense," and claim that "{t}here is no evidence that the electricity for LTAR program is designed to benefit heavy users of the subsidized input." Hyundai Steel Comments at 9. But elsewhere, Hyundai Steel explains that "{u}sing the example of major sectors of the economy such as finance or real states, it <u>certainly would not be expected</u> that they would consume industrial

electricity in the same amounts as manufacturing industries such that usage and benefits would be evenly distributed." *Id.* at 5 (emphasis added). If it "certainly would not be expected" that all sectors would receive an equal benefit, then it certainly would be expected that some would receive more, and some would receive less. That is a feature of the program and not a bug. The reality is that the electricity for LTAR program was not designed to benefit all enterprises and industries equally or in a manner commensurate with each enterprise or industry's contributions to the economy. Instead, it was designed to disproportionately benefit certain enterprises and industries. Therefore, the subsidy is *de facto* specific.

**Second**, Plaintiffs argue that "nothing in the record establishes that industrial electricity consumption 'tracks' contribution to GDP." GOK Comments at 10. This is inaccurate. The record actually does support the link between electricity use (or demand), GDP, and industry and/or manufacturing, specifically – as opposed to other segments of the Korean economy. In the GOK's initial questionnaire response, "GDP" and "Industrial Structure" are two of just four factors feeding Korea Power Exchange's electricity demand forecasts. GOK Questionnaire Response at Exhibit DRR-3 (PDF pp. 6560). The other two factors are population and electricity price. *Id.* Additionally, in the electricity verification report placed on the record by the GOK, the GOK representative stated "{f}or the forecast data (*e.g.*, "II. Sales plan for 2013"), Mr. Kim stated that it is based on future sales that are influenced by *gross domestic product (GDF)*. Thus, this can be used to review the forecast data. Moreover, Mr. Kim noted that if there is a question on the forecast basis or the GDP values used, MOTIE can request the information from KEPCO." *See id.* at Exhibit E-19 (PDF pp. 4916). Thus, the state-owned entity providing subsidized industrial electricity to Hyundai Steel and the steel industry uses GDP in its demand forecast analysis, which renders Commerce's selection of GDP as an external comparator reasonable.

Moreover, other GOK generated documents demonstrate that GDP is an appropriate external comparator for this subsidy. In particular, the Republic of Korea's Economic Bulletin for 2021 (*i.e.*, the calendar year comprising the period of review), published by the Korean Ministry of Economy and Finance and included as Exhibit Gen-1 of the GOK's initial questionnaire response maps the strong correlation between "GDP" and "industrial production," which holds true for all recorded localities. *Id.* at Exhibit Gen-1 (PDF pp. 529-531). The same Bulletin compares Korea's real GDP with just two national accounts: "agriculture, forest, fisheries," and "manufacturing." *Id.* at Exhibit Gen-1 (PDF pp. 569). Korean GDP year-on-year change was highly correlated with manufacturing (much more so than with agriculture, *etc.*). *Id.* In the last year recorded, *i.e.*, 2020, the year-on-year change for Korean GDP and Korean manufacturing was identical – a point reduction in manufacturing correlated with a point reduction in GDP. *Id.* In its October 2021 Economic Bulletin, the GOK explains its "GDP by production and expenditure" chart by explicitly noting "{m}anufacturing fell 1.3 percent as both transportation equipment and *fabricated metal products declined*" and "imports rose 2.8 percent backed by *primary metal products* and chemical products." *Id.* at Exhibit Gen-1 (PDF pp. 1075) (emphasis added). Notably, every Economic Bulletin placed on the record by the GOK analyzes Korean GDP relative to production and expenditures using manufacturing activity, which includes the steel industry, in the same manner. *Id.* at Exhibit Gen-1 (PDF pp. 693, 757, 889, 954, 1075, 1131).

The use of Korean GDP as a reasonable external comparator is also supported by the Korea Energy Agency's ("KEA") use of Korean GDP as reflected in its Demand Side Management Policy. *Id.* at Exhibit LTKEA-3 (PDF pp. 5319). In fact, KEA uses GDP in measuring energy intensity. *Id.* In explaining Korea's reliance on fuel imports, KEPCO's annual report states that "20% of total import costs were spent on energy import, which amounted to what Korea earned

7

**Ct. No. 23-00211**                                                        **NON-CONFIDENTIAL VERSION**

from top four exporting products . . . *The energy intensity (energy used per unit of GDP) of the Korean economy is relatively high due to a large proportion of energy-intensive industries compared to other countries.*" *Id.* (emphasis added). Commerce's analysis of Hyundai's Steel energy use relative to its contribution to GDP essentially confirms that the respondent is receiving a disproportionate amount of the benefit (*i.e.*, subsidized industrial electricity) based on its energy-intensity and is the same measure that the GOK uses to compare energy-intensity on an international level.

**Third**, Plaintiffs argue that their failure to comment on the GDP data that Commerce put on the record is not fatal to their objections regarding the use of that data for that purpose. Hyundai Steel Comments at 7, n. 2; GOK Comments at 7-8. But Commerce put Korean GDP information on the record in this proceeding pursuant to the Court's suggestion to use an external comparator. Second Remand Redetermination at 10-11. Neither the GOK nor Hyundai Steel timely objected to Commerce's use of GDP data for that purpose, nor did the Plaintiffs "submit factual information to rebut, clarify, or correct" that data, as Commerce invited them to do. The Plaintiffs could have, for example, submitted factual information concerning alternative comparators, but they did not. Having failed to do so, Plaintiffs waived their right to make those arguments or invoke those hypothetical alternatives now.

**Fourth**, Plaintiffs argue that even if Commerce compares Hyundai Steel's industrial class electricity consumption to overall industrial class electricity consumption, "even a share of [      ] percent . . . cannot be considered 'large' as that word is normally understood." GOK Comments at 9. Plaintiffs go on to list examples where Commerce's analyzed absolute and not relative values. *Id.* To make this argument, Plaintiffs conveniently deemphasize the "disproportionately" part of the "disproportionately large amount of the subsidy" standard under

**Ct. No. 23-00211**                                        **NON-CONFIDENTIAL VERSION**

19 U.S.C. § 1677(5A)(D)(iii)(III). On a relative basis, the disproportionately large use of industrial electricity by Hyundai is apparent. Hyundai Steel alone [                    ] percent of all industrial electricity consumption, and the *entire* Korean steel industry [                    ] percent of industrial electricity usage, meaning a single subset of the steel industry is consuming a significantly outsized share of industrialized electricity relative to its place within the broader industrial economy. Second Remand Redetermination at 5-6; First Remand Determination at Attachment; GOK Questionnaire Response at 35-36.

Furthermore, comparing Hyundai Steel's industrial electricity use with the use of the other 400,000 manufacturing establishments in Korea also reveals that Hyundai Steel used disproportionately large amount of the subsidy during the period of review. Diversification Memo at Attachment, pp. 2. In its initial questionnaire response in the underlying review, the GOK provided a list of the top 100 industrial consumers of electricity by facility. GOK Questionnaire Response at Exhibit E-11. While the GOK did not identify any companies on the list other than the respondents or the industries in which they operate, the list shows that [                    ] accounted for [                    ] of total industrial electricity consumption during the POR. *Id.* According to Commerce's economic diversification memo, there were more than *400,000* manufacturing establishments operating in Korea during the POR. Diversification Memo at Attachment pp. 2. That [                    ] amounted to [                    ] of total industrial consumption in an economy of more than 400,000 manufacturing establishments is also *prima facie* evidence of a "disproportionately large" benefit.

## III.   <u>CONCLUSION</u>

For all of these reasons, and others described in Commerce's remand determination, the Court should sustain Commerce's remand results determining that the GOK's provision of electricity for LTAR to Hyundai Steel is *de facto* specific.

*        *        *

Respectfully submitted,

/s/ Derick G. Holt
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Derick G. Holt, Esq.
Paul A. Devamithran, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Nucor Corporation*

Dated: March 16, 2026

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor Nucor Corporation's Comments in Support of the Final Results of Redetermination Pursuant to Second Remand, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 2,893 words.

*/s/ Derick G. Holt*
(Signature of Attorney)

Derick G. Holt
(Name of Attorney)

Nucor Corporation
(Representative Of)

March 16, 2026
(Date)
