Slip Op. 26-52

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| HYUNDAI STEEL COMPANY,<br><br>     Plaintiff,<br><br>and<br><br>GOVERNMENT OF THE REPUBLIC OF KOREA,<br><br>     Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES,<br><br>     Defendant,<br><br>and<br><br>NUCOR CORPORATION,<br><br>     Defendant-Intervenor. | Before: Claire R. Kelly, Judge<br><br>Court No. 23-00211<br>PUBLIC VERSION |

## OPINION AND ORDER

[Remanding Commerce's specificity redetermination under 19 U.S.C. § 1677 (5A)(D)(iii)(III).]

Dated: May 18, 2026

Brady Warfield Mills, Lead Attorney, Donald B. Cameron, Jr., Edward J. Thomas, III, Eugene Degnan, Jordan L. Fleisher, Jr., Julie Clark Mendoza, Mary Shannon Hodgins, Nicholas C. Duffey, Jr., and Rudi Will Planert, Taft Stettinius & Hollister LLP, of Washington, DC for Plaintiff Hyundai Steel Company.

Yujin Kim McNamara, Lead Attorney, Daniel Martin Witkowski, Devin Scott Sikes, and Sung Un K. Kim, Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington, D.C. for Plaintiff-Intervenor Government of the Republic of Korea.

Court No. 23-00211                                                                 Page 2
**PUBLIC VERSION**

Tara Kathleen Hogan, Lead Attorney, of the U.S. Department of Justice, Commercial Litigation Branch – Civil Division, Charlie Chung, Jesus Nieves Saenz, and Karl John Mueller, Of Counsel, U.S. Department of Commerce, Office of Chief Counsel for Trade Enforcement and Compliance, of Washington, D.C. for Defendant United States.

Alan Hayden Price, Lead Attorney, Adam Milan Teslik, Christopher Bright Weld, Derick G. Holt, Enbar Toledano, Maureen Elizabeth Thorson, Paul A. Devamithran, and Theodore Paul Brackemyre, Wiley Rein, LLP, of Washington D.C. for Defendant-Intervenor Nucor Corporation.

Kelly, Judge:  Before the Court is the Department of Commerce's ("Commerce") redetermination pursuant to this Court's remand order.  See Hyundai Steel Co. v. United States, 798 F. Supp. 3d 1283 (Ct. Int'l Trade 2025) ("Hyundai II"); see also Final Results of Redetermination Pursuant to Court Remand, Dec. 23, 2025, ECF No. 93 ("Second Remand Results").  Commerce continues to find the electricity subsidy provided by the Government of the Republic of Korea's ("Gov't of Korea" or "Plaintiff-Intervenor") Provision of Electricity for Less Than Adequate Remuneration ("LTAR") (the "Electricity Program") de facto specific because during the 2021 period of review ("POR"), Hyundai Steel Company ("Hyundai" or "Plaintiff") received a disproportionately large amount of the industrial-class electricity subsidy in comparison to its share of the Republic of Korea's ("Korea") gross domestic product ("GDP").  See Second Remand Results at 2–15.  Plaintiff and Plaintiff-Intervenor argue that Commerce's industrial-class electricity-to-GDP comparison does not demonstrate Hyundai's receipt of a disproportionately large subsidy because (1) the provision of electricity, which is broadly available and widely used pursuant to a

standard pricing mechanism, is not specific; (2) GDP is not an appropriate comparator; and (3) Commerce's comparison of Hyundai's share of industrial-class electricity use to its contribution to total GDP is illogical. See Pl. Hyundai Steel Company's Cmts. on Remand Results at 3–10, Jan. 29, 2026, ECF Nos. 99–100 ("Pl. Cmts."); Pl. Int. Gov't of the Republic of Korea's Cmts. on Remand Results at 3–15, Jan. 29, 2026, ECF Nos. 101–02 ("Pl. Int. Cmts."). Defendant-Intervenor argues Commerce's industrial-class electricity-to-GDP comparison is reasonable and demonstrates disproportionate receipt of the subsidy. See Def. Int. Nucor's Revised Cmts. on Remand Results at 4–21, Feb. 5, 2026, ECF Nos. 110–11 ("Def. Int. Cmts.").

## BACKGROUND

Commerce initiated an administrative review of the Countervailing Duty ("CVD") order on Certain Cut-to-Length Carbon-Quality Steel Plate for the 2021 POR on April 12, 2022. See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 87 Fed. Reg. 21,619 (Dep't Commerce Apr. 12, 2022). Commerce evaluated various subsidy programs, including the Electricity Program. Certain Cut-to-Length Carbon-Quality Steel Plate From the Republic of Korea: Preliminary Results and Preliminary Intent To Rescind, in Part, the Countervailing Duty Administrative Review; 2021, 88 Fed. Reg. 13,433 (Dep't Commerce, March 3, 2023), PD 186, bar code 4347830-03 (Mar. 6, 2023) ("Preliminary Results") and accompanying Prelim. Issues & Decision Mem. at 24–30, PD 183, bar code 4347830-02 (Feb. 27, 2023) ("Prelim. Decision Memo."). Specifically, Commerce determined

that Hyundai received a countervailable subsidy rate of 0.51 percent ad valorem for the Electricity Program. Prelim. Decision Memo. at 30.

On September 7, 2023, Commerce published its final determination. Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea; 2021, 88 Fed. Reg. 61,509 (Dep't Commerce Sept. 7, 2023) (final results of CVD review), PD 225, bar code 4424955-03 (Sept. 7, 2023) ("Final Results"), and accompanying Issues and Decision Memo., PD 222, bar code 4425793-01 (Aug. 31, 2023) ("Final Decision Memo."). Commerce found, based on facts otherwise available, that the Electricity Program conferred a benefit because KEPCO's 2021 electricity pricing was not based on market principles and did not cover its costs plus a reasonable rate of return. See Final Decision Memo. at 14, cmt. 2. Commerce also found the Electricity Program to be de facto specific under 19 U.S.C. § 1677(5A)(D)(iii)(III). See id. at 15–16. On December 12, 2024, this Court sustained Commerce's decision to decline to issue a fourth questionnaire to the Government of Korea and apply facts otherwise available to determine whether Hyundai benefited from the Electricity Program, and remanded for Commerce to explain (1) how the identified industries, as grouped, received a disproportionately large amount of the subsidy relative to what their electricity consumption would predict, and (2) why Commerce grouped certain industries for its specificity analysis. Hyundai Steel Co. v. United States, 745 F. Supp. 3d 1345, 1356 (Ct. Int'l Trade 2024) ("Hyundai I").

Commerce filed its Remand Results on April 11, 2025. See generally Final Results of Redetermination Pursuant to Court Remand, Apr. 11, 2025, ECF No. 62-1 ("Remand Results"). On August 12, 2025, the Court remanded Commerce's first remand determination, holding that Commerce's disproportionality determination was contrary to law, because receipt of a greater amount of a benefit alone does not equate with disproportionality. Hyundai II, 798 F. Supp. 3d at 1291. The Court also held that Commerce failed to support its grouping of the top three industries for the specificity analysis and directed Commerce to further explain the grouping or to reconsider its determination consistent with the Court's opinion.[1] See id. at 1291–92.

On September 26, 2025, Commerce placed Korean GDP data on the record and provided an opportunity for interested parties to comment, but no party commented on the data. See generally Second Remand in the Administrative Review of the Countervailing Duty Order on Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea; 2021: Placing Factual Information on the Record, 2RPD 1-2, bar code 4831682-01 (Sept. 26, 2025) ("GDP Memo"); see also Second Remand Results at 5. On December 23, 2025, Commerce filed its Second Remand Results pursuant to the Court's order. See generally Second Remand Results. On January

---

[1] On second remand, Commerce reconsiders the basis of its determination, abandons its prior grouping of certain industries, and instead applies a comparator to demonstrate disproportionate receipt. See Second Remand Results at 10.

29, 2026, Plaintiff, Plaintiff-Intervenor, and Defendant-Intervenor filed comments on the Second Remand Results.  See generally Pl. Cmts.; Pl. Int. Cmts.; Def. Int. Cmts. On March 16, 2026, Defendant filed its comments on the Second Remand Results. Defendant's Cmts. on Remand Redetermination, Mar. 16, 2026, ECF Nos. 116, 123. ("Def. Cmts.").

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction under 28 U.S.C. § 1581(c) to review Commerce's final results in the administrative review of a countervailing duty order.  See 19 U.S.C. §§ 1516a(a)(2)(B)(iii); 1581(c).  The Court must set aside Commerce's determination where it is unsupported by substantial evidence on the record or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Huaiyin Foreign Trade Corp. (30) v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence review requires Commerce "to examine the record and articulate a satisfactory explanation for its action."  Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1378 (Fed. Cir. 2013) (citation omitted). Commerce's explanation must reasonably tie the determination under review to the governing statutory standard and to record evidence.  CS Wind Vietnam Co. v. United States, 832 F.3d 1367, 1376 (Fed. Cir. 2016).  The Court reviews Commerce's remand

determinations for compliance with the Court's remand order.  Nakornthai Strip Mill

Public Co. Ltd. v. United States, 587 F. Supp. 2d 1303, 1306 (Ct. Int'l Trade 2008).

## DISCUSSION

On remand, Commerce determines the Electricity Program provides a de facto

specific subsidy to Hyundai because Hyundai's share of industrial-class electricity

consumption, relative to total industrial-class electricity consumption, exceeded its

contribution to Korea's 2021 total GDP relative to Korea's 2021 total GDP.  Second

Remand Results at 6–7.  As a threshold matter, Defendant and Defendant-Intervenor

argue Plaintiff and Plaintiff-Intervenor failed to exhaust administrative remedies by

not commenting on the GDP data provided on the record and by not raising the

argument before the agency that Hyundai's share of total industrial-class electricity

consumption cannot be "large."  Def. Cmts. at 17–19; Def. Int. Reply at 8.  Plaintiff

and Plaintiff-Intervenor argue they had no obligation to rebut the GDP factual data

to preserve substantive arguments about GDP as a comparator, Pl. Cmts. at 7, n.2;

Pl. Int. Cmts. at 7–9; Pl. Int. Reply at 4, and Plaintiff-Intervenor "requests that the

Court reject" Defendant-Intervenor's arguments.  See Pl. Int. Reply at 4–6.  Plaintiff

and Plaintiff-Intervenor also argue that because electricity is broadly available,

widely used, and priced according to a standard pricing mechanism, Commerce fails

to show that Hyundai's electricity purchases reflect an enterprise- or industry-

specific subsidy, and therefore it cannot find the subsidy to be de facto specific.  See

Pl. Cmts. at 6–10; Pl. Int. Cmts. at 4–11.  Further, they argue that Commerce does

not support its use of Hyundai's contribution to Korea's GDP as a suitable comparator to assess disproportionality.  Pl. Cmts. at 4; Pl. Int. Cmts. at 10–11, 13.  Lastly, they argue Commerce does not support its method comparing Hyundai's consumption of industrial-class electricity to its contribution to Korea's GDP because it relies on mismatched measures.  Pl. Cmts. at 4–10; Pl. Int. Cmts. at 3–11.  Defendant and Defendant-Intervenor maintain Commerce reasonably finds disproportionality based on the GDP share comparison.  See Def. Cmts. at 5, 10–13; Def.-Int. Cmts. at 2–5.[2]  For the following reasons, Commerce's finding that the subsidy Hyundai received is de facto specific based on disproportionate receipt is unsupported by substantial evidence and is remanded for further consideration.

## I.    Exhaustion of Administrative Remedies

As a threshold matter, Defendant and Defendant-Intervenor contend that Hyundai and the Gov't of Korea failed to exhaust administrative remedies and therefore waived certain arguments.  Def. Cmts. at 17–19; Def. Int. Reply at 8.

---

[2]  Defendant-Intervenor proposes, in the alternative, to show de facto specificity Commerce could further explain its grouping method and either (1) compare the grouping's relative use of industrial-class electricity to other users of industrial electricity, Def. Int. Cmts. at 6–15, or (2) show that the group is a predominant user of the subsidy.  Id. at 17–18.  Plaintiff and Plaintiff-Intervenor reply to Defendant-Intervenor's arguments, but the merits of Defendant-Intervenor's alternative arguments are not before the Court.  Pl. Reply to Cmts. on Second Remand Results, Mar. 16, 2026, ECF No. 114 at 4–12; Pl. Int. Reply to Cmts. on Second Remand Results, Mar. 16, 2026, ECF No. 118 at 6.  The Court will "review only the bases on which Commerce made its determination."  See NEXTEEL Co., Ltd. v. United States, 28 F.4th 1226, 1237 (Fed. Cir. 2022) (quoting Thai I-Mei Frozen Foods Co. v. United States, 616 F.3d 1300, 1307 (Fed. Cir. 2010)).

Court No. 23-00211                                                                 Page 9
**PUBLIC VERSION**

Specifically, Defendant argues that the Gov't of Korea failed to raise its contention that the percentage of Hyundai Steel's share of total industrial-class electricity consumption cannot be "large," and Defendant-Intervenor argues that because Hyundai and the Gov't of Korea did not comment on the Korean GDP data Commerce placed on the record,[3] they cannot argue the appropriateness of a GDP comparator here. Def. Cmts. at 17–19; Def. Int. Reply at 8. For the following reasons, Hyundai and the Gov't of Korea did not waive either argument.

Plaintiffs must exhaust available administrative remedies before challenging an agency's action before the Court of International Trade. 28 U.S.C. § 2637(d); see also Woodford v. Ngo, 548 U.S. 81, 89 (2006) (requiring exhaustion acknowledges agency expertise, allows agencies to correct mistakes, and promotes efficiency); Consol. Bearings Co. v. United States, 348 F.3d 997, 1003 (Fed. Cir. 2003) (citing 28 U.S.C. § 2637(d)) (A plaintiff must show that it exhausted its administrative remedies, or that it qualifies for an exception to the exhaustion doctrine.).

Here, the Gov't of Korea commented on the Draft Remand Results noting that a subsidy is "specific" if "an enterprise or industry receives a disproportionately large amount of the subsidy." Pl. Int. Cmts. on Draft Remand Results at 6, 2CRR #3, 2PRR #7, barcode 4851252-01 (Dec. 5, 2025) (emphasis in original). It argued that Hyundai's "very small percentage[]" share of total industrial-class electricity

---

[3] The GDP Memo contains "Gross Domestic Product (GDP) data for the Republic of Korea, sourced from International Financial Statistics (IFS)." GDP Memo at 1.

consumption could not demonstrate de facto specificity because the statute requires receipt of the subsidy be disproportionately large.  See id.  By these arguments, the Gov't of Korea put before Commerce its challenge that Hyundai's use of subsidy was not sufficiently large to warrant a specificity finding as envisioned by 19 U.S.C. § 1677(5A)(D)(iii)(III).[4]

Defendant-Intervenor's exhaustion argument fares no better.  It contends that Hyundai and the Gov't of Korea waived any arguments about the sufficiency of GDP as a comparator because they did not comment or object to the Korean GDP data Commerce placed on the record.  See Def. Int. Cmts. at 8; see generally GDP Memo. However, Hyundai and the Gov't of Korea are not challenging the accuracy or reliability of the GDP data, but rather its use by Commerce.  Pl. Int. Cmts. at 8–9; see also Pl. Cmts. at 7, n.2 ("Hyundai Steel had no issue with the veracity or reliability of the raw GDP data that Commerce put on the record and thus had no reason to submit comments on that data.").  Given the context in this case, Hyundai and the Gov't of Korea were not required to comment on the GDP data on the record to preserve the arguments that Commerce's use of the data must be reasonable.

---

[4] Nonetheless, whether the amount of industrial-class electricity Hyundai consumed during the POR by itself is sufficiently "large" is not relevant here.  Commerce measures whether Hyundai received a "disproportionately large amount of the subsidy" in relation to a comparator.  19 U.S.C. § 1677(5A)(D)(iii)(III).  The inquiry is whether the relative difference between Hyundai's industrial-class electricity consumption and the comparator is disproportionately large, not whether its underlying usage amount is large.

Court No. 23-00211                                                          Page 11
**PUBLIC VERSION**

## II.  Countervailability of the Electricity Program

Hyundai and the Gov't of Korea argue that Commerce's conclusion that Hyundai received a subsidy that was specific as a matter of fact is unsupported by substantial evidence and otherwise not in accordance with law because electricity is broadly available and provided pursuant to a "standard pricing mechanism," under which Hyundai was not singled out for favorable treatment.  See Pl. Cmts. at 8–10 ("[the Electricity Program] is tied to usage, pricing is based on a standard pricing mechanism where no preferences are provided . . . and the input at issue, electricity, is broadly available and widely used by virtually all enterprises and industries in Korea . . .") (citation omitted); Pl. Int. Cmts. at 14 ("The provision of electricity in Korea is a 'broad-based, nationwide program,'" and it therefore is not specific or countervailable.'").  Defendant responds that "a subsidy of a broadly available product such as [the Electricity Program] that includes a 'standard pricing mechanism' and involves services to the public can therefore be countervailed where the facts on the record indicate the subsidy is de facto specific to an enterprise or industry."  Def. Cmts. at 9–10.  For the following reasons, Commerce may find specificity as a matter of fact even if the subsidy is widely available or set according to a standard pricing mechanism, if an enterprise or industry receives a disproportionately large amount of the subsidy pursuant to 19 U.S.C. § 1677(5A)(D)(iii)(III).

A subsidy exists where an authority provides a financial contribution, provides income or price support, or makes or entrusts a payment mechanism to provide a

financial contribution, and a benefit is conferred.  See 19 U.S.C. §§ 1677(5)(B),

1677(5A).  "Financial contribution" includes, among other things, direct transfers of

funds, foregoing revenue otherwise due, and the provision of goods or services.  See

§ 1677(5)(D).  A specific subsidy is countervailable.  See §§ 1677(5)(A), 1677(5A).  An

export subsidy, an import-substitution subsidy, or a domestic subsidy may be specific

in law (de jure) or in fact (de facto).  See § 1677(5A)(A)–(D).  A domestic subsidy may

be de facto specific where, inter alia, an enterprise or industry receives a

disproportionately large amount of the subsidy.  See § 1677(5A)(D)(iii)(III).  Section

1677(5A)(D)(iii) provides:

> Where there are reasons to believe that a subsidy may be specific as a
> matter of fact, the subsidy is specific if one or more of the following
> factors exist:
>
>> (I) The actual recipients of the subsidy, whether considered on an
>> enterprise or industry basis, are limited in number.
>> (II) An enterprise or industry is a predominant user of the subsidy.
>> (III) An enterprise or industry receives a disproportionately large
>> amount of the subsidy.
>> (IV) The manner in which the authority providing the subsidy has
>> exercised discretion in the decision to grant the subsidy indicates
>> that an enterprise or industry is favored over others.
>
> In evaluating the factors set forth in subclauses (I), (II), (III), and (IV),
> the administering authority shall take into account the extent of
> diversification of economic activities within the jurisdiction of the
> authority providing the subsidy, and the length of time during which the
> subsidy program has been in operation.

19 U.S.C. § 1677(5A)(D)(iii)(I)–(IV).

When applying § 1677(5A)(D)(iii)(III), Commerce must measure the amount

conferred by a subsidy program against an appropriate comparator in the specific

context of the case. Hyundai I, 745 F. Supp. 3d 1345 at 1352–53; see also AK Steel

Corp. v. United States, 192 F.3d 1367, 1384–85 (Fed. Cir. 1999); id. at 1385 (quoting

Proposed Regulations, 54 Fed. Reg. 23,366, 23,368 (May 31, 1989) ("[T]he specificity

test cannot be reduced to a precise mathematical formula. Instead, the Department

must exercise judgment and balance various factors in analyzing the facts of a

particular case."). Commerce may compare relative percentages rather than absolute

amounts, but it must provide a reasonable explanation as to why the respondent or

group received more than its fair share in light of the selected comparator. See Royal

Thai Gov't v. United States, 436 F.3d 1330, 1336 (Fed. Cir. 2006) (discussing AK

Steel, 192 F.3d at 1385) (The AK Steel court "determined Commerce had properly

exercised the latitude afforded it in determining the appropriate method by which to

determine the specificity of benefits conferred by subsidies. Of course, that latitude

does not excuse Commerce from choosing a reasonable method for determining the

specificity of benefits.")).

According to the Statement of Administrative Action accompanying the

Uruguay Round Agreements Act, "the specificity test functions as a screening

mechanism to winnow out only those foreign subsidies which truly are broadly

available and widely used throughout an economy." Uruguay Round Agreements Act

Statement of Administrative Action ("SAA"), H.R. Doc. No. 103-316, vol. 1, at 929–30

(1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4242–43. The statute identifies whether

a subsidy is effectively limited to certain enterprises or industries, even if it is not

expressly restricted on its face, by examining how it is actually distributed and used in practice.  See SAA at 929–30, 1994 U.S.C.C.A.N. at 4242–43; see also 19 U.S.C. § 1677(5A)(D)(iii).  Therefore, a general claim that a subsidy is broadly available is insufficient.

Further, the Gov't of Korea's reliance on Bethlehem Steel's discussion of price-setting overstates the reach of that decision and improperly elevates a "standard pricing mechanism" to a dispositive factor in the de facto specificity analysis.  The Gov't of Korea argues that Commerce and the Court should reject, as they did in Bethlehem Steel, a de facto specificity finding "if the rate charged is consistent with the standard pricing mechanism and the company under investigation is, in all other respects, essentially treated no differently than similarly situated consumers."  See Pl. Int. Cmts. at 15 (quoting Bethlehem Steel Corp. v. United States, 140 F. Supp. 2d 1354, 1369–70).  Although Bethlehem Steel upheld a finding of non-specificity where rates were consistent with a standard pricing mechanism and no discretion or preferential treatment was exercised, that holding was grounded in the particular facts before the Court.  See Bethlehem Steel, 140 F. Supp. 2d at 1369–70 (pointing to the absence of substantial evidence on that particular administrative record to support a finding of disproportionality).  Nothing in the statute directs Commerce to treat the existence of a uniform tariff schedule as sufficient to render a subsidy non-specific.  See 19 U.S.C. § 1677(5A)(D)(iii).  Rather, the statute requires a fact-based inquiry into how a program operates in practice.  See id.  Thus, Commerce is required

to look beyond the structure of the pricing mechanism and assess the factual circumstances of the subsidy's distribution.

## III.    GDP as a Comparator to Demonstrate Disproportionality

The Gov't of Korea argues Commerce's GDP comparator cannot demonstrate disproportionality because given the nature of the Electricity Program and its users, Commerce does not explain why one would expect benefit amounts to "closely correlate with each user's contribution to GDP." Pl. Int. Cmts. at 10–13. Hyundai argues "[t]here is no logical correlation between an enterprise or industry's consumption of industrial electricity and its contribution to GDP." Pl. Cmts. at 4. Defendant argues that a GDP comparator incorporates consideration of the overall economy in the disproportionality analysis as the statute requires. Def. Cmts. at 10. For the following reasons, Commerce does not explain how a GDP comparator demonstrates disproportionate receipt of the subsidy under these circumstances.

The statute provides a means for Commerce to determine whether an enterprise or industry receives a disproportionately large amount of a subsidy. See 19 U.S.C. § 1677(5A)(D)(iii)(III). In Hyundai II, the Court held that receipt of a greater amount of a benefit alone does not establish disproportionality and directed Commerce either to apply the statutory disproportionality standard with an adequately explained grouping rationale or to reconsider its determination consistent with the Court's opinion. See Hyundai II, 798 F. Supp. 3d at 1291–92. The Court also explained, in both Hyundai I and Hyundai II, that a disproportionality finding

requires "a case-by-case analysis which assesses benefits, not in relation to the benefits of others, but in relation to some other comparator depending on the circumstances." Id. at 1288–90 (quoting Hyundai I, 745 F. Supp. 3d at 1351–52 (citing AK Steel, 192 F.3d at 1385; Royal Thai Gov't, 436 F.3d at 1336)); see also id. at 1290 n.11 ("it is also possible that depending upon the subsidy at issue Commerce might measure disproportionality by other comparators, such as size, number of employees, or value of production, as the [SAA] directs that "Commerce can only make this determination on a case-by-case basis" (citing SAA at 929–30, 1994 U.S.C.C.A.N. at 4242–43)).

The statute does not restrict Commerce's choice of comparator to demonstrate disproportionality. See 19 U.S.C. § 1677(5A)(D)(iii)(III). In general, Commerce may use an economy-wide comparator in assessing de facto specificity because the inquiry turns on whether a subsidy is "broadly available and widely used throughout the economy." See, e.g., Gov't of Quebec v. United States, 105 F.4th 1359, 1375 (Fed. Cir. 2024) (quoting SAA at 929, 1994 U.S.C.C.A.N. at 4242). However, Commerce must explain why GDP is an appropriate comparator in the context of these factual circumstances. See Hyundai II, 798 F. Supp. 3d at 1289–90; Hyundai I, 745 F. Supp. 3d at 1351–52 (citing AK Steel, 192 F.3d at 1385; Royal Thai Gov't, 436 F.3d at 1336)).

Here, Commerce contends that a GDP comparator demonstrates whether Hyundai received a disproportionately large amount of the subsidy under the Electricity Program because "[g]iven the nature of steel production, it is not illogical

to expect that a steel company's consumption of industrial electricity would track its contribution to the economy," and the Electricity Program is designed to "benefit heavy users of the subsidized input, such as steel companies."[5]    Second Remand Results at 12.  Defendant adds that as a comparator, "GDP [is] an attribute of how much Hyundai Steel contributes to the Korean economy," and in using GDP, Commerce fulfills the statutory requirement to consider broader economic activities when analyzing disproportionality.  See Def. Cmts. at 10 (citing Second Remand Results at 6; 19 U.S.C. § 1677(5A)(D)(iii)).  Total GDP is the measure of overall national economic output.  See Second Remand Results at 17 (Attachment 1).  However, Commerce assumes without explanation that Hyundai's proportional share of the industrial-class electricity subsidy should track its contribution to Korea's overall national economic output.[6]

---

[5]  Commerce asserts, without support, that the Electricity Program is designed to benefit heavy users of electricity like the steel industry.  Second Remand Results at 14.

[6]  Defendant points to Hyundai II's suggestion that Commerce might consider the "value of production" as a comparator to support its selection of GDP, concluding "GDP was identified by this Court as a potentially appropriate comparator."  See Def. Cmts. at 16 (citing Hyundai II, 798 F. Supp. 3d at 1290, n.11).  However, the Court emphasized in Hyundai I and Hyundai II that a comparator is appropriate "depending on the circumstances."  See Hyundai II, 798 F. Supp. 3d at 1289–90; Hyundai I, 745 F. Supp. 3d at 1351–52 (citing AK Steel, 192 F.3d at 1385; Royal Thai Gov't, 436 F.3d at 1336).  Commerce offers no explanation as to why GDP would be an appropriate comparator in these circumstances.

Court No. 23-00211                                                    Page 18
**PUBLIC VERSION**

Defendant's reliance on the final clause of Section 1677(5A)(D)(iii) to support

its argument that GDP incorporates broader economic factors is unpersuasive. See

Def. Cmts. at 10.  The clause states:

> In evaluating the factors set forth in subclauses (I), (II), (III), and (IV),
> the administering authority shall take into account the extent of
> diversification of economic activities within the jurisdiction of the
> authority providing the subsidy, and the length of time during which the
> subsidy program has been in operation.

19 U.S.C. § 1677(5A)(D)(iii).  Although the statute indicates "diversification of

economic activities" is relevant to the de facto inquiry, without further explanation it

is unclear how this clause supports the use of GDP as an appropriate comparator.

See CS Wind Vietnam Co., 832 F.3d at 1376 (Commerce must reasonably connect its

methodology and record facts to its ultimate determination); Vicentin S.A.I.C. v.

United States, 404 F. Supp. 3d 1323, 1342–43 (Ct. Int'l Trade 2019) (Commerce is

bound by reasonableness in choosing its methodology), aff'd, 42 F.4th 1372, 1382 (Fed.

Cir. 2022).

## IV.    Industrial-Class Electricity Consumption compared to Total GDP Contribution

Even if Commerce had explained why GDP was an appropriate comparator for

Hyundai's industrial electricity usage, Hyundai and the Gov't of Korea argue that

Commerce's comparison of Hyundai's percentage of industrial-class electricity

consumption to its contribution to total GDP is illogical and therefore cannot support

Commerce's de facto specificity determination.  See Pl. Cmts. at 6–10; Pl. Int. Cmts.

Court No. 23-00211                                                                Page 19
**PUBLIC VERSION**

at 3–7.  Defendant argues Commerce's comparison of industrial-class electricity

consumption to Korea's total GDP is reasonable.  Def. Cmts. 10–13.  The comparison

between Hyundai's industrial-class electricity consumption and its share of the total

GDP is unreasonable.

As explained above, where Commerce finds a subsidy is de facto specific based

on disproportionality, it must conduct a case-specific inquiry to ascertain whether

respondents received more than their fair share in light of the selected comparator.

See Royal Thai Gov't, 436 F.3d 1330, 1336 (Fed. Cir. 2006) (discussing AK Steel, 192

F.3d at 1385); see also Hyundai II, 798 F. Supp. 3d at 1288, 1289 n.5; Hyundai I, 745

F. Supp. 3d at 1351–53.  Commerce finds that Hyundai's share of total industrial-

class electricity consumed during the 2021 POR was meaningfully larger in relation

to its share of GDP,[7] and therefore, disproportionality exists.  Second Remand Results

at 6.  Commerce reasons that the usage side of the comparison analysis must be

limited to industrial-class electricity because under the Electricity Program, "the type

of electricity being examined is industrial-class electricity" and so it must consider

only Hyundai's industrial-class electricity consumption.  Id. at 13–14.

---

[7]  Commerce finds that Hyundai's total industrial-class electricity consumption relative to the total amount of industrial-class electricity consumed in Korea was [[      ]].  See Second Remand Results at 17 (Attachment 1).  Commerce finds that Hyundai's contribution to Korea's total GDP relative to Korea's total GDP was [[      ]].  See id.  Commerce then compares the two ratios and characterizes Hyundai's electricity consumption as [[                    ]] its contribution to GDP for the POR.  See Second Remand Results at 6.

Court No. 23-00211                                                      Page 20
**PUBLIC VERSION**

By limiting the electricity usage side of the comparison to industrial-class consumption and leaving the output side at economy-wide GDP, Commerce compares Hyundai's position in one universe to its position in another. See id. at 6, 11. GDP measures economy-wide output, not output generated by only the relevant class of industrial-class electricity consumers. See id. at 6. If the "industrial-class" limit defines the relevant universe on the electricity side, the comparator on the output side must likewise be tied to that universe. The comparison must align logically. See CS Wind Vietnam Co., 832 F.3d at 1376; Vicentin, 404 F. Supp. 3d at 1342–43, aff'd, 42 F.4th at 1382. Here, the comparison is not logical and therefore the determination is not supported by substantial evidence.

## CONCLUSION

Commerce's determination that Hyundai's industrial-class electricity usage, compared to its contribution to total Korean GDP, demonstrates that Hyundai received a disproportionately large amount of the subsidy conferred by the Electricity Program, is unsupported by substantial evidence. Commerce fails to explain why GDP is an appropriate comparator to assess disproportionality in these circumstances, and its comparison of Hyundai's percentage of industrial-class electricity consumption to Hyundai's contribution to total GDP is illogical. Therefore, Commerce's de facto specificity determination is remanded for further consideration.

For the foregoing reasons Commerce's Second Remand Results are remanded for reconsideration consistent with this opinion. In light of the foregoing, it is

Court No. 23-00211                                                                                    Page 21
**PUBLIC VERSION**

    **ORDERED** that Commerce's specificity redetermination under 19 U.S.C. § 1677(5A)(D)(iii) is remanded for reconsideration consistent with this opinion; and it is further

    **ORDERED** that Commerce shall file its redetermination with the Court within 90 days of this date; and it is further

    **ORDERED** that the parties shall have 30 days to file their comments on the redetermination; and it is further

    **ORDERED** that the parties shall have 30 days to file their replies to the comments on the redetermination; and it is further

    **ORDERED** that the parties shall file the joint appendix, including the entire confidential record, within 14 days after the filing of replies to the comments on the redetermination; and it is further

    **ORDERED** that Commerce shall file the administrative record within 14 days of the date of filing its redetermination.

/s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated:     May 18, 2026
            New York, New York