**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE CLAIRE R. KELLY, JUDGE**

HYUNDAI STEEL COMPANY,

Plaintiff,

and

GOVERNMENT OF THE REPUBLIC OF KOREA,

Plaintiff-Intervenor,

v.

UNITED STATES,

Defendant,

and

NUCOR CORPORATION,

Defendant-Intervenor.

**NON-CONFIDENTIAL VERSION**
Proprietary Information removed from Pages 8-9

Ct. No. 23-00211

**PLAINTIFF HYUNDAI STEEL COMPANY'S**
**COMMENTS IN OPPOSITION TO THIRD REMAND RESULTS**

Brady W. Mills
R. Will Planert
Mary S. Hodgins
Nicholas C. Duffey

**TAFT STETTINIUS & HOLLISTER LLP**
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel to Plaintiff Hyundai Steel Company*

September 30, 2026

# TABLE OF CONTENTS

I. ARGUMENT .......... 2

A. Commerce's Disproportionality Determination Is Unsupported By Substantial Evidence And Is Otherwise Not In Accordance With Law. .......... 2

1. Commerce's Use of the Basic Metals Sector's Total Electricity Consumption Does Not Support Its Disproportionality Finding .......... 3

2. Commerce Has Not Explained Why GDP Is An Appropriate Comparator To Electricity Consumption For Purposes of Demonstrating Disproportionality. .......... 4

B. The Provision of Electricity is Not Specific To Hyundai Steel. .......... 7

II. CONCLUSION .......... 9

Certificate of Compliance .......... 10

Certificate of Service .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AK Steel Corp. v. United States*,
192 F.3d 1367 (Fed. Cir. 1999)....................6

*Bethlehem Steel Corp. v. United States*,
25 C.I.T. 307, 140 F. Supp. 2d 1354 (Ct. Int'l Trade 2001)....................6

*Hyundai Steel v. United States*,
745 F. Supp. 3d 1345 (Ct. Int'l Trade 2024)....................6

*Hyundai Steel Co. v. United States*,
No. 23-cv-00211-CRK, 2026 WL 1558544 (Ct. Int'l Trade May 18, 2026)....................2-4

## Statutes

19 U.S.C. § 1677....................2-3, 6

19 U.S.C. § 3512(d)....................6

## Other Authorities

Uruguay Round Agreements Act Statement of Administrative Action, H.R. Doc. No. 103–316, 1994 U.S.C.C.A.N. 4040, 4242 (Sep. 27, 1994)....................6

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| HYUNDAI STEEL COMPANY,<br>Plaintiff,<br>and<br>GOVERNMENT OF THE REPUBLIC OF KOREA,<br>Plaintiff-Intervenor,<br>v.<br>UNITED STATES,<br>Defendant,<br>and<br>NUCOR CORPORATION,<br>Defendant-Intervenor. | **NON-CONFIDENTIAL VERSION**<br>Proprietary Information removed from Pages 8-9<br><br>Ct. No. 23-00211 |

**PLAINTIFF HYUNDAI STEEL COMPANY'S**
**COMMENTS IN OPPOSITION TO THE THIRD REMAND RESULTS**

Pursuant to U.S. Court of International Trade Rule 56.2, and the scheduling order, Plaintiff Hyundai Steel Company ("Hyundai Steel" or "Plaintiff") hereby comments in opposition to the U.S. Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Third Court Remand. *See* Final Results of Redetermination Pursuant to Court Remand, *Hyundai Steel Company v. United States*, 23-cv-00211-CRK (Aug. 31, 2026), ECF No. 135 ("*Third Remand Results*"). The underlying administrative determination at issue in the *Remand Results* is *Certain Cut-To-Length Carbon-Quality Steel Plate from the Republic of Korea: Final Results and Recission, in Part, of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 61,509 (Dep't Commerce Sept. 7, 2023), ECF No. 24-4 ("*Final Results*"); Mem. from James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, U.S. Dep't of Commerce, to Lisa W. Wang, Assistant Secretary

for Enforcement and Compliance, U.S. Dep't Commerce, "Issues and Decision Memorandum for the Final Results of Countervailing Duty Administrative Review; 2021: Certain Cut-To-Length Carbon-Quality Steel Plate from the Republic of Korea" (Aug. 30, 2023), ECF No. 24-5 ("Final Decision Mem.").

I. <u>ARGUMENT</u>

A. Commerce's Disproportionality Determination Is Unsupported By Substantial Evidence And Is Otherwise Not In Accordance With Law.

In the *Second Remand Results*, Commerce determined that Hyundai Steel allegedly had received a disproportionately large amount of the electricity for less than adequate remuneration ("LTAR") subsidy based on a comparison of Hyundai Steel's share of total *industrial* class electricity consumption with Hyundai Steel's share of Korea's gross domestic product ("GDP"). Final Results of Redetermination, *Hyundai Steel Co. v. United States*, No. 23-cv-00211-CRK (Ct. Int'l Trade Dec. 23, 2025), ECF No. 93 ("*Second Remand Results*") (citing 19 U.S.C. § 1677(5A)(D)(iii)(III)). In *Hyundai Steel III*, the Court remanded that determination for reconsideration because Commerce did not explain how using GDP as the comparator "demonstrates disproportionate receipt of the subsidy." *Hyundai Steel Co. v. United States*, No. 23-cv-00211-CRK, 2026 WL 1558544 at *6 (Ct. Int'l Trade May 18, 2026) ("*Hyundai Steel III*"). According to the Court, "Commerce assume{d} without explanation that Hyundai's proportional share of industrial-class electricity subsidy *should* track its contribution to Korea's overall national economic output." *Id.* (emphasis added). The Court also found that Commerce's comparison of Hyundai Steel's contribution to GDP to its consumption of industrial electricity was unreasonable because the comparison did not "align logically." *Hyundai Steel III*, 2026 WL 1558544 at *8.

In response to *Hyundai Steel III,* Commerce has again used GDP as a comparator but has made some tweaks to try and address the Court's decision. Specifically, Commerce substituted Hyundai Steel's company specific contribution to GDP with the basic metals sector's contribution, and substituted Hyundai Steel's total industrial electricity consumption with the basic metal's sector's total electricity consumption. But these cosmetic changes do not explain why using GDP as a comparator is appropriate for determining disproportionality under 19 U.S.C. § 1677 (5A)(D)(iii)(III), or why the basic metals sector's contribution to GDP should track its consumption of electricity. Commerce's determination thus continues to be unsupported by substantial evidence and otherwise not in accordance with law.

1. Commerce's Use of the Basic Metals Sector's Total Electricity Consumption Does Not Support Its Disproportionality Finding.

To address the Court's finding that the comparison of Hyundai Steel's contribution to GDP to its industrial electricity consumption was illogical, Commerce has now relied upon the basic metals sector's contribution to GDP and compared it to that sector's consumption of *total* electricity. *See Third Remand Results* at 7-8. Although this revision to the comparators purports to be a more logical comparison, it has created another "whipsaw" problem for Commerce. Specifically, the electricity for LTAR program involves allegedly subsidized *industrial* class electricity. As Commerce stated in defending its use of Hyundai Steel's consumption of industrial class electricity in the *Second Remand Results*: "{u}nder the Electricity Program, the type of electricity being examined is industrial class electricity, and thus, in the comparison we must consider only Hyundai Steel's consumption of industrial class electricity and not any other type of electricity the company may have used during the POR." *Second Remand Results* at 13. In its effort to remedy the asymmetrical nature of its prior

comparison, Commerce has now relied upon total electricity consumption by the basic metals sector.

However, by including the consumption of *all* classes of electricity as its comparator Commerce is not actually assessing whether the basic metals sector or Hyundai Steel received a "disproportionately large amount" of the alleged *industrial class* electricity subsidy. Instead, Commerce is assessing disproportionality with respect to all electricity consumption. The resulting analysis thus does not support Commerce's conclusion that the basic metals sector is receiving a disproportionate amount of the alleged subsidy that is at issue – subsidized industrial electricity. This renders the *Third Remand Results* unsupported by substantial evidence.

2. Commerce Has Not Explained Why GDP Is An Appropriate Comparator To Electricity Consumption For Purposes of Demonstrating Disproportionality.

In remanding Commerce's initial GDP analysis from the Second Remand Results, this Court found that "Commerce fails to explain why GDP is an appropriate comparator to assess disproportionality in these circumstances . . . ." *Hyundai Steel III*, 2026 WL 1558544, at *8. The Court also found that "Commerce assume{d} without explanation that Hyundai's proportional share of industrial-class electricity subsidy should track its contribution to Korea's overall national economic output." *Id.* at *6.

In the *Third Remand Results*, Commerce has still not explained *why* GDP is an appropriate comparator to total electricity consumption for purposes of analyzing disproportionality and continues to assume GDP should track electricity consumption. Commerce claims that, in circumstances where "a generally available subsidy can benefit an industry or subsector more than another," that subsidy "does not have a neutral, uniform effect on the economy but rather affects an industry or subsector more favorably than would be expected" and the industry or subsector therefore "receives more than its fair share." *Third*

*Remand Results* at 6; *see Third Remand Results* at 7 ("if the GOK's electricity subsidy affected all industries uniformly, then each industry would absorb the subsidy proportionately to its contributing share of GDP, and thus, the resulting ratio would roughly equal one for any industry/sub-sector"). This explanation makes plain that Commerce has perpetuated the same error by continuing to *assume*, contrary to the Court's holding in *Hyundai Steel III*, that GDP and electricity consumption should be uniform or track each other such that any electricity consumption that exceeds a company or industry's contribution to GDP demonstrates that the company or industry received more than its fair share, *i.e.*, is disproportionate.[1]

It is plain that there is no correlation between electricity consumption and contribution to GDP. For example, the finance and real estate sectors do not consume significant amounts of electricity to generate sales revenue. They are not electricity intensive sectors but instead generate revenue from the provision of financial services or the marketing and sale of real estate. Similarly, households, residences, and "street lamps" consume electricity but would not contribute a commensurate amount of production to Korea's GDP. *See* Mem. from Kristen Johnson to The File, "Placing Factual Information on the Record" at Attachment (Jul. 9, 2026) (ACCESS Barcode: 4934536) ("Data Mem.") (listing the amount of electricity consumed by the "household" and "street lamp" "segments" on tab "i_RawData(1)" and the "residential" "industry" on tab "i_RawData(2)" in millions of kilowatt hours). Thus, the fact that the basic

[1] In its response to interested party comments on the draft remand results, Commerce claims that its methodology "does not assume uniform electricity intensity across industries." *Third Remand Results* at 13. This claim is directly contrary to the actual remand results where Commerce states that "if the GOK's electricity subsidy affected all industries uniformly, then each industry would absorb the subsidy proportionately to its contributing share of GDP, and thus, the resulting ratio would roughly equal one for any industry/sub-sector." *Id.* at 7.

metals subsector may consume more electricity than its contribution to GDP does not demonstrate that is received a disproportionate amount of the electricity for LTAR subsidy.

Furthermore, Commerce's explanation that a generally available subsidy is disproportionate if the benefits are not distributed uniformly also flies in the face of the Court's previous holding that "receipt of a greater monetary benefit from the program than others is not determinative of disproportionality." *Hyundai Steel v. United States*, 745 F. Supp. 3d 1345, 1351 (Ct. Int'l Trade 2024) ("*Hyundai Steel I*") (citing 19 U.S.C. § 1677(5A)(D)(iii)(III)). Given that in "virtually every program that confers benefits based on usage levels{,} one or more groups will receive a greater share of the benefits than another group . . . impos{ing} countervailing duties on an industry where disparity alone is demonstrated . . . is anathema to" the purpose of the specificity requirement. *Bethlehem Steel Corp. v. United States*, 25 C.I.T. 307, 322, 140 F. Supp. 2d 1354, 1369 (Ct. Int'l Trade 2001); *see AK Steel Corp. v. United States*, 192 F.3d 1367, 1385 (Fed. Cir. 1999)(finding untenable that "a benefit conferred on a large company might be disproportionate merely because of the size of {that} company.").

Additionally, the logic that Commerce applies in the *Third Remand Results* could also lead to absurd results. The court explained in *Carlisle Tire & Rubber Co. v. United States* that regarding all interventions by a government in their economies as countervailable subsidies would produce absurd results and posited that treating public highways and tax credits for expenditures on capital investment as countervailable would be examples of such absurd results. 5 C.I.T. 229, 233-34, 564 F. Supp. 834, 838 (Ct. Int'l Trade 1983); *see also* Uruguay Round Agreements Act Statement of Administrative Action, H.R. Doc. No. 103–316, 1994 U.S.C.C.A.N. 4040, 4242 (Sep. 27, 1994) ("SAA"); 19 U.S.C. § 3512(d). Neither public highways nor tax credits for expenditures on capital investments would "uniformly" affect all

industries throughout a given economy even if they are available to all sectors. *Compare Third Remand Results* at 8, *with Carlisle*, 5 C.I.T. at 233-234, 564 F. Supp. at 838. For example, the food or transportation industries would not use public highways in a "uniform" way compared to the financial services industry. Commerce's determination that the provision of electricity for LTAR subsidy is disproportionately specific for purposes of section 771(5A)(D)(iii)(III) because it "does not have a neutral, uniform effect on the economy," or does not have a one-to-one relationship with GDP, leads to absurd results including situations where public highways or tax credits for capital expenditures would be countervailable because some industries use them more than others.

Finally, the GDP figure that Commerce uses for its comparison is the sum total nation-wide "gross value added at basic prices," which according to the Bank of Korea is 2,039,703 billion Korean won during the 2021 period of review. Data Mem. at Attachment tab "i_RawData(3)" (emphasis added). Any given industry's relative share of total GDP is affected by market price fluctuations in its industry and all other industries in the economy. If production volume remains the same but prices double in a given period then a subsector's share of GDP would also double. Such price changes could happen for a multitude of reasons unrelated to electricity consumption. The fact that relative GDP contribution is affected by market factors unrelated to electricity consumption is another reason that GDP is not an appropriate comparator for analyzing disproportionality in this particular case.

B. The Provision of Electricity is Not Specific To Hyundai Steel.

Even assuming that Commerce's comparison method is reasonable, it does not support the conclusion that Hyundai Steel received a disproportionately large amount of the alleged electricity for LTAR subsidy. As discussed, in the *Third Remand Results* Commerce is comparing the basic metals sector's share of total electricity consumption in Korea with the basic

metals subsector's share of GDP. Although the record does not contain Hyundai Steel's consumption of total electricity to precisely replicate Commerce's new comparative analysis, if a similar comparison were made, but with Hyundai Steel's industrial electricity consumption and sales instead of the basic metals subsector, then the ratio of electricity consumption to GDP contribution is uniform.[2] In other words, applying a similar comparison to the one proposed by Commerce reveals that Hyundai Steel did not consume a disproportionately large amount of the alleged electricity for LTAR subsidy.

The record demonstrates that Hyundai Steel's consumption of industrial electricity and its contribution to GDP are almost the same. Specifically, Hyundai Steel consumed **[ ]** kWh of industrial electricity in Korea. That represents **[ ]** percent of the 533,431,000,000 kWh of electricity consumed in Korea (**[ ]** kWh divided by 533,431,000,000 kWh equals **[ ]** percent). Hyundai Steel's sales are **[ ]** Korean Won, which is **[ ]** percent of Korea's GDP (**[ ]** Korean Won divided by 2,039,703 billion Korean Won equals **[ ]** percent of Korea's GDP). *Compare*, *Third Remand Results* at Attachment (showing that the Korea consumed 533,431 million kWh of electricity and produced 2,039,703 billion Korean Won in sales during the period of review), *with* Letter from Morris, Manning & Martin LLP to Sec'y Commerce, "Hyundai Steel's Affiliated Companies Response" (May 31, 2022) (ACCESS Barcode: 4247207) (showing Hyundai Steel's sales equal (**[ ]** Korean Won);

[2] Hyundai Steel acknowledges that the record does not contain information showing its total electricity consumption and thus its comparison is not apples-to-apples. However, it is undisputed that Hyundai Steel is a steel manufacturing company and thus in the absence of data on Hyundai Steel's total electricity consumption in the POR it is reasonable to assume that the overwhelming majority of electricity it consumes is industrial electricity, *i.e.*, its industrial electricity consumption is a close proxy of its total electricity consumption.

*see also* Letter from Morris, Manning & Martin LLP to Sec'y Commerce, "Hyundai Steel's Initial Questionnaire Response" at Exhibit E-1 (June 27, 2022) (ACCESS Barcode: 4256697) (showing that Hyundai Steel consumed **[ ]** kWh of industrial electricity during the period of review); *see also Second Remand Results* at Attachment (citing Hyundai Steel's Initial Questionnaire Response at Exhibit E-1). A comparison of Hyundai Steel's consumption of electricity in Korea (**[ ]** percent) with its contribution to Korean GDP (**[ ]** percent) approximates the one-to-one correlation that Commerce claims should be expected for purposes of disproportionality.

Accordingly, even assuming that electricity consumption by the basic metals subsector is disproportionate (a conclusion which Hyundai Steel contends is not supported by the record or consistent with law), the electricity for LTAR program in Korea is nonetheless *not* specific to Hyundai Steel.

## II. CONCLUSION

Based on the foregoing, Plaintiff Hyundai Steel respectfully requests that this Court reject the *Third Remand Results* and again remand Commerce's determination for Commerce to reach the only decision supported by the law and the facts on the record, which is that the alleged provision of electricity for LTAR in Korea is not *de facto* specific.

Respectfully submitted,

/s/ Brady W. Mills
Brady W. Mills
R. Will Planert
Mary S. Hodgins
Nicholas C. Duffey

TAFT STETTINIUS & HOLLISTER LLP
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel to Plaintiff Hyundai Steel Company*

Certificate of Compliance

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 2,467 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

/s/ Brady W. Mills
Brady W. Mills

Dated: September 30, 2026

Certificate of Service

*Hyundai Steel Company v. United States*
U.S. Court of International Trade
Court No. 23-00211

Pursuant to Rule 5 of the Rules of the U.S. Court of International Trade and Administrative Order 25-01, I, Brady W. Mills, hereby certify that I served the confidential version of the foregoing submission on the following individuals. If the recipient agreed to accept service of the confidential version by electronic service, such service is being effected through secure electronic means. If no agreement for electronic service has been reached, the confidential version is being served by hardcopy mail. The public version is being served through the court's electronic filing system.

On Behalf of Nucor Corporation
Alan Hayden Price
Wiley Rein, LLP
2050 M Street, NW.
Washington, DC 20036

On Behalf of Government of the Republic of Korea
Yujin Kim McNamara
Akin, Gump, Strauss, Hauer & Feld, LLP
2001 K Street, NW.
Washington, DC 20006

On Behalf of the United States
Tara Kathleen Hogan
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

/s/ Brady W. Mills