NON-CONFIDENTIAL VERSION

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **HYUNDAI STEEL COMPANY,**<br>**Plaintiff,**<br>**and**<br>**GOVERNMENT OF THE REPUBLIC OF KOREA,**<br>**Plaintiff-Intervenor,**<br>**v.**<br>**UNITED STATES,**<br>**Defendant,**<br>**and**<br>**NUCOR CORPORATION,**<br>**Defendant-Intervenor.** | **Before: Hon. Claire R. Kelly, Judge**<br><br>**Court No. 23-00211**<br><br>**NON-CONFIDENTIAL VERSION**<br><br>**Business Proprietary Information Removed from Pages: 3, 5, 6** |

**DEFENDANT-INTERVENOR'S COMMENTS IN SUPPORT OF THE FINAL RESULTS OF REDETERMINATION PURSUANT TO THIRD REMAND**

**Alan H. Price, Esq.**
**Christopher B. Weld, Esq.**
**Derick G. Holt, Esq.**
**Paul A. Devamithran, Esq.**

**WILEY REIN LLP**
**2050 M Street, NW**
**Washington, DC 20036**
**(202) 719-7000**

***Counsel for Nucor Corporation***

**Dated: September 30, 2026**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................ 1

II. Argument ........................................ 1

A. Commerce Properly Continued to Find that the GOK's Provision of Electricity for LTAR was Specific ........................................ 1

B. Commerce Could Also Reach the Same De Facto Specificity Conclusion by Finding That a Group of Industries or Enterprises Is a Predominant User of the Subsidy ........................................ 4

III. CONCLUSION ........................................ 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Mosaic Co. v. United States*,
589 F. Supp. 3d 1298 (Ct. Int'l Trade 2022) ....................4, 5

*POSCO v. United States*
No. 24-00006, slip op. 25-100 (Ct. Int'l Trade Aug. 8, 2025) ....................5

**Statutes**

19 U.S.C. § 1677(5A)(D)(iii)....................4

**Regulations**

19 C.F.R. § 351.502(a)....................4

## I. INTRODUCTION

On behalf of Defendant-Intervenor Nucor Corporation ("Nucor"), we hereby submit the following comments in support of the August 31, 2026 remand determination issued by the U.S. Department of Commerce ("Commerce"). Final Results of Redetermination Pursuant to Ct. Remand (Aug. 31, 2026), ECF No. 135, P.R.R 17 ("Third Remand Redetermination"). Commerce continues to properly find that the Government of Korea's provision of electricity for less than adequate renumeration ("LTAR") constitutes a countervailable subsidy. Specifically, Commerce correctly determines that the Government of Korea's provision of electricity for LTAR constitutes a *de facto* specific subsidy and Commerce reconsidered the basis for reaching this conclusion. In this regard, the Remand Determination is consistent with the Court's May 18, 2026 opinion. *Hyundai Steel Co. v. United States*, No. 23-00211, slip op. 26-52 (Ct. Int'l Trade May 18, 2026), ECF No. 126 ("*Hyundai Steel III*"). Therefore, the Court should sustain Commerce's determination as it is supported by substantial evidence and in accordance with law.

## II. ARGUMENT

### A. Commerce Properly Continued to Find that the GOK's Provision of Electricity for LTAR was Specific

On remand, Commerce reasonably compared the share of subsidized electricity consumed in 2021 by the subsector of the Korean economy that includes Hyundai Steel, *i.e.*, basic metals, with that subsector's share of Korea's GDP the same year. Third Remand Redetermination at 7-9. In 2021, Korean entities received 533,431 million kWh of subsidized electricity. *Id.* at 7. Of that, the subsector of the economy to which Hyundai Steel belongs received 35,044 million kWh or 6.6 percent. *Id.* During the same year, the real GDP of Korea was 2,039,703 billion Korean Won. Of that the basic metals subsector accounted for 42,579 billion won or just 2.1 percent. *Id.* Commerce reasonably found that the former share of subsidized electricity use and corresponding stake of the

benefit, *i.e.*, 6.6 percent, was disproportionate (more than triple) the latter share of Korea's GDP *i.e.*, 2.1 percent. *Id.* at 7-9.

This was a reasonable method of determining disproportionality because it illustrates how the basic metals subsector, which includes Hyundai Steel, is using more electricity, and thereby receiving more of a benefit, than its corresponding share of the Korean economy. In the context of the provision of electricity for LTAR, this demonstrates that the benefit of the subsidy is not evenly distributed across the economy in a way that you would expect if the purpose of the subsidy was to benefit all enterprises equally. Instead, enterprises in certain subsectors –in this case basic metals – are receiving more than triple the share of the benefit than their contribution to the economy. This leaves a disproportionately smaller share of the remaining benefit for other Korean enterprises in other subsectors. This comparison is "align{ed} logically" because it compares the subsector's position in one universe concerning output, *i.e.*, contribution to GDP, with its position in that same universe concerning the amount of the subsidy, *i.e.*, electricity consumption. *Hyundai Steel III* at 20.

Commerce's use of Korean GDP as a comparator is appropriate because it illustrates who the electricity for LTAR subsidy was designed to benefit. Demonstrably, some subsectors/industries receive disproportionately more of the benefit from subsidized electricity and yet contribute disproportionately less to the Korean GDP, as Commerce clearly illustrated. The inverse is also necessarily true. The LTAR program was clearly designed to benefit heavy users of the subsidized input, such as basic metals manufacturers like steelmakers. Commerce's use of GDP as a comparator is a reasonable method for making that comparison and illustrating that disproportionality.

As an alternative external comparator, Commerce could compare Hyundai Steel's industrial electricity use to the industrial electricity use of the other 400,000 manufacturing establishments in Korea. The record demonstrates that Hyundai Steel alone received a disproportionate amount of the benefit from subsidized Korean industrial electricity during the period of review ("POR"). In its initial questionnaire response in the underlying review, the GOK provided a list of the top 100 industrial consumers of electricity by facility. Letter from Yoon & Yang LLP to Sec'y Commerce, re: *Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from Korea: Response to the Initial Questionnaire* (June 27, 2022) at Exhibit E-11, C.R. 29-64, P.R. 60-85 ("GOK Questionnaire Response"). While the GOK did not identify any companies on the list [ ] which they operate, the list shows that [ ] accounted for [ ] of *total industrial electricity consumption* during the POR. *Id.* According to Commerce's economic diversification memo, there were more than *400,000* manufacturing establishments operating in Korea during the POR. Memorandum Stephanie Berger, Int'l Trade Compliance Analyst, AD/CVD Operations, Off. III, En'f & Compliance, to The File, re: *Administrative Review of the Countervailing Duty Order of Certain Cut-to-Length Carbon-Quality Steel Plate from Korea: Placement of Korea Economic Diversification Memorandum on the Record* (May 3, 2022) at 3, P.R. 24. That [ ] amounted to [ ] of total industrial consumption in an economy of more than 400,000 manufacturing establishments is *prima facie* evidence of disproportionate benefit via use of an external comparator, *i.e.*, the number of manufacturing establishments in Korea.

**B. <u>Commerce Could Also Reach the Same De Facto Specificity Conclusion by Finding That a Group of Industries or Enterprises Is a Predominant User of the Subsidy</u>**

As a final alternative, Commerce could also reach the same conclusion – *i.e.*, that the provision of electricity for LTAR is *de facto* specific – by assessing whether a group of industries or enterprises is a predominant user of the subsidy. As noted above, the statute provides that a subsidy may be de facto specific if any of the following is satisfied: (i) the actual enterprise or industry recipients of the subsidy are limited in number, (ii) an enterprise or industry is a predominant user of the subsidy, (iii) an enterprise or industry receives a disproportionate amount of the subsidy, or (iv) the authority granting the subsidy exercises its discretion in a manner that benefits certain enterprises or industries over others. 19 U.S.C. § 1677(5A)(D)(iii). Commerce "examine{s} the{se} factors . . . sequentially in order of their appearance," and "{i}f a single factor warrants a finding of specificity, {it} will not undertake further analysis." 19 C.F.R. § 351.502(a). In its First Remand Redetermination, Commerce determined that a group of industries including the steel industry received a disproportionately large amount of the subsidy. Final Results of Redetermination Pursuant to Ct. Remand (Apr. 11, 2025), ECF Nos. 62-63, C.R.R. 3, P.R.R. 8 ("First Remand Redetermination"). However, Commerce has not yet expressly considered whether this group of industries is also a predominant user of the subsidy.

When previously remanding Commerce's disproportionate receipt determination, this Court emphasized that the predominant use and disproportionate receipt provisions are distinct and that one may exist even if the other does not. *See, e.g.*, *Hyundai Steel Co. v. United States*, No. 23-00211, slip op. 25-102 (Ct. Int'l Trade Aug. 12, 2025), ECF No. 79 ("*Hyundai Steel II*") at 12 n.9 ("The statute provides separately for the inquiry of whether a recipient or recipients received more than other recipients. . . . Congress's inclusion of these two distinct criteria indicates that

they are separate inquiries and should not be conflated."); *POSCO v. United States*, No. 24-00006, slip op. 25-100 (Ct. Int'l Trade Aug. 8, 2025) at 10 n.5 ("Slip Op. 25-100") (distinguishing *Mosaic Co. v. United States*, 589 F. Supp. 3d 1298 (Ct. Int'l Trade 2022) because that case addressed predominant use and not disproportionate receipt). This Court previously explained that "{d}isproportionate means 'too large or too small in relation to something,'" while "{p}redominant means 'more important, powerful, successful, or noticeable than other people or things.'" *Hyundai Steel II* at 8-9. The Court's holding that Commerce must establish a "baseline of comparison" other than the industry's consumption of an input in relation to others is thus limited to the disproportionate receipt provision and does not apply to the predominant use provision. Slip Op. 25-100 at 7-9. In *Mosaic*, the court sustained a finding of predominant use based *solely* on the industry's consumption of an energy input in relation to other industries. *Mosaic*, 589 F. Supp. 3d at 1309-10. Here, the record supports a finding of predominant use because a small group of industries consumes a far greater share of the subsidized input than other industries. Specifically, the [ ] consumed [ ] of total industrial electricity during the POR. *See* GOK Questionnaire Response at 35. As Commerce noted in its first remand results, "{t}he remaining seven industries, of the ten largest electricity consuming industries, accounted for merely [ ] percent of the total industrial class electricity consumed during the POR. These top three industries alone thus received nearly [ ] percent more of the subsidy benefits under the program than the seven other industries combined when compared to total industrial class electricity consumption." First Remand Redetermination at 5. Similar to *Mosaic*, a small group of industries "purchased a far greater amount than any other {group of industries}," and the record therefore supports a finding of predominant use. *Mosaic*, 589 F. Supp. 3d at 1310.

## III. CONCLUSION

For the reasons above, Hyundai Steel as part of the basic metals subsector is receiving a larger share of the benefit of electricity for LTAR than other enterprises in other subsectors when comparing relative shares of the subsectors' electricity and their corresponding shares of Korean GDP. Commerce could reach the same conclusion when comparing Hyundai Steel industrial electricity use with the external comparator of the 400,000 other manufacturing establishments in Korea. Alternatively, Commerce could also find that a small group of industries is using enjoying a predominant share – *i.e.*, [ ] – of all industrial electricity in Korea. Thus, there are numerous ways for Commerce to reach the inevitable conclusion that the provision of electricity for LTAR subsidy program is de facto specific.

For all of these reasons, and others described in Commerce's remand determination, the Court should sustain Commerce's third remand results determining that the GOK's provision of electricity for LTAR to Hyundai Steel is *de facto* specific.

* * *

Respectfully submitted,

*/s/ Derick G. Holt*
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Derick G. Holt, Esq.
Paul A. Devamithran, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Nucor Corporation*

Dated: September 30, 2026

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor Nucor Corporation's Comments in Support of the Final Results of Redetermination Pursuant to Second Remand, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 2015 words.

*/s/ Derick G. Holt*
(Signature of Attorney)

Derick G. Holt
(Name of Attorney)

Nucor Corporation
(Representative Of)

September 30, 2026
(Date)