**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE CLAIRE R. KELLY**

| | | |
|---|---|---|
| HYUNDAI STEEL COMPANY,<br><br>Plaintiff,<br><br>and<br><br>GOVERNMENT OF THE REPUBLIC OF KOREA,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>NUCOR CORPORATION,<br><br>Defendant-Intervenor. | ) | **Court No. 23-00211**<br><br>**NONCONFIDENTIAL**<br><br>Business Proprietary Information Removed from Pages 3-5. |

**PLAINTIFF-INTERVENOR GOVERNMENT OF THE REPUBLIC OF KOREA'S REPLY TO COMMENTS ON THE FINAL THIRD RESULTS OF REDETERMINATION**


Yujin K. McNamara
Devin S. Sikes
Daniel M. Witkowski
Sung Un K. Kim
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street NW
Washington, DC 20006
Phone: (202) 887-4347
E-mail: ymcnamara@akingump.com
*Counsel to the Government of the Republic of Korea*


Dated: October 30, 2026

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES** ..... ii

**INTRODUCTION** ..... 1

**ARGUMENT** ..... 1

**I. PETITIONER'S COMMENTS DO NOTHING TO CURE COMMERCE'S LACK OF EXPLANATION FOR WHY GDP IS AN APPROPRIATE COMPARATOR** ..... 1

**II. PETITIONER'S PROPOSED ALTERNATIVES ARE FLAWED AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE** ..... 3

- **A. Hyundai Steel's Electricity Consumption Cannot Be Considered Large When Compared with Other Manufacturing Establishments** ..... 3

- **B. There Is No Rational Basis for Petitioner's Proposed Grouping** ..... 5

**CONCLUSION** ..... 7

# TABLE OF AUTHORITIES

## CASES

*Carpenter Tech. Corp. v. United States*, 662 F. Supp. 2d 1337 (Ct. Int'l Trade 2009) .................. 4

*Hyundai Steel Co. v. United States*, 745 F. Supp. 3d 1345 (Ct. Int'l Trade 2024) .......................... 5

*Hyundai Steel Co. v. United States*, 798 F. Supp. 3d 1283 (Ct. Int'l Trade 2025) .......................... 5

*Matra Ams., LLC v. United States*, 681 F. Supp. 3d 1339 (Ct. Int'l Trade 2024) .................. 3, 4, 6

*POSCO v. United States*, 794 F. Supp. 3d 1402 (Ct. Int'l Trade 2025) ......................................... 5

*Schaeffler Italia S.r.l. v. United States*, 781 F. Supp. 2d 1358 (Ct. Int'l Trade 2011) ..................... 4

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) ........................................................................ 3

*Zhejiang Native Produce & Animal By-Product Imp. & Exp. Corp. v. United States*,
637 F. Supp. 2d 1260 (Ct. Int'l Trade 2009) ......................................................................... 4

## STATUTES

19 U.S.C. § 1677(5A)(D)(iii) ........................................................................................ 4

## INTRODUCTION

Plaintiff-Intervenor the Government of the Republic of Korea ("GOK") replies to the comments of Defendant-Intervenor Nucor Corporation ("Petitioner") supporting the Final Third Results of Redetermination Pursuant to Court Remand, ECF No. 135 ("Final Third Remand Results"), by the U.S. Department of Commerce ("Commerce"). Def.-Intervenor's Comments in Support of the Final Results of Redetermination Pursuant to Third Remand, ECF No. 140 ("Pet'r Comments").

Contrary to Petitioner's assertions, Commerce failed to comply with the Court's instructions by not explaining why GDP is an appropriate comparative benchmark for assessing whether the GOK's alleged provision of electricity for less than adequate remuneration ("LTAR") is *de facto* specific. Further, Petitioner's alternative arguments—which were not adopted by Commerce and therefore do not present a valid basis for sustaining Commerce's Final Third Remand Results—have already been addressed and rejected by the courts.

## ARGUMENT

### I. PETITIONER'S COMMENTS DO NOTHING TO CURE COMMERCE'S LACK OF EXPLANATION FOR WHY GDP IS AN APPROPRIATE COMPARATOR

As explained in the GOK Comments on the Final Third Remand Results, Commerce once again failed to explain, despite the Court's clear instructions, why GDP constitutes an appropriate comparator for its disproportionality analysis. *See* Pl.-Intervenor's Comments on the Third Final Results of Redetermination, ECF No. 139 ("GOK Comments"). In its Final Third Remand Results, Commerce merely replaced Hyundai Steel's industrial electricity consumption and contribution to Korea's GDP with the basic metals sub-sectors' total electricity consumption and GDP contribution. Final Third Remand Results at 7-8. Commerce then asserted, without further analysis, that GDP is an appropriate comparator because "measuring an

industry/subsector's share of electricity consumption relative to its GDP contribution {…} allows {Commerce} to measure whether disproportional usage exists." *Id.* at 7. Yet, the underlying premise of this assertion—that an industry's share of a subsidy should correspond to its contribution to GDP—without further explanation has already been rejected by the Court. Court Op. and Order, ECF No. 126 ("Court Op.") at 17-18.

The GOK has previously demonstrated that participation in, or use of, a broadly available government program is not inherently correlated with an industry's contribution to GDP. *See* GOK Comments at 7-8; *see also* Pl.-Intervenor's Comments on the Second Final Results of Redetermination, ECF No. 101, at 12-13. Commerce fails to address this fundamental flaw in its analysis. Moreover, the basic metals sub-sector's 6.6 percent share of total electricity consumption is not, on its face, unusually high such that it would support a finding that the sub-sector consumed electricity disproportionately and therefore received a subsidy that was *de facto* specific.

In its comments, Petitioner largely reiterates Commerce's reasoning. *See* Pet'r Comments at 1-2. Like Commerce, Petitioner asserts, without meaningful justification, that Commerce's comparison of the basic metals sub-sector's electricity consumption and that sub-sector's share of GDP is "reasonable" because it purportedly "illustrates who the electricity for LTAR subsidy was designed to benefit." *Id.* Petitioner further relies on the same electricity-consumption and GDP data cited by Commerce and contends that the basic metals sub-sector's 6.6 percent share of total electricity consumption demonstrates disproportionality because "the benefit of the subsidy is not evenly distributed across the economy." *Id.*

Petitioner's comments do nothing more than restate Commerce's position and therefore fail to remedy the fundamental defect in Commerce's analysis. Neither Commerce nor Petitioner

has explained why an industry's share of national GDP provides a meaningful benchmark against which to assess whether that industry's use of a broadly available electricity program is disproportionate. Without such an explanation, Commerce's finding of *de facto* specificity cannot be sustained.

## II. PETITIONER'S PROPOSED ALTERNATIVES ARE FLAWED AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE

In the Final Third Remand Results, Commerce determined that the provision of electricity for LTAR was specific to the basic metals sub-sector by comparing the sub-sector's total electricity consumption to its share of total GDP. Commerce did not base its revised *de facto* specificity determination on any finding that Hyundai Steel's electricity consumption, or the electricity consumption of a group of industries, constituted disproportionate or predominant usage. The "court 'must judge the propriety of {agency} action solely by the grounds invoked by the agency.'" *Matra Ams., LLC v. United States*, 681 F. Supp. 3d 1339, 1359 (Ct. Int'l Trade 2024) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Because Commerce did not adopt Petitioner's alternative rationales, they cannot provide a basis for sustaining the Final Third Remand Results. In any event, Petitioner's alternative arguments lack merit.

### A. Hyundai Steel's Electricity Consumption Cannot Be Considered Large When Compared with Other Manufacturing Establishments

As it has repeatedly done throughout this litigation, Petitioner proposes an alternative benchmark based on the number of manufacturing establishments in Korea, arguing that Hyundai Steel's consumption of **[ ]** percent of total industrial electricity during the POR demonstrates disproportionality because it exceeds the average consumption of the approximately 400,000 manufacturing establishments in Korea. Pet'r Comments at 3. This argument remains flawed and unsupported by substantial evidence.

Commerce itself rejected this proposed methodology because it relies on a comparison derived from electricity-consumption data for the top 100 industrial facilities without any meaningful external benchmark—an approach the Court has already rejected. Final Third Remand Results at 23-24. In addition, the statute requires that an enterprise or industry receive "a disproportionately ***large*** amount of the subsidy" before Commerce may find *de facto* specificity. 19 U.S.C. § 1677(5A)(D)(iii)(III) (emphasis added). Court precedent demonstrates that Hyundai Steel's share of industrial class electricity consumption cannot reasonably be considered as "large" within the ordinary meaning of that term. *Cf. Schaeffler Italia S.r.l. v. United States*, 781 F. Supp. 2d 1358, 1362-63 (Ct. Int'l Trade 2011) (rejecting Commerce's conclusion that two exporters and producers is a "large number" for purposes of limiting the number of mandatory respondents); *Zhejiang Native Produce & Animal By-Product Imp. & Exp. Corp. v. United States*, 637 F. Supp. 2d 1260, 1128-29 (Ct. Int'l Trade 2009) (same reasoning that four exporters and producers is not a "large number of respondents"); *Carpenter Tech. Corp. v. United States*, 662 F. Supp. 2d 1337, 1343-44 (Ct. Int'l Trade 2009) (same reasoning that eight respondents is not a "large number").

Ultimately, the specificity inquiry asks whether a subsidy is "specific" to an enterprise or industry. 19 U.S.C. § 1677(5A)(D)(iii). Any conclusion that a subsidy is "specific" to Hyundai Steel when more than **[ ]** percent of the industrial class electricity at issue was provided to other enterprises is neither reasonable nor supported by substantial evidence.

Beyond running afoul of the plain meaning of the word "large," Petitioner's argument fails for at least two additional reasons. First, Commerce did not rely on this rationale, and the Court therefore may not sustain Commerce's determination on that basis. *E.g., Matra*, 681 F. Supp. 3d at 1359. Second, Petitioner once again conflates disparity with disproportionately. Its

argument appears to assume that all 400,000 manufacturing establishments, regardless of their size or nature, should be expected to consume roughly the same amount of electricity, such that any consumption above 1/400,000th of the industrial class electricity is inherently disproportionate. Yet, Petitioner cites no record evidence supporting this plainly unreasonable assumption. At most, its argument establishes that Hyundai Steel consumes more electricity than many other manufacturing establishments. But this Court has repeatedly rejected the notion that simply "receiving more of the subsidy equates with disproportionality." *Hyundai Steel Co. v. United States*, 798 F. Supp. 3d 1283, 1289 (Ct. Int'l Trade 2025). Because Petitioner's argument rests on precisely that flawed premise, it should be rejected.

**B. There Is No Rational Basis for Petitioner's Proposed Grouping**

Petitioner also argues that Commerce could have found *de facto* specificity by determining that a group of industries collectively constituted a predominant user of industrial electricity. Pet'r Comments. at 4-5. This argument has already been considered and rejected by both Commerce and the Court.

As Commerce explained in the Final Third Remand Results, the Court previously held that Commerce's rationale for grouping the three largest electricity-consuming industries was deficient because the grouping was based solely on the fact that those industries received more of the subsidy than other industries. *Hyundai Steel Co.*, 798 F. Supp. 3d at 1291. The Court made clear that "Commerce cannot create a group to limit the subsidy for purposes of satisfying the specificity requirement without providing a rational basis for the grouping." *Hyundai Steel Co. v. United States*, 745 F. Supp. 3d 1345, 1353 (Ct. Int'l Trade 2024); *see also POSCO v. United States*, 794 F. Supp. 3d 1402, 1409 (Ct. Int'l Trade 2025).

Petitioner's proposed grouping of the **[ ]** suffers from the same defect. Petitioner identifies no rational basis for grouping these industries

other than the fact that they consume relatively large amounts of electricity. The Court has already found that rationale inadequate. For that reason, Commerce declined to adopt Petitioner's proposed approach. Final Third Remand Results at 25.

Because the record contains no reasonable basis for treating the three largest electricity-consuming industries as a coherent group for purposes of a *de facto* specificity analysis, Petitioner's alternative arguments premised on the aggregate electricity consumption of that group are unsupported by substantial evidence, contrary to the statute, and cannot sustain Commerce's determination. Moreover, because Commerce did not base its specificity determination on the electricity consumption of Petitioner's proposed group of industries—and instead specifically rejected Petitioner's proposed analysis—Petitioner's argument cannot be relied upon to sustain Commerce's determination. *E.g., Matra*, 681 F. Supp. 3d at 1359.

## CONCLUSION

For the reasons discussed above, the GOK respectfully requests that the Court reject the arguments raised in Petitioner's Comments on Commerce's Final Third Remand Results and remand again for Commerce to reach the only decision supported by the law and the record, which is that the alleged provision of electricity for LTAR in Korea is not *de facto* specific.

Respectfully submitted,

/s/ Yujin K. McNamara

Yujin K. McNamara
Devin S. Sikes
Daniel M. Witkowski
Sung Un K. Kim
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street NW
Washington, DC 20006
Phone: (202) 887-4347
E-mail: ymcnamara@akingump.com
*Counsel to the Government of the Republic of Korea*

Dated: October 30, 2026

**CERTIFICATE OF COMPLIANCE**

Undersigned counsel hereby certifies that the forgoing brief complies with paragraph 2(B)(1) of the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 1,620 words including text, headings, footnotes, and quotations and excluding the table of contents, table of authorities, and counsel's signature block, according to the word count function of the word-processing software used to prepare this submission.

Respectfully submitted,

/s/ Yujin K. McNamara
Yujin K. McNamara
Devin S. Sikes
Daniel M. Witkowski
Sung Un K. Kim
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street NW
Washington, DC 20006
Phone: (202) 887-4347
E-mail: ymcnamara@akingump.com
*Counsel to the Government of the Republic of Korea*

Dated: October 30, 2026