**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE**

HYUNDAI STEEL COMPANY,

Plaintiff,

and

GOVERNMENT OF THE REPUBLIC OF KOREA,

Plaintiff-Intervenor,

v.

UNITED STATES,

Defendant,

and

NUCOR CORPORATION,

Defendant-Intervenor.

**NON-CONFIDENTIAL VERSION**

Proprietary Information Removed from Pages 3-4

Consol. Ct. No. 23-cv-00211-CRK

**PLAINTIFF'S REPLY TO COMMENTS ON THID REMAND RESULTS**

Brady W. Mills
R. Will Planert
Mary S. Hodgins
Nicholas C. Duffey

**TAFT STETTINIUS & HOLLISTER LLP**
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
(202) 216-4116

October 30, 2026

*Counsel to Plaintiff Hyundai Steel Company*

# TABLE OF CONTENTS

I. ARGUMENT ........ 2

II. CONCLUSION ........ 6

CERTIFICATE OF COMPLIANCE ........ 8

CERTIFICATE OF SERVICE ........ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Consol. Edison Co. v. NLRB*,
305 U.S. 197, 229, 59 S. Ct. 206, 216-17 (1938) ........ 2-3

*Hyundai Steel Co. v. United States*,
745 F. Supp. 3d 1345 (Ct. Int'l Trade 2024) ........ 5

*Hyundai Steel Co. v. United States*,
798 F. Supp. 3d 1283 (Ct. Int'l Trade 2025) ........ 5

*Itochu Building Prods. Co., Inc. v. United States*,
163 F. Supp. 3d 1330 (Ct. Int'l Trade 2016) ........ 3-4

*Nippon Steel Corp. v. United States*,
337 F.3d 1373 (Fed. Cir. 2003)........ 2-3

*POSCO v. United States*,
794 F. Supp. 3d 1402 (Ct. Int'l Trade 2025) ........ 5

*Secs. & Exch. Comm'n v. Chenery Corp.*,
318 U.S. 80, 63 S. Ct. 454 (1943)........ 4, 6

**Statutes**

19 U.S.C. § 1677(5A)(D)(iii)(III) ........ 2

**Other Authorities**

*Certain Cut-To-Length Carbon-Quality Steel Plate from the Republic of Korea: Final Results and Recission, in Part, of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 61,509 (Dep't Commerce Sept. 7, 2023)........ 4

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| HYUNDAI STEEL COMPANY,<br><br>Plaintiff,<br><br>and<br><br>GOVERNMENT OF THE REPUBLIC OF KOREA,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>NUCOR CORPORATION,<br><br>Defendant-Intervenor. | **NON-CONFIDENTIAL VERSION**<br><br>Proprietary Information Removed from Pages 3-4<br><br>Consol. Ct. No. 23-cv-00211-CRK |

**PLAINTIFF'S REPLY TO COMMENTS ON THIRD REMAND RESULTS**

Pursuant to U.S. Court of International Trade Rule 56.2, and the Court's August 4, 2026 scheduling order, Plaintiff Hyundai Steel Company ("Hyundai Steel" or "Plaintiff") hereby replies to comments filed by Defendant-Intervenor Nucor Corporation ("Defendant-Intervenor" or "Petitioner") regarding the U.S. Department of Commerce's ("Commerce") remand results in this matter. *See* Defendant-Intervenor's Comments in Support of the Final Results of Redetermination Pursuant to Third Remand, *Hyundai Steel Company v. United States*, 23-cv-00211-CRK (Sept. 30, 2026), ECF No. 141 ("Petitioner Comments").

## I. **ARGUMENT**

The arguments made by Petitioner in its comments are unpersuasive. Petitioner Comments at 1-2 (citing Final Results of Redetermination Pursuant to Third Court Remand, *Hyundai Steel Company v. United States*, 23-cv-00211-CRK (Aug. 31, 2026), ECF No. 135, ("*Third Remand Results*"). Hyundai Steel has already submitted comments in opposition to the *Third Remand Results* explaining why Commerce's comparison methodology and *de facto* specificity determination remains unlawful. *See e.g.* Plaintiff's Comments in Opposition to Third Remand Results at 4-7, *Hyundai Steel Company v. United States*, 23-cv-00211-CRK (Jan. 29, 2026), ECF No. 137 ("Hyundai Steel's Comments in Opposition to the Third Remand Results"). As discussed in those Comments, Commerce's comparison of the basic metals sector's share of total industrial class electricity to its contribution to gross domestic product ("GDP") says nothing about whether it or Hyundai Steel received a disproportionately large amount of the subsidy pursuant to section 771(5A)(D)(iii)(III) of the Tariff Act.

Petitioner first argues that, because the basic metals sector uses more industrial electricity than its share of the Korean economy, the benefit from the electricity for less than adequate remuneration ("LTAR") program is allegedly "not evenly distributed across the economy in a way that you would expect." Petitioner Comments at 2. However, as Hyundai Steel argued in its opposition comments, there is no logical correlation between an enterprise or industry's consumption of industrial electricity and its contribution to GDP. *See* Hyundai Steel's Comments in Opposition to the Third Remand Results at 4-7. Petitioner cites no evidence that such a correlation between GDP and industrial electricity consumption exists. *See Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (citing *Consol. Edison Co. v. NLRB*,

305 U.S. 197, 229, 59 S. Ct. 206, 216-17 (1938) (defining substantial evidence to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion")).

Petitioner also claims that the electricity program in Korea was "designed" to "benefit heavy users" of electricity such as steelmakers. Petitioner Comments at 2. Again, Petitioner provides no evidence to support this conclusion, and it amounts to nothing more than unsubstantiated speculation. Furthermore, Petitioner's claim is belied by the fact that industrial class electricity has historically had the highest cost recovery rate compared to other classes of electricity. Letter from Yoon & Yang LLC to Sec'y Commerce, "Administrative Review on Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Response to the Initial Questionnaire" at 27 (June 27, 2022) ("GOK Initial Questionnaire Response"), CR 29–66, PR 60–85. If the electricity for LTAR program was designed to benefit "heavy users" of electricity as Petitioner contends then the Government of Korea ("GOK") would not be covering more of its costs on its electricity sales to industrial users than it does on sales of electricity to other electricity consumers. It would be covering less.

In addition Petitioner provides two alternatives to Commerce's *de facto* specificity analysis—(1) that the fact that **[** **]** of industrial electricity consumption during the period of review ("POR") in an economy of more than 400,000 manufacturing establishments, and (2) that an alleged "group" of three industries is a predominant user of the subsidy. Petitioner's Comments at 3-6. Such arguments amount to *post hoc* rationalization that the Court should not consider, as Commerce did not rely on this evidence or invoke the same reasoning in the *Third Remand Results*. The Court "may not accept 'post hoc rationalizations for agency action' and may only sustain the agency's decision 'on the same basis articulated in the order by the agency itself.'" *Itochu Building Prods. Co., Inc. v. United States*,

163 F. Supp. 3d 1330, 1337 (Ct. Int'l Trade 2016) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69, 83 S. Ct. 239 (1962)); *see Secs. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 94, 63 S. Ct. 454, 462 (1943) (holding "that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained"). Plainly stated, none of this "evidence" that Petitioner discusses on pages 3-6 of its comments was cited or relied upon by Commerce to support its disproportionality determination or its use of GDP as the comparator. The Court should therefore not consider it.

Petitioner's *post-hoc* arguments are also without merit. Petitioner argues that Hyundai Steel received a disproportionate amount of the benefit because **[** **]** of industrial electricity consumption by 400,000 establishments in Korea during the POR. *Id.* at 6. As an initial matter, the *Third Remand Results* is based on GDP as the comparator and so any alternatives that Petitioner suggests are not properly before the Court. See *Chenery.*, 318 U.S. at 94, 63 S. Ct. at 462.

Additionally, the Court already rejected similar reasoning. In the *Final Results* and the *First Remand Results*, Commerce determined that the steel industry, along with other industries combined, consumed a disproportionately large amount of electricity in Korea. *Certain Cut-To-Length Carbon-Quality Steel Plate from the Republic of Korea: Final Results and Recission, in Part, of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 61,509 (Dep't Commerce Sept. 7, 2023), ECF No. 24-4, PR Doc. 225 ("*Final Results*"); Mem. from James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, U.S. Dep't of Commerce, to Lisa W. Wang, Assistant Secretary for Enforcement and Compliance, U.S. Dep't Commerce, "Issues and Decision Memorandum for the Final Results of

Countervailing Duty Administrative Review; 2021: Certain Cut-To-Length Carbon-Quality Steel Plate from the Republic of Korea" (Aug. 30, 2023), ECF No. 24-5, PR Doc. 222 ("Final Decision Mem."); Final Results of Redetermination Pursuant to Court Remand at 17, *Hyundai Steel Co. v. United States*, No. 23-cv-00211-CRK (Apr. 11, 2025), ECF No. 62 ("*First Remand Results*"). The Court remanded both determinations because Commerce's rationale "elides the reality that programs designed to confer benefits on usage levels will necessarily result in larger users receiving a proportionally larger percentage of the subsidy." *Hyundai Steel v. United States*, 745 F. Supp. 3d 1345, 1352 (Ct. Int'l Trade 2024) ("*Hyundai Steel I*"); *Hyundai Steel II*, 798 F. Supp. 3d 1283, 1289 (Ct. Int'l Trade 2025) ("*Hyundai Steel II*"). The Court explained that "Commerce's position appears to be that receiving more of the subsidy equates with disproportionality" and in *Hyundai Steel II*, it emphasized that it "has already rejected this position" in *Hyundai Steel I*. *Hyundai Steel II*, 798 F. Supp. 3d at 1289; *see also POSCO v. United States*, 794 F. Supp. 3d 1402, 1410 (Ct. Int'l Trade 2025) ("{T}he agency's only reasoning for its disproportionality analysis is that the Korean steel industry uses a large amount of electricity. Commerce, however, was required by the plain meaning of the statute to use a baseline that shows the Korean steel industry's subsidy is out of line with the industry's own usage, not just the 'benefits {received by} others.'"). Petitioner's argument, like Commerce's prior determinations, amounts to nothing more than an alternative argument that receiving more of the subsidy than others equates to disproportionality. Commerce rejected Petitioner's alternative in the *Third Remand Results* for the same reason and the Court should do so again here. *Third Remand Results* at 23-24.

Lastly, Petitioner also argues that Commerce should consider whether a group of three industries is a predominant user of the subsidy. Petitioner's Comments at 4-5. However, in the

*Third Remand Results* Commerce did not group industries to find the electricity for LTAR program specific and did not determine that the subsidy was specific based on predominant use. *See, e.g., Third Remand Results* at 23-25. Commerce explained in the *Third Remand Results* that "Nucor did not provide a rational basis other than usage amounts for combining three industries together in a predominant use analysis of the Electricity Program which is widely available." *Third Remand Results* at 25. Commerce thus concluded that it "is not adopting Nucor's proposed predominant use approach for these final results of redetermination." *Id.* Commerce thus considered and rejected these alternative grouping and predominant use arguments in the *Third Remand Results*. The Court should thus not entertain Petitioner's arguments that Commerce should have grouped industries for its disproportionality analysis or find that a group of industries was a predominant user of the subsidy. *See Chenery*, 318 U.S. at 94, 63 S. Ct. at 462.

## II. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court reject Defendant-Intervenor's arguments regarding the *Third Remand Results* and again remand Commerce's determination for Commerce to reach the only determination supported by the law and the facts

on the record, which is that the alleged provision of electricity for LTAR in Korea is not *de facto* specific.

Respectfully submitted,

/s/ Brady W. Mills
Brady W. Mills
R. Will Planert
Mary S. Hodgins
Nicholas C. Duffey

**TAFT STETTINIUS & HOLLISTER LLP**
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
(202) 216-4116

October 30, 2026

*Counsel to Plaintiff Hyundai Steel Company*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 1,545 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

/s/ Brady W. Mills
Brady W. Mills

**CERTIFICATE OF SERVICE**

Pursuant to Rule 5 of the Rules of the U.S. Court of International Trade and Administrative Order 25-01, I hereby certify that I served the confidential version of the foregoing submission on the following individuals by electronic service. The public version is being served through the Court's filing system.

On behalf of the United States
Tara Kathleen Hogan
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 616-2228
Fax: (202) 305-7643
Email: tara.hogan@usdoj.gov

On behalf of the Government of Korea
Yujin Kim McNamara
Akin, Gump, Strauss, Hauer & Feld, LLP
2001 K Street, NW.
Washington, DC 20006
(202) 887-4347
Fax: (202) 887-4288
Email: ymcnamara@akingump.com

On behalf of Nucor Corporation
Alan Hayden Price
Wiley Rein, LLP
2050 M Street, NW.
Washington, DC 20036
(202) 719-3375
Fax: (202) 719-7049
Email: aprice@wiley.law

/s/ Brady W. Mills
Brady W. Mills

October 30, 2026
Date